# 20-1978

## United States Court of Appeals
### *for the*
### Second Circuit

SHLOMO YEHUDA RECHNITZ,

*Petitioner-Counter-Defendant-Appellee,*

– v. –

EPHRAIM KUTNER and JONATHAN KUTNER,

*Respondents-Cross-Defendants-Appellants,*

GREYSTONE FUNDING CORP.,

*Respondent-Third-Party-Pliantiff-Cross-Claimant-Counter-Claimant,*

CLARITY CAPITAL PARTNERS, LLC, HARBORVIEW CAPITAL PARTNERS, LLC

*Third-Party-Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**JOINT APPENDIX
VOLUME I (A1-200)**

ANDREW J. LEVANDER
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
212-698-3500

MICHAEL H. MCGINLEY
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
215-994-4000

*Attorneys for Respondents-Appellants Ephraim Kutner and Jonathan Kutner*

# TABLE OF CONTENTS

*Page*

## VOLUME I

Docket Sheet for Case No. 1:20-cv-1607-KAM-VMS
(Original Action), as of November 9, 2020 ................................. A-1

Complaint and Petition to Confirm Arbitration Award and for an
Order of Attachment in Aid of Arbitration, dated
March 30, 2020 (Dkt. 1) ............................................... A-12

Civil Cover Sheet (Dkt. 1-1) ........................................ A-41

Order to Show Cause for Attachment in Aid of Arbitration, dated
March 31, 2020 (Dkt. 10) ............................................ A-43

First Letter Motion to Correct Order on Motion to Show Cause, dated
March 31, 2020 (Dkt. 11) ............................................ A-46

Proposed Order to Show Cause (Dkt. 11-1) ............................. A-48

Amended Order to Show Cause for Attachment in Aid of Arbitration,
dated April 1, 2020 (Dkt. 12) ....................................... A-54

Notice of Motion to Confirm Attachment in Aid of Arbitration, dated
April 6, 2020 (Dkt. 16) ............................................. A-57

Declaration of Shlomo Rechnitz in support of Motion to
Confirm Attachment in Aid of Arbitration, dated April 6, 2020
(Dkt. 16-1) ......................................................... A-59

Exhibit A – Complaint and Petition to Confirm Arbitration
Award and for an Order of Attachment in Aid of Arbitration,
dated March 30, 2020 (Dkt. 16-2).................................... A-67

i

Exhibit B – Letter from Rabbi Yochanan Bechhofer on behalf of Ephraim and Jonathan Kutner, dated on or about August 21, 2018 (Dkt. 16-3) ........................................................ A-96

Exhibit C – Email from David Weldler to Rabbi Dovid Cohen, dated March 9, 2020 (Dkt. 16-4) .................................................. A-102

Exhibit D – Arbitration Award relating to Mezzanine Loan Dispute, dated March 11, 2020 (Dkt. 16-5) ................................. A-105

Declaration of Ephraim Kutner, dated May 20, 2020 (Dkt. 36-1)......... A-113

Exhibit A – Joint Venture Agreement, dated December 24, 2014 (Dkt. 36-2).................................................... A-131

Exhibit B – Email to Ephraim Kutner from Shlomo Rechnitz, dated February 25, 2018 (Dkt. 36-3)........................................... A-138

Exhibit C – Letter from David Weldler to Rabbi Dovid Cohen, dated August 20, 2020 (Dkt. 36-4).............................................. A-140

Exhibit D – Email from David Weldler to Rabbi Dovid Cohen and Ephraim Kutner, dated October 4, 2018 (Dkt. 36-5)............. A-141

Exhibit E – Email from David Weldler to Rabbi Dovid Cohen and Shlomo Rechnitz, dated October 26, 2018 (Dkt. 36-6)......... A-143

Exhibit F – Proposed Arbitration Award (Dkt. 36-7) .................. A-145

Exhibit G – Email from David Weldler to Rabbi Dovid Cohen and Ephraim Kutner, dated October 29, 2018 (Dkt. 36-8)........... A-148

Exhibit H – Proposed Arbitration Award (Dkt. 36-9).................. A-150

Exhibit I – Letter from Rabbi Yochanan Bechhofer to Rabbi Dovid Cohen, dated October 30, 2018 (Dkt. 36-10) ......... A-159

Exhibit J – Email from David Weldler to Rabbi Dovid Cohen,
Ephraim Kutner, and Jonathan Kutner, dated November 1, 2018
(Dkt. 36-11) ................................................................... A-160

Exhibit K – Arbitration Award, dated November 5, 2018
(Dkt. 36-12) ................................................................... A-162

Exhibit L – Confidential Settlement Communication
(Dkt. 36-13) ................................................................... A-171

Exhibit M – Email from David Weldler to Rabbi Dovid Cohen,
dated February 17, 2020 (Dkt. 36-14).......................................... A-173

Exhibit N – Din Torah Asks (Dkt. 36-15)................................... A-175

Exhibit O – Screenshot of Microsoft Word (Dkt. 36-16) ........... A-176

Exhibit P – Letter from Rabbi Dovid Cohen to Shlomo
Rechnitz and Ephraim Kutner, dated February 20, 2020
(Dkt. 36-17) ................................................................... A-177

Exhibit Q – Email from David Weldler to Rabbi Dovid Cohen,
dated March 9, 2020 (Dkt. 36-18)............................................. A-178

Exhibit R – Proposed Arbitration Award (Dkt. 36-19)............... A-182

Exhibit S – USPS Tracking for package delivered
November 13, 2018 (Dkt. 36-20) .................................................. A-191

Exhibit T – Email from Ephraim Kutner to Shlomo Rechnitz,
dated March 1, 2020 (Dkt. 36-21)............................................. A-195

Exhibit U – Email from Ephraim Kutner to Shlomo Rechnitz,
David Weldler, and Jonathan Kutner, dated March 3, 2020
(Dkt. 36-22) ................................................................... A-197

Exhibit V – Email from David Weldler to Ephraim Kutner,
Jonathan Kutner, and Shlomo Rechnitz, dated
March 3, 2020 (Dkt. 36-23)....................................................... A-199

iii

# VOLUME II

Declaration of Shlomo Rechnitz in support of Attachment, Petition
to Confirm, and in Opposition to Cross-Motion to Vacate
Arbitration Award, dated May 28, 2020 (Dkt. 42) ..................... A-201

Declaration of Victor Lipnitsky CPA in Connection with Petition to
Confirm Arbitration Award, dated May 27, 2020 (Dkt. 42-1) .... A-215

Declaration of David Weldler in support of Attachment, Petition to
Confirm, and in Opposition to Cross-Motion to Vacate
Arbitration Award, dated May 28, 2020 (Dkt. 43) ..................... A-226

Exhibit A – Email from Devora Pinson to David Weldler,
dated April 2, 2020 (Dkt. 44) ....................................... A-243

Exhibit B – Email from Ephraim Kutner to Shlomo Rechnitz,
dated February 25, 2018 (Dkt. 45) ............................... A-249

Exhibit C – Email from Ephraim Kutner to David Weldler and
Jonathan Kutner, dated June 7, 2018 (Dkt. 45-1) ........................ A-252

Exhibit D – Schedule 1 Spreadsheet (Dkt. 45-2) ........................ A-255

Exhibit E – Email from David Weldler to Morris Goldstein,
dated September 5, 2017 (Dkt. 45-3) ........................... A-256

Exhibit F – Email from David Weldler to Ephraim Kutner,
dated August 16, 2018 (Dkt. 45-4)............................... A-257

Exhibit G – Email from David Weldler to Ephraim Kutner
(Dkt. 45-5) .................................................................... A-258

Exhibit H – Handwritten Letter and Exhibits from David
Weldler to Victor Lipnitsky, CPA (Dkt. 46) ............... A-260

Exhibit I – Letter from Rabbi Dovid Cohen, dated
August 22, 2018 (Dkt. 46-1) ....................................... A-266

iv

Exhibit J – Handwritten letter to David Weldler, Ephraim
Kutner, Jonathan Kutner, and Shlomo Rechnitz, dated
August 30, 2018 (Dkt. 46-2) ...................................................... A-267

Exhibit K – Email from David Weldler to Rabbi Dovid Cohen
and Shlomo Rechnitz, dated October 26, 2018 (Dkt. 46-3).......... A-268

Exhibit L – Email from David Weldler to Efrem Schwalb,
dated October 30, 2018, forwarding letters from Rabbi
Yochanan Bechhofer (Dkt. 46-4) .................................................. A-273

Exhibit M – Arbitration Award, dated November 5, 2018
(Dkt. 46-5) .................................................................................. A-277

Exhibit N – Email from David Weldler to Efrem Schwalb,
dated February 20, 2020, forwarding February 17, 2020 email
(Dkt. 46-6) .................................................................................. A-286

Exhibit O – Letter from Rabbi Cohen to Shlomo Rechnitz
and Ephraim Kutner, dated February 20, 2020 (Dkt. 46-7)......... A-288

Exhibit P – Email from David Weldler to Efrem Schwalb,
dated March 1, 2020, forwarding email from Rabbi Yochanan
Bechhofer to Rabbi Dovid Cohen, Shlomo Rechnitz, and David
Weldler, dated February 29, 2020, (Dkt. 46-8)........................... A-289

Exhibit Q – Email from Rabbi Yochanan Bechhofer to Rabbi
Dovid Cohen, dated March 1, 2020 (Dkt. 46-9) ......................... A-295

Exhibit R – Email from David Weldler to Rabbi Dovid Cohen,
dated March 9, 2020 (Dkt. 46-10)................................................ A-297

Notice of Appeal, dated June 23, 2020 (Dkt. 49)................................... A-308

Transcript of June 3, 2020 telephone conference before the
Hon. Kiyo A. Matsumoto (Dkt. 51) ............................................ A-310

v

APPEAL,ACO

# U.S. District Court
## Eastern District of New York (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:20-cv-01607-KAM-VMS

Rechnitz v. Kutner et al                           Date Filed: 03/30/2020
Assigned to: Judge Kiyo A. Matsumoto              Date Terminated: 06/15/2020
Referred to: Magistrate Judge Vera M. Scanlon     Jury Demand: None
Cause: 09:1 U.S. Arbitration Act                  Nature of Suit: 896 Other Statutes:
                                                  Arbitration
                                                  Jurisdiction: Federal Question

**Petitioner**

**Shlomo Yehuda Rechnitz**          represented by **Efrem Tobias Schwalb**
                                                  Koffsky Schwalb LLC
                                                  349 Fifth Avenue
                                                  Suite 733
                                                  New York, NY 10016
                                                  646-553-1590
                                                  Fax: 646-553-1591
                                                  Email: eschwalb@koffskyschwalb.com
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

V.

**Respondent**

**Ephraim Kutner**                  represented by **Matthew Didora**
                                                  Abrams Fensterman Fensterman Eisman
                                                  Formato, Ferrara & Wolf
                                                  3 Dakota Drive
                                                  Ste. 300
                                                  Lake Success, NY 11042
                                                  516-328-2300
                                                  Fax: 516-328-6638
                                                  Email: mdidora@abramslaw.com
                                                  *ATTORNEY TO BE NOTICED*

**Respondent**

**Jonathan Kutner**                 represented by **Matthew Didora**
                                                  (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

**Respondent**

**Greystone Funding Corp.**         represented by **Yehuda David Scharf**
                                                  Morrison Cohen LLP
                                                  909 Third Avenue
                                                  New York, NY 10022
                                                  212-735-8600
                                                  Fax: 212-735-8708

A-2

Email: dscharf@morrisoncohen.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jay R. Speyer**
Morrison Cohen LLP
909 Third Avenue
New York, NY 10022
212-735-8600
Fax: 212-735-8708
Email: jspeyer@morrisoncohen.com
*ATTORNEY TO BE NOTICED*

**Joaquin Javier Ezcurra**
Morrison Cohen LLP
909 Third Avenue
New York, NY 10022
212-735-8600
Fax: 212-735-8790
Email: jezcurra@morrisoncohen.com
*ATTORNEY TO BE NOTICED*

**ThirdParty Plaintiff**

**Greystone Funding Corp.**                    represented by  **Yehuda David Scharf**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jay R. Speyer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joaquin Javier Ezcurra**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**ThirdParty Defendant**

**Clarity Capital Partners LLC**

**ThirdParty Defendant**

**Harborview Capital Partners, LLC**

**Cross Claimant**

**Greystone Funding Corp.**                    represented by  **Yehuda David Scharf**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jay R. Speyer**
(See above for address)
*ATTORNEY TO BE NOTICED*

A-3

**Joaquin Javier Ezcurra**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Cross Defendant**

**Jonathan Kutner**       represented by   **Matthew Didora**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Ephraim Kutner**       represented by   **Matthew Didora**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Greystone Funding Corp.**       represented by   **Yehuda David Scharf**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jay R. Speyer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joaquin Javier Ezcurra**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Shlomo Yehuda Rechnitz**       represented by   **Efrem Tobias Schwalb**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/30/2020 | 1 | PETITION re: Arbitration Award , filed by Shlomo Yehuda Rechnitz. (Attachments: # 1 Civil Cover Sheet) (Davis, Kimberly) (Entered: 03/30/2020) |
| 03/30/2020 | | The case of **Rechnitz v. Kutner**, has been opened in the Eastern District of New York. The case number is **20-cv-1607**. PLEASE NOTE: You must pay the case filing fee **within seven (7) days**. Select the event (Civil Case Filing Fee) and pay online. (Davis, Kimberly) (Entered: 03/30/2020) |
| 03/30/2020 | 4 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank |

A-4

| | | |
|---|---|---|
| | | copy of the consent form that should be filled out, signed and filed electronically **only if all** parties wish to consent. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences. Do NOT return or file the consent unless all parties have signed the consent.** (Davis, Kimberly) (Entered: 03/30/2020) |
| 03/30/2020 | 5 | This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made, if any. (Davis, Kimberly) (Entered: 03/30/2020) |
| 03/30/2020 | 6 | Summons Issued as to Greystone Funding Corp., Ephraim Kutner, Jonathan Kutner. (Attachments: # 1 Summons, # 2 Summons) (Davis, Kimberly) (Entered: 03/30/2020) |
| 03/31/2020 | | CIVIL CASE FILING FEE: $ 400, receipt number ANYEDC-12613527 (Schwalb, Efrem) (Entered: 03/31/2020) |
| 03/31/2020 | | ORDER. The Court hereby schedules a telephonic hearing on 2 Plaintiff's *ex parte* Motion for an Order of Attachment on Tuesday, March 31, 2020 at 3:30 p.m. The parties shall dial-in to a conference call with the court at 1 (888) 684-8852 and enter the following code: 1312089. Ordered by Judge Kiyo A. Matsumoto on 3/31/2020. (Ammari, Kamil) (Entered: 03/31/2020) |
| 03/31/2020 | 7 | NOTICE of Appearance by Yehuda David Scharf on behalf of Greystone Funding Corp. (aty to be noticed) (Scharf, Yehuda) (Entered: 03/31/2020) |
| 03/31/2020 | 8 | NOTICE of Appearance by Jay R. Speyer on behalf of Greystone Funding Corp. (aty to be noticed) (Speyer, Jay) (Entered: 03/31/2020) |
| 03/31/2020 | 9 | NOTICE of Appearance by Joaquin Javier Ezcurra on behalf of Greystone Funding Corp. (aty to be noticed) (Ezcurra, Joaquin) (Entered: 03/31/2020) |
| 03/31/2020 | 10 | ORDER granting 2 Motion for Order to Show Cause. Show Cause Hearing set for 4/7/2020 at 11:00 AM before Judge Kiyo A. Matsumoto. The parties shall dial into a conference call with the court by dialing 888-684-8852 and entering the following access code: 1312089. Show Cause Response due by 4/3/2020. See attached order for further details. Ordered by Judge Kiyo A. Matsumoto on 3/31/2020. (Ammari, Kamil) (Entered: 03/31/2020) |
| 03/31/2020 | 11 | First MOTION to Amend/Correct/Supplement 10 Order on Motion for Order to Show Cause, by Shlomo Yehuda Rechnitz. (Attachments: # 1 Proposed Order Exhibit 1, # 2 Exhibit Mishcon Order) (Schwalb, Efrem) (Entered: 03/31/2020) |
| 04/01/2020 | 12 | ORDER granting 11 Motion to Amend/Correct/Supplement. See attached Amended Order to Show Cause for Attachment in Aid of Arbitration for further details. Ordered by Judge Kiyo A. Matsumoto on 4/1/2020. (Ammari, Kamil) (Entered: 04/01/2020) |
| 04/01/2020 | | MINUTE ENTRY & ORDER for Telephonic Hearing held before Judge Kiyo A. Matsumoto on March 31, 2020. Appearances: Efrem Tobias Schwalb, Esq., for Petitioner; Yehuda David Scharf, Esq., and Jay R. Speyer, Esq., for Respondents. The court heard argument on 2 Petitioner's *Ex Parte* Motion for Order to Show Cause. For the reasons stated on the record and in 10 the court's Order dated March 31, 2020, the court granted Petitioner's motion. Petitioner shall move by April 7, 2020 at 11:00 a.m. for an order confirming the order of attachment. Respondents shall show cause in writing by April 3, 2020 why the relief sought by Petitioner should not be granted. (Court Reporter: Holly Driscoll.) (Ammari, Kamil) (Entered: 04/01/2020) |
| 04/01/2020 | 13 | CERTIFICATE OF SERVICE by Shlomo Yehuda Rechnitz *of Order to Show Cause and Supporting Documents on Defendants/Respondents* (Schwalb, Efrem) (Entered: 04/01/2020) |

A-5

Eastern District of New York - LIVE Database 1.5 (Revision 1.5.2)

| 04/03/2020 | 14 | Second MOTION for Extension of Time to File *Documents* by Ephraim Kutner, Jonathan Kutner. (Didora, Matthew) (Entered: 04/03/2020) |
|---|---|---|
| 04/03/2020 | | ORDER granting in part and denying in part 14 request for extension of time.<br><br>The court DENIES Plaintiff's request for an extension of time to file a motion to confirm the order of attachment entered by the court. As Plaintiff's counsel acknowledged at the *ex parte* hearing held on March 31, 2020, Plaintiff remains responsible for ensuring that his requests for relief comply with all relevant authority. New York Civil Practice Law and Rules § 6211(b) provides specific timetables under which a party receiving an *ex parte* order of attachment must move for an order confirming said order of attachment. *See* CPLR § 6211(b) ("[A]n order of attachment granted without notice shall provide that within a period not to exceed five days after levy, the plaintiff shall move, on such notice as the court shall direct to the defendant, the garnishee, if any, and the sheriff, for an order confirming the order of attachment."); *Voice Commc'ns, Inc. v. Bello*, 813 N.Y.S.2d 295, 297 (Sup. Ct. 2006). Accordingly, by **April 6, 2020**, Plaintiff shall either (1) move for confirmation of the *ex parte* order of attachment, or (2) explain the legal basis as to how Plaintiff's April 1, 2020 service of the order to show cause, supporting documentation, complaint, and memorandum of law on Defendants satisfied the requirements of CPLR § 6211(b) or, alternatively, the legal basis as to why Plaintiff is entitled to additional time.<br><br>The court, however, GRANTS Defendants' request for an extension of time. By April 21, 2020, Defendants shall show cause why the relief sought by petitioner should not be granted and submit any opposition to Plaintiff's motion to confirm the previously entered order of attachment. To allow the court time to review Defendants' motion papers, the court hereby adjourns the Show Cause Hearing currently scheduled for April 7, 2020 at 11:00 a.m. until Friday, April 24, 2020 at 11:00 a.m. Ordered by Judge Kiyo A. Matsumoto on 4/3/2020. (Ammari, Kamil) (Entered: 04/03/2020) |
| 04/06/2020 | 15 | MOTION for Extension of Time to File *Motion to Confirm Attachment* by Shlomo Yehuda Rechnitz. (Schwalb, Efrem) (Entered: 04/06/2020) |
| 04/06/2020 | | ORDER denying 15 Motion for Extension of Time to File. Petitioner represents that it "is doing its best and is intending to file its motion to confirm by April 6, 2020," and its motion for an extension of time to do so is respectfully denied. Ordered by Judge Kiyo A. Matsumoto on 4/6/2020. (Ammari, Kamil) (Entered: 04/06/2020) |
| 04/06/2020 | 16 | MOTION for Permanent Injunction *to Confirm Order of Attachment in Aid of Arbitration* by Shlomo Yehuda Rechnitz. (Attachments: # 1 Declaration Rechnitz Declaration, # 2 Exhibit Exhibit A -- Petition, # 3 Exhibit Exhibit B - Bechoffer Letter, # 4 Exhibit Exhibit C - March 9 Response, # 5 Exhibit Exhibit D - Mezzanine Award, # 6 Memorandum in Support Memo of Law in Support of Motion to Confirm Attachment) (Schwalb, Efrem) (Entered: 04/06/2020) |
| 04/13/2020 | 17 | Surety Bond per Attachment Order BOND in the amount of $ 10,000 posted by Shlomo Yehuda Rechnitz (Schwalb, Efrem) (Entered: 04/13/2020) |
| 04/14/2020 | 18 | Letter *to Justice Matsumoto* by Ephraim Kutner, Jonathan Kutner (Didora, Matthew) (Entered: 04/14/2020) |
| 04/15/2020 | | ORDER granting 18 Letter Motion for Extension of Time. Respondents are hereby granted until April 21, 2020 to respond to petitioner's petition seeking to confirm an arbitration award. Ordered by Judge Kiyo A. Matsumoto on 4/15/2020. (Ammari, Kamil) (Entered: 04/15/2020) |
| 04/20/2020 | | ORDER TO SHOW CAUSE: Show Cause Hearing set for 4/24/2020 at 11:00 a.m. before Judge Kiyo A. Matsumoto. The parties shall dial into a conference call with the court by |

A-6

| | | |
|---|---|---|
| | | dialing 888-684-8852 and entering the following access code: 1312089.Ordered by Judge Kiyo A. Matsumoto on 4/20/2020. (Williams-Jackson, Sandra) (Entered: 04/20/2020) |
| 04/21/2020 | 19 | Letter MOTION for Extension of Time to File *All Deadlines* by Ephraim Kutner, Jonathan Kutner. (Didora, Matthew) (Entered: 04/21/2020) |
| 04/22/2020 | | ORDER. The court is in receipt of the Kutner defendants' request (doc. 19), filed at 8:52 pm on April 21, 2020, seeking a thirty-day extension of their response (due on April 21, 2020) to, and a hearing (scheduled for April 24, 2020 at 11:00 a.m.) regarding, the plaintiff's motion to confirm the arbitration award and attachment. The Kutner defendants are advised that this court will grant the adjournment on the condition that they will not object or raise any defense that the extension of the dates for their opposing submission and the hearing warrants denial of the plaintiff's motions, or vacatur of the Attachment.<br><br>The Kutner defendants are ORDERED to advise the court by 1:30 p.m. today, April 22, 2020, that the foregoing condition is acceptable and agreed to. The Kutner defendants are advised that if they fail to advise the court by 1:30 p.m. today, they shall immediately file their opposition submission no later than 2:30 p.m. today (or they will be deemed to have waived their right to oppose) and shall be prepared to proceed with the currently scheduled hearing on April 24, 2020. On the other hand, if the Kutner defendants advise the court by 1:30 p.m. today that the foregoing condition is acceptable, the court will grant the Kutner defendants' request for a thirty-day adjournment to file their opposition, which will be due on or before May 22, 2020, and will adjourn the hearing. The parties shall promptly inform the court whether they intend to present testimony at said hearing. Ordered by Judge Kiyo A. Matsumoto on 4/22/2020. (Ammari, Kamil) (Entered: 04/22/2020) |
| 04/22/2020 | 20 | Letter *to Justice Matsumoto* by Ephraim Kutner, Jonathan Kutner (Didora, Matthew) (Entered: 04/22/2020) |
| 04/22/2020 | 21 | Corporate Disclosure Statement by Greystone Funding Corp. identifying Corporate Parent Greystone Select Holdings LLC for Greystone Funding Corp.. (Speyer, Jay) (Entered: 04/22/2020) |
| 04/22/2020 | 22 | ANSWER to Complaint , THIRD PARTY COMPLAINT against Clarity Capital Partners LLC, Harborview Capital Partners, LLC, CROSSCLAIM against Jonathan Kutner, Ephraim Kutner, COUNTERCLAIM against Shlomo Yehuda Rechnitz by Greystone Funding Corp.. (Scharf, Yehuda) (Entered: 04/22/2020) |
| 04/22/2020 | 23 | Proposed Summons. Re 22 Answer to Complaint,, Third Party Complaint,, Crossclaim,, Counterclaim, by Greystone Funding Corp. (Scharf, Yehuda) (Entered: 04/22/2020) |
| 04/22/2020 | 24 | Proposed Summons. Re 22 Answer to Complaint,, Third Party Complaint,, Crossclaim,, Counterclaim, by Greystone Funding Corp. (Scharf, Yehuda) (Entered: 04/22/2020) |
| 04/22/2020 | 25 | MOTION for Interpleader Deposit (28 U.S.C. Section 1335) by Greystone Funding Corp.. (Attachments: # 1 Declaration of Y. David Scharf Concerning Greystone's Attorneys' Fees and Costs, # 2 Memorandum in Support in Support of Its Interpleader Motion, # 3 Proposed Order Authorizing Interpleader Deposit) (Scharf, Yehuda) (Entered: 04/22/2020) |
| 04/23/2020 | | SCHEDULING ORDER: In light of 20 the Kutner Defendants' letter dated April 22, 2020, the request for a thirty-day extension of all deadlines is hereby GRANTED. Accordingly: (1) by May 22, 2020, Defendants shall file their opposition papers; and (2) on May 26, 2020 at 11:00 a.m., the parties shall appear for a Show Cause Hearing before the Court. Unless the parties notify the Court no later than two weeks prior to the hearing that they intend to present live witnesses and that an in-court hearing will be necessary to resolution of the instant motions, the hearing will proceed telephonically. The parties shall dial into a conference call with the court by dialing 888-684-8852 and entering the following access |

A-7

| | | |
|---|---|---|
| | | code: 1312089. Ordered by Judge Kiyo A. Matsumoto on 4/23/2020. (Ammari, Kamil) Modified on 4/23/2020 (Williams-Jackson, Sandra). (Entered: 04/23/2020) |
| 04/29/2020 | 26 | MOTION to Compel by Shlomo Yehuda Rechnitz. (Attachments: # 1 Exhibit Agreement, # 2 Exhibit Response emails, # 3 Exhibit Letter to advise borrowers) (Schwalb, Efrem) (Entered: 04/29/2020) |
| 04/30/2020 | 27 | Letter *to Hon. Vera M. Scanlon* by Ephraim Kutner, Jonathan Kutner (Didora, Matthew) (Entered: 04/30/2020) |
| 04/30/2020 | | ORDER re 26 MOTION to Compel. The Kutner defendants are ORDERED TO SHOW CAUSE via ECF, no later than 12:00 pm on May 1, 2020, why the court should not order the Kutner defendants to advise mezzanine borrowers by letter, attached as Exhibit C to the plaintiffs 4/29/20 letter (doc. 26), of the parties stipulation to make payments to the plaintiff, as set forth in Exhibit A to the plaintiffs 4/29/20 letter. No extensions of this ORDER TO SHOW CAUSE will be granted. Ordered by Judge Kiyo A. Matsumoto on 4/30/2020. (Williams-Jackson, Sandra) (Entered: 04/30/2020) |
| 05/01/2020 | 28 | DECLARATION of *Ephram Kutner* by Ephraim Kutner, Jonathan Kutner (Attachments: # 1 03-16-20 Rechnitz Letter) (Didora, Matthew) (Entered: 05/01/2020) |
| 05/01/2020 | 29 | AFFIDAVIT/DECLARATION in Support re 26 MOTION to Compel *in Response to Declaration of Ephriam Kutner filed May 1, 2020* filed by Shlomo Yehuda Rechnitz. (Schwalb, Efrem) (Entered: 05/01/2020) |
| 05/01/2020 | | The court has reviewed the submissions of the plaintiff and the Kutner defendants regarding plaintiff's motion 26 to compel the Kutner defendants to notify Mezzanine Borrowers of the terms of their agreement with the Plaintiff (doc. 26-29).The court hereby grants 26 Plaintiff's Motion to Compel the Kutner defendants to serve Mezzanine Borrowers with the Notice, attached as Exhibit C to plaintiff's motion, regarding the parties' agreements, as confirmed in emails between the plaintiff and the Kutner defendants, attached as Exhibits A and B (docs. 26-1, 26-2). The Kutner defendants are ORDERED to serve the Mezzanine Borrowers with the Notice, and file a declaration of service, no later than 5:00 p.m. on May 4, 2020. If the Kutner defendants fail to comply, the plaintiff may serve the Mezzanine Borrowers with a copy of this Order and the Notice, and the Kutner defendants may be subject to sanctions.Ordered by Judge Kiyo A. Matsumoto on 5/1/2020. (Matsumoto, Kiyo) (Entered: 05/01/2020) |
| 05/01/2020 | | ORDER deferring ruling on 25 Greystone Funding's Motion for Interpleader Deposit (28 U.S.C. Section 1335). Greystone failed to comply with the court's motion practices by first seeking a pre-motion conference. Moreover, despite Second Circuit caselaw, Greystone failed to provide contemporaneous time records and biographies in support of its motion for attorneys fees, which appear to be quite high for attorneys litigating in this district. Greystone shall provide supporting contemporaneous time records that disclose the services rendered and the billing rates and brief biographies for all attorneys for whom it seeks to recover fees no later than May 8, 2020. Given Greystone's unique position in this litigation, the court will overlook the failure to seek a pre-motion conference and orders that the plaintiff and Kutner defendants respond to the Greystone motion no later than May 15, 2020. The court encourages the parties to resolve the Greystone motion before the further expenditure of fees by the parties. Ordered by Judge Kiyo A. Matsumoto on 5/1/2020. (Matsumoto, Kiyo) (Entered: 05/01/2020) |
| 05/04/2020 | 30 | DECLARATION of *Marilyn Tirado* by Ephraim Kutner, Jonathan Kutner (Attachments: # 1 Exhibit) (Didora, Matthew) (Entered: 05/04/2020) |
| 05/08/2020 | 31 | AFFIDAVIT/DECLARATION in Support re 25 MOTION for Interpleader Deposit (28 U.S.C. Section 1335) *Supplemental Declaration Concerning Greystone's Attorney's Fees* |

| | | |
|---|---|---|
| | | *and Costs* filed by Greystone Funding Corp.. (Attachments: # 1 Exhibit A-Attorney Information, # 2 Exhibit B-Invoices) (Speyer, Jay) (Entered: 05/08/2020) |
| 05/08/2020 | 32 | SUMMONS Returned Executed by Greystone Funding Corp.. Clarity Capital Partners LLC served on 5/1/2020, answer due 5/22/2020; Harborview Capital Partners, LLC served on 5/1/2020, answer due 5/22/2020. (Speyer, Jay) (Entered: 05/08/2020) |
| 05/15/2020 | 33 | MEMORANDUM in Opposition re 25 MOTION for Interpleader Deposit (28 U.S.C. Section 1335) filed by Clarity Capital Partners LLC, Harborview Capital Partners, LLC, Ephraim Kutner, Jonathan Kutner. (Attachments: # 1 Declaration of Matthew F. Didora in Opposition to Greystone Funding Corp.'s Request for Attorney's Fees and Costs, # 2 Exhibit 1) (Didora, Matthew) (Entered: 05/15/2020) |
| 05/15/2020 | 34 | AFFIDAVIT/DECLARATION in Support re 25 MOTION for Interpleader Deposit (28 U.S.C. Section 1335) *of Efrem Schwalb* filed by Shlomo Yehuda Rechnitz. (Schwalb, Efrem) (Entered: 05/15/2020) |
| 05/17/2020 | 35 | AFFIDAVIT/DECLARATION in Support re 25 MOTION for Interpleader Deposit (28 U.S.C. Section 1335) *of Efrem Schwalb attaching missing exhibits* filed by Shlomo Yehuda Rechnitz. (Attachments: # 1 Exhibit 1 - Email agreement, # 2 Exhibit 2 - Email with stip, # 3 Exhibit 3 - Final stipulation, # 4 Exhibit 4 - May 15 change) (Schwalb, Efrem) (Entered: 05/17/2020) |
| 05/22/2020 | 36 | RESPONSE in Opposition re 16 MOTION for Permanent Injunction *to Confirm Order of Attachment in Aid of Arbitration issued by Rabbi Dovid Cohen* filed by Ephraim Kutner, Jonathan Kutner. (Attachments: # 1 Declaration 03-20-20 - Ephraim Kutner, # 2 Exhibit Exh A - 12-24-14 Joint Venture Agreement, # 3 Exhibit Exh B - 02-25-18 Rechnitz email, # 4 Exhibit Exh C - Weldler Ltr to Rabbi Cohen, # 5 Exhibit Exh D - 10-04-18 Weldler email to Cohen, # 6 Exhibit Exh E - 10-26-18 Weldler email to Cohen, # 7 Exhibit Exh F - Weldler's Proposed Arbitration Award, # 8 Exhibit Exh G-1 - 10-29-18 Weldler's email to Cohen, # 9 Exhibit Exh G-2 - Weldler's Proposed Arbitration Award, # 10 Exhibit Exh H - 10-30-18 B'Kavod Ha Torah Ltr, # 11 Exhibit Exh I - 11-01-18 Weldler's email to Cohen, # 12 Exhibit Exh J - 11-05-18 Executed Arbitration Award, # 13 Exhibit Exh K - Confidential Settlement Communication, # 14 Exhibit Exh L-1 - 02-17-20 Weldler's email to Cohen, # 15 Exhibit Exh L-2 - Din Torah - Asks, # 16 Exhibit Exh M - Weldler's Documents Creation Proof, # 17 Exhibit Exh N - 02-20-20 Cohen's Ltr Directing Appearance, # 18 Exhibit Exh O - 03-09-20 Weldler's email to Cohen, # 19 Exhibit Exh P - 03-20-20 Weldler's Proposed Arbitration Award, # 20 Exhibit Exh Q - USPS Tracking (of del 11-08-18), # 21 Exhibit Exh R - 03-01-20 Kutner email to Rechnitz, # 22 Exhibit Exh S - 03-03-20 Kutner email to Rechnitz, # 23 Exhibit Exh T - 03-03-20 Weldler email to Kutner, # 24 Memorandum in Opposition Memorandum of Law) (Didora, Matthew) (Entered: 05/22/2020) |
| 05/22/2020 | 37 | MOTION to Adjourn Conference *Hearing for one week in order to allow Petitioner an opportunity to file opposition papers to cross-motion* by Shlomo Yehuda Rechnitz. (Schwalb, Efrem) (Entered: 05/22/2020) |
| 05/22/2020 | 38 | Letter *to advise the Court that defendants have consented to Petitioner's request to adjourn the hearing* by Shlomo Yehuda Rechnitz (Schwalb, Efrem) (Entered: 05/22/2020) |
| 05/22/2020 | | ORDER granting 37 Motion to Adjourn Conference. Petitioner shall respond to 36 the Kutner defendants' motion to vacate the arbitration award by Friday, May 29, 2020. The telephonic Show Cause hearing scheduled for May 26, 2020 is re-scheduled to **Wednesday, June 3, 2020 at 10:00 a.m.** The parties shall dial into a conference call with the court by dialing 888-684-8852 and entering the following access code: 1312089. |

| | | |
|---|---|---|
| | | Ordered by Judge Kiyo A. Matsumoto on 5/22/2020. (Mayer, Michael) (Entered: 05/22/2020) |
| 05/22/2020 | 39 | REPLY in Support re 25 MOTION for Interpleader Deposit (28 U.S.C. Section 1335) filed by Greystone Funding Corp.. (Attachments: # 1 Exhibit Speyer Reply Dec. Ex. A - Rechnitz letter to Greystone - 3.16.2020, # 2 Exhibit Speyer Reply Dec. Ex. B - Time entries, # 3 Exhibit Speyer Reply Dec. Ex. C - Legal database charges, # 4 Exhibit Speyer Reply Dec. Ex. D - Speyer email to Schwalb - 05.06.2020) (Speyer, Jay) (Entered: 05/22/2020) |
| 05/22/2020 | 40 | MEMORANDUM in Support re 25 MOTION for Interpleader Deposit (28 U.S.C. Section 1335) filed by Greystone Funding Corp.. (Speyer, Jay) (Entered: 05/22/2020) |
| 05/29/2020 | 41 | RESPONSE in Opposition re 16 MOTION for Permanent Injunction *to Confirm Order of Attachment in Aid of Arbitration* filed by Shlomo Yehuda Rechnitz. (Attachments: # 1 Affidavit Schwalb Declaration, # 2 Exhibit Schwalb Decl. Ex. 1) (Schwalb, Efrem) (Entered: 05/29/2020) |
| 05/29/2020 | 42 | EXHIBIT by Shlomo Yehuda Rechnitz. Related document: 41 Response in Opposition to Motion, filed by Shlomo Yehuda Rechnitz. (Attachments: # 1 Affidavit Lipnitsky Declaration) (Schwalb, Efrem) (Entered: 05/29/2020) |
| 05/29/2020 | 43 | EXHIBIT *Weldler Declaration* by Shlomo Yehuda Rechnitz. (Schwalb, Efrem) (Entered: 05/29/2020) |
| 05/29/2020 | 44 | EXHIBIT *Weldler Decl. Ex. A* by Shlomo Yehuda Rechnitz. Related document: 41 Response in Opposition to Motion, filed by Shlomo Yehuda Rechnitz. (Schwalb, Efrem) (Entered: 05/29/2020) |
| 05/29/2020 | 45 | EXHIBIT *Weldler Decl. Ex. B* by Shlomo Yehuda Rechnitz. Related document: 41 Response in Opposition to Motion, filed by Shlomo Yehuda Rechnitz. (Attachments: # 1 Exhibit Weldler Decl. Ex. C, # 2 Exhibit Weldler Decl. Ex. D, # 3 Exhibit Weldler Decl. Ex. E, # 4 Exhibit Weldler Decl. Ex. F, # 5 Exhibit Weldler Decl. Ex. G) (Schwalb, Efrem) (Entered: 05/29/2020) |
| 05/29/2020 | 46 | EXHIBIT *Weldler Decl. Ex. H* by Shlomo Yehuda Rechnitz. Related document: 41 Response in Opposition to Motion, filed by Shlomo Yehuda Rechnitz. (Attachments: # 1 Exhibit Weldler Decl. Ex. I, # 2 Exhibit Weldler Decl. Ex. J, # 3 Exhibit Weldler Decl. Ex. K, # 4 Exhibit Weldler Decl. Ex. L, # 5 Exhibit Weldler Decl. Ex. M, # 6 Exhibit Weldler Decl. Ex. N, # 7 Exhibit Weldler Decl. Ex. O, # 8 Exhibit Weldler Decl. Ex. P, # 9 Exhibit Weldler Decl. Ex. Q, # 10 Exhibit Weldler Decl. Ex. R) (Schwalb, Efrem) (Entered: 05/29/2020) |
| 06/01/2020 | | SCHEDULING ORDER: The hearing scheduled for this Wednesday, June 3, 2020 at 10:00 a.m. shall proceed before Judge Matsumoto by video conference. Counsel for all parties will receive a link via email to access the video conference in advance of the hearing. Counsel shall inform chambers and all other parties, by 3:00 p.m. tomorrow, June 2, 2020, of any non-counsel parties who will address the court during the hearing. Ordered by Judge Kiyo A. Matsumoto on 6/1/2020. (Mayer, Michael) (Entered: 06/01/2020) |
| 06/03/2020 | | Minute Entry for proceedings held before Judge Kiyo A. Matsumoto: On June 3, 2020, the parties appeared before the court by video conference to discuss the parties' pending motions. Appearance for Petitioner: Efrem Tobias Schwalb, Esq. Appearance for Ephraim and Jonathan Kutner: Matthew Didora, Esq. Appearance for Greystone Funding Corp.: Jay R. Speyer, Esq. |
| | | The parties presented their arguments regarding 16 Petitioner's Motion to Confirm an Order of Attachment in Aid of Arbitration, 25 Greystone Funding's Motion for |

A-10

| | | |
|---|---|---|
| | | Interpleader Deposit and Attorneys' Fees, and 36 the Kutner defendants' Cross-Motion to Vacate an Arbitration Award. The Court accepted the evidence submitted by the parties as exhibits with their various submissions. Counsel for Petitioner and counsel for the Kutner defendants confirmed that they did not have additional evidence to submit to the Court. The Court shall issue a written decision adjudicating the parties' pending motions. Video Conference held on 6/3/2020. (Court Reporter Anthony Mancuso.) (Mayer, Michael) (Entered: 06/03/2020) |
| 06/08/2020 | 47 | ORDER. For the reasons contained in the attached Memorandum and Order, as well as those stated on the record at the hearing held on June 3, 2020, the court GRANTS 16 Petitioner's motion to confirm the order of attachment in aid of arbitration, DENIES 36 the Kutner defendants' motion to vacate the underlying arbitration award, and GRANTS IN PART 25 Greystone's motion for interpleader deposit. Greystone is dismissed from this action, except to the extent the court may be called upon to enforce the payment of the Greystone Lawsuit settlement to Petitioner. Petitioner and the Kutner defendants have agreed that they may not commence any new proceedings against Greystone for payment of the Greystone Lawsuit settlement to Petitioner, except to enforce the same. The parties shall hold Greystone harmless with respect to the funds from the Greystone Lawsuit settlement. Greystone is also awarded $13,063.54 in attorneys' fees and costs, which it may deduct from the Greystone Lawsuit settlement funds. Because the court hereby confirms the arbitration award concerning the Greystone Lawsuit, it is no longer necessary for Greystone to deposit the funds with the Registry of the Court. Instead, Greystone is ordered to pay the funds directly to Petitioner in accordance with the arbitration award, as set forth in the attached Memorandum and Order. Because the arbitration before Rabbi Cohen remains ongoing, the parties are encouraged to submit any future disputes to him for resolution. This court, however, will retain jurisdiction over enforcement of this Order. The Clerk of Court is respectfully directed to terminate Greystone Funding Corp. as a defendant, to enter judgment in favor of Petitioner, and close this case. Ordered by Judge Kiyo A. Matsumoto on 6/8/2020. (Mayer, Michael) (Entered: 06/08/2020) |
| 06/15/2020 | 48 | CLERK'S JUDGMENT that Petitioners motion to confirm the arbitration award and the order of attachment in aid of arbitration is granted; that the Kutner defendants motion to vacate the underlying arbitration award is denied; that Greystones motion for interpleader deposit is granted in part; that Greystone is dismissed from this action, except to the extent the court may be called upon to enforce the payment of the Greystone Lawsuit settlement to Petitioner; that Greystone is also awarded $13,063.54 in attorneys fees and costs, which it may deduct from the Greystone Lawsuit settlement funds; that Greystone is ordered to pay the funds directly to Petitioner in accordance with the arbitration award; and that judgment is hereby entered in favor of Petitioner. Signed by Douglas C. Palmer, Clerk of Court by Jalitza Poveda, Deputy Clerk on 6/15/2020. (Herrera, Isaiah) (Entered: 06/15/2020) |
| 06/23/2020 | 49 | NOTICE OF APPEAL as to 48 Clerk's Judgment,,, by Ephraim Kutner, Jonathan Kutner. Filing fee $ 505. Tracking Id: ANYEDC- (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Marziliano, August). Modified on 6/23/2020 (Marziliano, August). Modified on 7/8/2020 (Marziliano, August). (Entered: 06/23/2020) |
| 06/23/2020 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 49 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for |

A-11

| | | |
|---|---|---|
| | | documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (Marziliano, August) (Entered: 06/23/2020) |
| 06/23/2020 | | USCA Appeal Fees received $ 505 receipt number ANYEDC-12965447 re 49 Notice of Appeal, filed by Jonathan Kutner, Ephraim Kutner (Marziliano, August) (Entered: 07/08/2020) |
| 08/07/2020 | 50 | Notice of Related Case: **The Civil Cover Sheet filed in this civil action indicates a related case.** (Landow, Concetta) (Entered: 08/07/2020) |
| 08/18/2020 | 51 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings held on 06/03/2020, before Judge Matsumoto. Court Reporter/Transcriber Anthony Mancuso, Telephone number 718-613-2419. Email address: anthonymancuso65@msn.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 9/8/2020. Redacted Transcript Deadline set for 9/18/2020. Release of Transcript Restriction set for 11/16/2020. (Mancuso, Anthony) (Entered: 08/18/2020) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 11/05/2020 11:40:03 | | | |
| **PACER Login:** | selbybrown | **Client Code:** | 389025-789025 |
| **Description:** | Docket Report | **Search Criteria:** | 1:20-cv-01607-KAM-VMS |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SHLOMO YEHUDA RECHNITZ,                              Case No.

                        Petitioner/Plaintiff,          **COMPLAINT AND PETITION**
                                             **TO CONFIRM ARBITRATION**
                                             **AWARD AND FOR AN ORDER**
    v.                                          **OF ATTACHMENT IN AID OF**
                                             **ARBITRATION**
EPHRAIM KUTNER, JONATHAN KUTNER and
GREYSTONE FUNDING CORP.,

                         Respondents/Defendants.
-----------------------------------------------------------------X

       Petitioner and Plaintiff Shlomo Yehuda Rechnitz ("Rechnitz"), by and through his

undersigned counsel, Koffsky Schwalb LLC, as and for his Complaint and Petition to confirm an

arbitration award against Defendants Ephraim Kutner and Jonathan Kutner (the "Kutners" or

"Defendants") and for an order of attachment in aid of arbitration, respectfully states and alleges:

### NATURE OF THE PROCEEDING

       1.     This is an action (a) to confirm an arbitration award (the "Award") pursuant to 9

U.S.C.A. §§ 9 and 13 in favor of Rechnitz and against the Kutners, and to require the moneys that

defendant Greystone Funding Corp. ("Greystone") owes to the Kutners to be paid directly to

Rechnitz as required by the Award; and (b) for an order pursuant to Rule 64 of the Federal Rules

of Civil Procedure and Articles 62 and 75 of New York's Civil Practice Law and Rules ("CPLR")

in aid of arbitration attaching the moneys paid and to be paid by Greystone to the Kutners in

connection with a lawsuit between those parties so that the Award will not be rendered ineffectual.

Rechnitz brings related claims against the defendants in connection with their failure to transfer

such amounts to Rechnitz as the parties agreed and in accordance with the Award.

       2.     In 2013, the Kutners sought to borrow money from Rechnitz to fund a lawsuit

between them and their former employer Greystone (the "Greystone Lawsuit"), among other

things.  Rechnitz is a businessperson who is involved in a wide array of business and philanthropic ventures.  Rechnitz periodically assists others by lending money for other people's businesses without charging interest.  Rechnitz agreed to loan the Kutners money to assist in funding their lawsuit against Greystone, at Rechnitz's discretion (the "Greystone Loan"), provided that any recovery from the lawsuit would first be used to repay the loan from Rechnitz, and Rechnitz would receive 30 percent of any profits recovered in the Greystone Lawsuit.

3.      Over the next several years, Rechnitz advanced more than $3 million dollars to the Kutners to fund the Greystone Lawsuit.  The Greystone Lawsuit was settled with Greystone for $8 million, with Greystone agreeing to make monthly payments of $150,000 commencing in May 2019.  Rechnitz is owed a total of $4,399,976 in connection with the Greystone Loan, which consists of $3,071,009 that he provided to the Kutners to assist them in funding the lawsuit against Greystone, plus $1,328,967 representing Rechnitz's 30 percent share of the amount recovered after deducting legal expenses (which includes the $3,071,000 provided by Rechnitz plus $500,000 that the Kutners claimed they spent).  Additionally, Rechnitz is owed more than $7.6 million for other loans that he advanced to the Kutners to assist them with one of their businesses.

4.      Since May 2019, Greystone has paid the Kutners more than $1.4 million, but none of that money has been delivered to Rechnitz.

5.      In 2018, the parties had disputes regarding the various loans provided by Rechnitz to the Kutners including the Greystone Loan.  Rechnitz was reasonably concerned that the Kutners would not repay Rechnitz the money that he had loaned to them including the Greystone Loan. The parties agreed to arbitrate their disputes before Rabbi Dovid Cohen, a Jewish legal authority who resides in Brooklyn and was recommended by the Kutners.

6.    On August 14, 2018, the parties signed an arbitration agreement and appeared before Rabbi Cohen regarding the Greystone Loan, among other disputes.  Rabbi Cohen reserved his decision regarding the Greystone Loan to allow the parties to engage in settlement discussions. After many months of failed settlement negotiations, Rechnitz requested that Rabbi Cohen reconvene the arbitration or issue a decision directing that all moneys to be received from Greystone be paid directly to Rechnitz.  By letter from their rabbinic lawyer to Rabbi Cohen, the Kutners stated that they would not appear before Rabbi Cohen claiming that they never agreed to arbitrate before him (just mediate).  Second, they asserted that they had a binding settlement agreement with Rechnitz already based on a couple of emails that they forwarded to Rabbi Cohen. Therefore, they claimed there was nothing to arbitrate.  Rechnitz responded that the parties had entered into a binding arbitration agreement, that Rabbi Cohen had reserved decision on the Greystone Loan dispute to allow for settlement discussions, and that the purported e-mail agreement provided by the Kutners' rabbinic lawyer was, on its face, not an agreement.

7.    On March 11, 2020, Rabbi Cohen issued an arbitration award in favor of Rechnitz (attached hereto as **Exhibit 1**) and ordered that:

1.   All amounts still owed by Greystone Funding shall be paid directly to SYR [*i.e.*, Rechnitz], including the $3,071,009 provided by SYR to fund the lawsuit against Greystone, plus the $1,328,967 representing SYR's 30 percent share of the remaining amount recovered in that lawsuit.

2.   Any additional amounts from that lawsuit shall be paid to SYR for repayment of amounts owing to SYR relating to other outstanding amounts.  SYR may contact Greystone Funding directly and direct Greystone Funding to make all payments directly to SYR.

3.   The Kutners and all entities they control shall cooperate and not interfere with the instructions to Greystone Funding to make all payments relating to the Greystone Lawsuit directly to SYR.

4.   If requested by SYR, the Kutners shall execute any and all additional documents that will allow SYR or his agent to control, manage and act

3

on behalf of the Kutners in connection the Greystone Lawsuit settlement.

8.      By this action, Rechnitz seeks an order (a) confirming the Award; (b) directing judgment to be entered in Rechnitz's favor; (c) requiring the Kutners to carry out the directions ordered by Rabbi Cohen, (d) requiring Greystone to pay the amounts owed under the Greystone Settlement directly to Rechnitz; (e) attaching the proceeds of any payments made or to be made by Greystone to the Kutners in connection with the Greystone Settlement.

## PARTIES

9.      Petitioner/Plaintiff Shlomo Yehuda Rechnitz is a citizen of California residing in Los Angeles, California.

10.      Respondent/Defendant Ephraim Kutner is a citizen of New York residing in Lawrence, New York.

11.      Respondent/Defendant Jonathan Kutner is a citizen of New York residing in Lawrence, New York.

12.      Respondent/Defendant Greystone Funding Corp. is a Delaware corporation with its principal place of business in the State of New York.

## JURISDICTION AND VENUE

13.      The subject matter jurisdiction of the court is based on 28 U.S.C.A. § 1332. The amount in controversy exclusive of interest and costs, exceeds $75,000 and the parties are citzens of different States.

14.      This Court has personal jurisdiction over the defendants as each defendant resides in New York, and New York is the principal place of business of each defendant.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C.A. § 1391 because the defendants resides in this District and a substantial portion of the events giving rise to the action, including the signing of the contract to arbitrate and the arbitration occurred in this District.

## FACTUAL BACKGROUND

16.     The Kutners are in the real estate financing business.

17.     Rechnitz is a businessperson who is involved in a wide array of business and philanthropic ventures.  Rechnitz periodically assists others by lending money for other people's businesses without charging interest.

18.     In 2013, the Kutners approached Rechnitz about making a loan to fund a lawsuit against their former employer Greystone, as well as other loans relating to healthcare businesses around the United States.

19.     With respect to the Greystone Lawsuit, Rechnitz agreed to assist in funding the lawsuit provided that (a) the money Rehnitz loaned be repaid before any money was distributed to the Kutners, and (b) Rechnitz would receive 30 percent of any recovery after deducting the expenses for the lawsuit (the "Greystone Loan Agreement").

20.     Pursuant to the Greystone Loan Agreement, Rechnitz loaned $3,071,009 to the Kutners.

## THE ARBITRATION AND THE AWARD

21.     In 2018, the parties negotiated for several months to try to work out a resolution of various disputes that had arisen relating to various business arrangements between the parties.

22.     The parties are all Orthodox Jews.  According to Jewish law, certain legal disputes that cannot be resolved are to be presented before Beit Din or Jewish court to be decided by either one or more Rabbinic judges.  When the parties could not agree upon a resolution of their various

disputes, they agreed to arbitrate their disputes before Rabbi Dovid Cohen, a prominent and well-respected Rabbinic judge who lives in Brooklyn.  Rabbi Cohen was suggested as an arbitrator by the Kutners, and Rechnitz agreed.

23.     On August 14, 2018, the parties appeared before Rabbi Cohen and signed an agreement in which they submitted their disputes to Rabbi Cohen for adjudication.  The arbitration agreement states: "Shlomo Yehuda Rechnitz (SYR) on his own, and as a partner in Harborview Capital LLC and Jonathan and Ephraim Kutner (JEK) on their own, and as partners in the above company, have come to me to adjudicate a dispute.  They have agreed to accept my decision."  The agreement, which is attached as **Exhibit 2**, is signed by Rabbi Cohen, Rechnitz and the Kutners.

24.     At the arbitration, evidence was provided regarding various loans made by Rechnitz to the Kutners including the Greystone Loan.  Altogether, Rechnitz was owed more than $11 million in principal from loans that he provided to the Kutners, including the Greystone Loan.

25.     Respondents did not dispute that Rechnitz provided this funding and was entitled to a return of this money.

26.     Rechnitz requested interim relief to ensure that interest payments being received by the Kutners from certain healthcare business borrowers to whom the Kutners loaned some of the money they had received from Rechnitz was placed in escrow and would be used to repay Rechnitz.  Rabbi Cohen granted this relief but the Kutners have ignored Rabbi Cohen's order.

27.     On or about August 21, 2018, Respondents' rabbinic advocate Yochanan Bechhofer sent a letter to Rabbi Cohen (**Exhibit 3** hereto) first advising him that when the Kutners appeared before Rabbi Cohen at the August 14 arbitration, they thought they were appearing before Rabbi Cohen only for a mediation, not an arbitration.  Bechhofer further asserted that the Kutners signed the arbitration agreement "so as not to hamper the flow of the mediation."  Each of these

statements is untrue.  The parties agreed to select Rabbi Cohen to arbitrate, not mediate, their disputes.  The arbitration agreement makes clear that the Kutners knew and had agreed to arbitrate before Rabbi Cohen.

28.     Moreover, Bechhofer's letter makes clear that although the Kutners claimed after the hearing that they misunderstood the nature of the proceeding before Rabbi Cohen, the Kutners were not disputing their freely manifested intent to participate in arbitration proceedings.  Indeed, at that time, the Kutners requested another hearing before Rabbi Cohen at which time they would present "all of our evidence, including documents, recordings and witnesses who will fly in to give their testimony." (*Id.*)

29.     By letter dated August 22, 2018, Rabbi Cohen responded to Bechhofer's letter stating that he "challenge[d] the statement that there was any hint of coercion to sign an arbitration agreement . . .  Both sides were quite amenable when I asked what they preferred and it was arbitration."  (*See* **Exhibit 4** hereto).  Among other things, Rabbi Cohen stated that the Kutners "had been assured that we will all get together before a final decision is rendered."

30.     In May 2019, the Greystone Lawsuit was settled with Greystone agreeing to pay $8 million to the Kutners over the course of several years.  Since May 2019, the Kutners have been receiving $150,000 per month from Greystone, but have not turned that money over to Rechnitz in accordance with the Greystone Loan Agreement.

31.     After the arbitration hearing, the parties engaged in settlement negotiation to try to resolve all of their disputes.  In the meantime, the Kutners refused to turn over all of the funds that they were receiving from Greystone even though it is undisputed that aside from owing Rechnitz more than $4 million in connection with the Greystone Loan, the Kutners owe many more millions of dollars to Rechnitz.

32.     After many months of failed settlement negotiations, in February 2020, Rechnitz requested that Rabbi Cohen summons the Kutners to appear before him so that they could have an opportunity to provide their purported "evidence, including documents, recordings and witnesses who will fly in to give their testimony" as their rabbinic lawyer had claimed they would do.

33.     However, the Kutners have refused to cooperate or respond regarding continuing the arbitration proceeding.  By letter from their rabbinic lawyer to Rabbi Cohen, the Kutners stated that they would not appear before Rabbi Cohen repeating their claim that they never agreed to arbitrate before him (just mediate) and that, in any event, they had a binding settlement agreement with Rechnitz already based on a couple of emails that they forwarded to Rabbi Cohen and therefore there was nothing to arbitrate.

34.     Rechnitz responded that the parties had entered into a binding arbitration agreement, that Rabbi Cohen had reserved decision on the Greystone Loan dispute to allow for settlement discussions, and that the purported e-mail agreement provided by the Kutners' rabbinic lawyer was, on its face, not an agreement.

35.     Because the Kutners would not appear and present whatever evidence they believed they had in defense of their claims, Rechnitz requested that Rabbi Cohen issue an award in connection with the Greystone Loan finding that the Kutners owed the $3,071,009 provided by Rechnitz to fund the lawsuit against Greystone, plus the $1,328,967 representing Rechnitz's 30 percent share of the remaining amount recovered in that lawsuit.  Rechnitz further requested that any additional amounts received from Greystone should be paid to Rechnitz for repayment of millions of dollars owed by the Kutners to Rechnitz in connection with other business dealings that is the subject of a separate arbitration award that was issued by Rabbi Cohen against the

Kutners.  Finally, Rechnitz requested that the Kutners direct Greystone to make all future payments directly to Rechnitz.

36.     On March 11, 2020, Rabbi Cohen issued an arbitration award in favor of Rechnitz as set forth in detail above.  Rabbi Cohen ruled that all amounts Greystone owed to the Kutners pursuant to the Greystone Lawsuit settlement should be paid directly to Rechnitz, and the Kutners should cooperate and direct Greystone to pay such moneys to Rechnitz.

37.     The Kutners have refused to cooperate with the decision of Rabbi Cohen. Greystone was advised and provided with the Arbitration Award.  The principals of Greystone are also Orthodox Jews.  On March 25, 2020, Rabbi Cohen issued another order directly at Greystone requiring them to pay the monthly $150,000 payment directly to Rechnitz.

### FIRST CAUSE OF ACTION
**(Confirmation of Arbitration Award Against
Ephraim Kutner and Jonathan Kutner)**

38.     Rechnitz repeats and realleges each of the prior allegations as if fully set forth herein.

39.     Rechnitz respectfully requests that this Court enter judgment as against the Kutners confirming the Award and requiring Greystone to make all monthly payments directly to Rechnitz.

40.     This Complaint and Petition is brought within one year after the delivery of the aforesaid Award, and the Award has not been vacated or modified.

### SECOND CAUSE OF ACTION
**(Ex Parte Attachment in Aid of Arbitration Against
Respondents/Defendants)**

41.     Rechnitz repeats and realleges each of the prior allegations as if fully set forth herein.

42.     The parties agreed to arbitrate their disputes including Rechnitz's claims against the Kutners regarding the Greystone Loan before Rabbi Dovid Cohen.

43.     Accordingly, by the arbitration, Plaintiff/Petitioner is asserting a cause of action within the meaning of CPLR 7502(c) and 6212(a).

44.     This Court has personal jurisdiction over Respondents/Defendants' property including the proceeds of the Greystone Lawsuit settlement.

45.     As set forth herein, the memorandum of law and in the other papers filed herewith, Rechnitz has satisfied any burden that it has of showing that it is probable that it will succeed on the merits in the arbitration because the arbitrator has already issued the Award.

46.     The Kutners asserted no counterclaims in the arbitration.  Accordingly, the amount demanded from the defendants exceeds all counterclaims known to the plaintiff in accordance with CPLR 6212(a).

47.     Petitioner seeks an Order of Attachment in aid of arbitration to ensure that the Award will be satisfied and effectual.  The Kutners conduct to date demonstrates that they will not comply with the Award.

48.     Accordingly, an Order of Attachment should be issued against Respondents/Defendants on the amounts paid to date, and to be paid by Greystone to the Kutners in connection with the Greystone Lawsuit settlement.

### THIRD CAUSE OF ACTION
### (Money Had and Received Against All Defendants)

49.     In the alternative, Rechnitz repeats and realleges each of the prior allegations as if fully set forth herein.

50.     Rechnitz is the legal owner of the $150,000 in monthly payments that are owed by Greystone pursuant to the Greystone Lawsuit settlement.

51.     Defendants are diverting money belonging to Rechnitz.

52.     Greystone is transferring money to the Kutners that legally belongs to Rechnitz.

53.     Greystone has been made aware that its payments pursuant to the Greystone Lawsuit settlement should be made to Rechnitz.

54.     Defendants have benefited from the receipt and/or diversion of the money belonging to Rechnitz.

55.     Under principles of good conscience, such moneys should not be allowed to be retained by or transferred to the Kutners.

56.     As a direct and proximate result of Defendants' misconduct, Rechnitz has and continues to incur damages in an amount to be determined at trial.

57.     The Court should impose a constructive trust in favor of Rechnitz and against Defendants on all amounts previously transferred by Greystone to the Kutners, and amounts to be transferred by Greystone to the Kutners pursuant to the Greystone Lawsuit settlement.

**FOURTH CAUSE OF ACTION**
**(Conversion Against All Defendants)**

58.     In the alternative, Rechnitz repeats and realleges each of the prior allegations as if fully set forth herein.

59.     Rechnitz is the legal owner of the $150,000 in monthly payments that are owed by Greystone pursuant to the Greystone Lawsuit settlement.

60.     Greystone has been made aware that its payments pursuant to the Greystone Lawsuit settlement should be made to Rechnitz.

61.     Greystone's release of such payment to the Kutners constitutes conversion by each of the defendants.

62.     Rechnitz is therefore entitled to an order requiring Greystone to turnover the monthly $150,000 payments directly to Rechnitz.

**FIFTH CAUSE OF ACTION**
**(Breach of Contract Against the Kutners)**

63.     In the alternative, Rechnitz repeats and realleges each of the prior allegations as if fully set forth herein.

64.     Rechnitz and the Kutners entered into an agreement whereby Rechnitz agreed to loan the Kutners money to assist in funding their lawsuit against Greystone, at Rechnitz's discretion (the "Greystone Loan"), provided that any recovery from the lawsuit would first be used to repay the loan from Rechnitz, and Rechnitz would receive 30 percent of any profits recovered in the Greystone Lawsuit after deducting legal expenses.

65.     Rechnitz complied with the terms of the agreement and loaned $3,071,009 to the Kutners for the Greystone Lawsuit.

66.     The Greystone Lawsuit was settled for $8 million, but the Kutners have breached the agreement with Rechnitz by failing to repay the loan plus the 30 percent interest that Rechnitz is entitled to.

67.     Rechnitz has been damaged to be determined at trial but not less than $4,399,976.

68.     Greystone should be required to make the monthly payments pursuant to the Greystone Lawsuit settlement directly to Rechnitz.

**SIXTH CAUSE OF ACTION**
**(Breach of Fiduciary Duty Against the Kutners)**

69.     In the alternative, Rechnitz repeats and realleges each of the prior allegations as if fully set forth herein.

70.     The Kutners were partners with Rechnitz in connection with their pursuit and recovery from the Greystone Lawsuit.  As partners, the Kutners owed Rechnitz a fiduciary of good faith and loyalty.

71.     By not paying the monthly payments received from Greystone to Rechnitz in connection with the Greystone Lawsuit settlement, the Kutners breached their fiduciary duty of good faith and loyalty to Rechnitz.

72.     Rechnitz has been damaged to be determined at trial but not less than $4,399,976.

73.     Greystone should be required to make the monthly payments pursuant to the Greystone Lawsuit settlement directly to Rechnitz.

### SEVENTH CAUSE OF ACTION
**(Aiding and Abetting Breach of Fiduciary Duty Against Greystone)**

74.     In the alternative, Plaintiff repeats and realleges each of the prior allegations set forth as if fully set forth herein.

75.     The Kutners were partners with Rechnitz in connection with their pursuit and recovery from the Greystone Lawsuit.  As partners, the Kutners owed Rechnitz a fiduciary of good faith and loyalty.

76.     By not paying the monthly payments received from Greystone to Rechnitz in connection with the Greystone Lawsuit settlement, the Kutners breached their fiduciary duty of good faith and loyalty to Rechnitz.

77.     Greystone was made aware of the agreement between the Kutner and Rechnitz relating to the Greystone Lawsuit.

78.     Demand has been made on Greystone to transfer the monthly payments that it agreed to make pursuant to the settlement directly to Rechnitz.

79.     Greystone has refused to make such payments to Rechnitz, and instead continues to make such payments to the Kutners.

80.     Greystone's payments to the Kutners is substantially assisting the Kutners in breaching their fiduciary duties to Rechnitz.

81.     Greystone's misconduct in making such payments is willful, and has caused caused significant harm to Rechnitz.

82.     As a direct result of Greystone's tortious conduct, Plaintiff has suffered damages in an amount to be determined at trial, but not less than $4,399,976.

**EIGHTH CAUSE OF ACTION**
**(Turnover Against All Defendants)**

83.     In the alternative, Rechnitz repeats and realleges each of the prior allegations as if fully set forth herein.

84.     The Kutners have an interest in the $150,000 monthly payments that are owed by Greystone to them pursuant to the Greystone Lawsuit settlement.

85.     Rechnitz's right to those monthly payments is superior to the Kutners and Greystone.

86.     Rechnitz is therefore entitled to an order requiring Greystone to turnover the monthly $150,000 payments directly to Rechnitz.

**NINTH CAUSE OF ACTION**
**(Constructive Trust Against All Defendants)**

87.     In the alternative, Rechnitz repeats and realleges each of the prior allegations as if fully set forth herein.

88.     The Kutners were partners with Rechnitz in connection with their pursuit and recovery from the Greystone Lawsuit.  As partners, the Kutners owed Rechnitz a fiduciary of good faith and loyalty.

89.     In reliance on the Kutners promise that it would repay Rechnitz for assisting in funding the Greystone Lawsuit, Rechnitz transfer more than $3 million to the Kutners.

90.     The Kutners settled the Greystone Lawsuit and have received more than $1.4 million from Greystone, and continue to receive payments of $150,000 per month.

91.     The Kutners have been unjustly enriched their receipt of the settlement proceeds from Greystone without paying Rechnitz what he was promised.

92.     Rechnitz is therefore entitled to a constructive trust on the moneys received by the Kutners from Greystone, as well as the $150,000 monthly payments to be paid by Greystone as part of the settlement.

WHEREFORE, Petitioner respectfully requests that this Court grant this Petition and enter an Order: (a) confirming the Award; (b) directing judgment to be entered in Rechnitz's favor; (c) directing Greystone to make all payments relating to the Greystone Lawsuit settlement directly to Rechnitz; (d) attaching all moneys paid and to be paid by Greystone to the Kutners or their affiliates in aid of arbitration (e) in the alternative, award damages on the second through eighth causes of action in an amount to be determined at trial, but not less than $4,399,976 and impose a constructive trust and attachment on the amounts received by the Kutners from Greystone to date, as well as the amounts to be paid by Greystone pursuant to the Greystone Lawsuit settlement, and (f) for such other further and different relief as this Court deems just and proper, together with Rechnitz's reasonable attorneys' fees, costs and expenses incurred in connection with this proceeding.

Dated: New York, New York
      March 30, 2020

KOFFSKY SCHWALB LLC

By: _____
     Efrem Schwalb
349 Fifth Avenue, Suite 733
New York, New York 10016
(646) 553-1590

*Attorneys for Petitioner/Plaintiff*

# EXHIBIT 1

ביהמ"ד גבול יעבץ
ברוקלין, נוא יארק

דוד קאהן

---

In the Matter of the Din Torah Arbitration Between

Shlomo Yehuda Rechnitz

and

Ephraim Kutner and Jonathan Kutner

~~[PROPOSED]~~ **ARBITRATION AWARD RELATING TO GREYSTONE LAWSUIT JOINT VENTURE DISPUTE**

---

On August 14, 2018, Shlomo Yehuda Rechnitz ("SYR"), on the one hand, and Ephraim Kutner and Jonathan Kutner (the "Kutners"), on the other hand, appeared before me to arbitrate various disputes relating to their business dealings that they had been discussing and trying to resolve for many months prior to their appearance. The parties signed an arbitration agreement which is attached as Exhibit 1 to this decision and award pursuant to which they agreed to abide by my decision. At that time several issues were discussed including, but not limited to, a dispute regarding the repayment of a loan provided by SYR to the Kutners in connection with a lawsuit between Greystone Funding Corp. and the Kutners (the "Greystone Lawsuit"), and a sharing agreement from any recovery for that lawsuit equal to 30 percent of the recovery from the lawsuit after subtracting the amount spent by SYR to finance the lawsuit.

It was undisputed by the parties that SYR had provided $3,071,009.00 to fund the Greystone Lawsuit. SYR has provided information establishing that the Greystone Lawsuit was settled for $8 million, that SYR is owed $3,071,009 for financing the Kutners in that lawsuit, plus not less than $1,328,697 representing SYR's 30 percent share of the recovery from that lawsuit.

1

After more than a year of settlement negotiations that did not result in an agreement, SYR requested that the parties meet again with me for a decision on the items that were discussed at the first hearing in the arbitration. The Kutners have refused to attend a subsequent hearing and claimed that they did not submit the disputes to arbitration, only mediation, and that the parties settled all of their disputes. I have reviewed the documents submitted by the Kutners and find that on their face, there was no settlement of the parties' disputes. I also reject the argument by the Kutners that the dispute was only submitted to me for mediation, as it was made clear at the hearing that the parties were submitting their disputes to me for a legal adjudication, not mediation, and in fact, the Kutners were the party that selected me as the arbitrator in this matter and the document signed by the parties made clear that the parties were submitting their disputes to me for a decision.

Accordingly, this is my decision regarding the Greysone Lawsuit dispute. I will issue a separate decision on the other outstanding disputes.

IT IS HEREBY ORDERED AND ADJUDGED THAT:

1. All amounts still owed by Greystone Funding shall be paid directly to SYR, including the $3,071,009 provided by SYR to fund the lawsuit against Greystone, plus the $1,328,967 representing SYR's 30 percent share of the remaining amount recovered in that lawsuit. Any additional amounts from that lawsuit shall be paid to SYR for repayment of amounts owing to SYR relating to other outstanding amounts. SYR may contact Greystone Funding directly and direct Greystone Funding to make all payments directly to SYR.

2. The Kutners and all entities they control shall cooperate and not interfere with the instructions to Greystone Funding to make all payments relating to the Greystone Lawsuit directly to SYR.

2

3. If requested by SYR, the Kutners shall execute any and all additional documents that will allow SYR or his agent to control, manage and act on behalf of the Kutners in connection the Greystone Lawsuit settlement.

4. This award constitutes a final award concerning the dispute regarding the Greystone Lawsuit, as well as constituting an award of injunctive relief issued to protect SYR's right to receive back the money that he provided to fund the Greystone Lawsuit, as well as his 30 percent share of the profit from that lawsuit and other moneys that he is owed.

5. I retain jurisdiction concerning the Greystone Lawsuit dispute to the extent that the Kutners fail to follow this award or a Court decides not to confirm this award. Additionally, I retain jurisdiction concerning the parties' other business disputes.

Dated: March 11, 2020
      Brooklyn, New York

Rabbi Dovid Cohen

STATE OF NEW YORK)
                ss.:
COUNTY OF KINGS)

On the 11th day of March, in the year 2020, before me, the undersigned, personally appeared Rabbi Dovid Cohen, personally known to me on the basis of satisfactory evidence to the individual whose name is subscribed within the arbitration award dated March 11, 2020 and acknowledged to me that he executed the same in his capacity, and that by his signature on the arbitration award, Rabbi Dovid Cohen executed the arbitration award.

Notary Public

MICHAEL KORSINSKY
Notary Public, State of New York
No. 02KO6093566
Qualified in Kings County
Commission Expires Nov. 25, 20__

3

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ ☐ Agent ☐ Addressee<br>B. Received by *(Printed Name)*   C. Date of Delivery |
| 1. Article Addressed to:<br><br>Harborview Co,<br>335 Central Avenue<br>Lawrence, New York<br>     11559 | D. Is delivery address different from item 1? ☐ Yes<br>   If YES, enter delivery address below: ☐ No |

9590 9402 4337 8190 9704 21

2. Article Number *(Transfer from service label)*

| 3. Service Type<br>☐ Adult Signature<br>☐ Adult Signature Restricted Delivery<br>☐ Certified Mail®<br>☐ Certified Mail Restricted Delivery<br>☐ Collect on Delivery<br>☐ Collect on Delivery Restricted Delivery<br>☐ Insured Mail<br>☐ Insured Mail Restricted Delivery (over $500) | ☐ Priority Mail Express®<br>☐ Registered Mail™<br>☐ Registered Mail Restricted Delivery<br>☐ Return Receipt for Merchandise<br>☐ Signature Confirmation™<br>☐ Signature Confirmation Restricted Delivery |

PS Form 3811, July 2015 PSN 7530-02-000-9053     Domestic Return Receipt

---

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ ☐ Agent ☐ Addressee<br>B. Received by *(Printed Name)*   C. Date of Delivery |
| 1. Article Addressed to:<br><br>Ephraim Kutner<br>C/o Harborview<br>335 Central Avenue<br>Lawrence, New York<br>    11559 | D. Is delivery address different from item 1? ☐ Yes<br>   If YES, enter delivery address below: ☐ No |

9590 9402 4337 8190 9704 38

2. Article Number *(Transfer from service label)*

| 3. Service Type<br>☐ Adult Signature<br>☐ Adult Signature Restricted Delivery<br>☐ Certified Mail®<br>☐ Certified Mail Restricted Delivery<br>☐ Collect on Delivery<br>☐ Collect on Delivery Restricted Delivery<br>☐ Insured Mail<br>☐ Insured Mail Restricted Delivery (over $500) | ☐ Priority Mail Express®<br>☐ Registered Mail™<br>☐ Registered Mail Restricted Delivery<br>☐ Return Receipt for Merchandise<br>☐ Signature Confirmation™<br>☐ Signature Confirmation Restricted Delivery |

PS Form 3811, July 2015 PSN 7530-02-000-9053     Domestic Return Receipt

Case 1:20-cv-01607-KPF-RWL Document 1 Filed 02/20/20 Page 22 of 29 PageID #: 22



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Sent To: Shlomo Yehuda Pechnitz
Street and Apt. No., or PO Box No.: 102 N Alta Vista Blvd
City, State, ZIP+4®: Los Angeles, California 90036

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Sent To: Jonathan Kutner
Street and Apt. No., or PO Box No.: 335 Central Avenue
City, State, ZIP+4®: Lawrence, NY 11559

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

---

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Sent To: Ephraim Kutner c/o Harborview
Street and Apt. No., or PO Box No.: 335 Central Avenue
City, State, ZIP+4®: Lawrence, NY 11559

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

**OFFICIAL USE**

Certified Mail Fee $

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $

Postage $

Total Postage and Fees $

Postmark Here

Sent To  Harborview Co.

Street and Apt. No., or PO Box No.  335 Central Avenue

City, State, ZIP+4®  Lawrence, NY  11559

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

CERTIFIED MAIL
PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7018 0680 0000 5725 0616
7018 0680 0000 5725 0616
7018 0680 0000 5725 0616

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Shlomo Yehuda Rechnitz
102 N. Alta Villa Blvd
Los Angeles, California
90036

9590 9402 4337 8190 9704 45

2. Article Number *(Transfer from service label)*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:      ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Jonathan Kutner
c/o Harborview
335 Central Avenue
Lawrence, New York 11559

9590 9402 4337 8190 9704 14

2. Article Number *(Transfer from service label)*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:      ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

Case 1:20-cv-01607-KAM-VMS   Document 1   Filed 03/30/20   Page 24 of 29 PageID #: 24

# EXHIBIT 2

305

Shlomo Yehuda Rechnitz (SYR) on his own, and as a partner in Harborview Capital "and Jonathan and Ephraim Kutner (JEK) on their own, and as partners in the above company, have come to me to adjudicate a dispute. They have agreed to accept my decision.

Rabbi David Cohen   Aug. 14, 18

[signature]   09/14/18

[signature]   8/14/18

[signature]   8/14/18

# EXHIBIT 3

*[Hebrew handwriting]*

This message is being sent via email to R' Shlomo Rechnitz and his CFO, David Weldler.

My name is Yochanan Bechhofer and I am advising Ephraim and Yoni Kutner in regard to their dispute with the aforementioned party. I am writing this on their behalf.

The Kutner brothers came into you last week with the understanding that it was to be a mediation and not an arbitration. They did not question signing the document that was placed before them so as not to hamper the flow of the mediation. They were surprised by the unannounced appearance of Mr. Rechnitz's CFO, as it was previously agreed that only Mr. Rechnitz would be in attendance. The goal of the meeting was to mediate in the presence of the Rav to bring a resolution to the dispute. However, since matters took a turn and we are now embroiled in an arbitration for which we were not prepared, we request another hearing in front of the Rav in the presence of Mr. Rechnitz and whoever he would like to bring.

At this hearing, we will present all of our evidence, including documents, recordings and witnesses who will fly in to give their testimony. We are endeavoring to bring this matter to a swift resolution as quickly as possible. We feel that we can likely pull this all together as soon as Thursday, September 13th, the fourth of Tishrei, 5779.

Due to the volume of evidence and testimony, we would ask to block a full day for us to present our material and allow Mr. Rechnitz to respond.

Cc: R' Shlomo Rechnitz, Mr. David Weldler

*[Hebrew handwriting]*

# EXHIBIT 4

01/09/2011  17:44    7183767300                                          PAGE  02/02

Case 1:20-cv-02667-KAM-VMS   Document 1   Filed 03/30/20   Page 29 of 29 PageID #: 29

ATT. SHLOMO KELMINZ)

ביהמ"ד גבול יעבץ                                              דוד קאהן
ברוקלין, נוא. יארק

Aug. 22, 18                                    ס"ד

This is in response to the fax + E mail that
I received from Rav Yochanan N. Bechhofer x"ō, ō.
      I challenge the statement that there was
any hint of coersion to sign an arbitration
agreement. I was not aware of any agreement not
to bring the CFO. Both sides were quite amenable
when I asked what they preferred it was arbitration
      I stand by my oral ruling that Victor
(Yaakov) Fronitzky who is a forensic accountant
go through all of the books + records and be paid
by the company.
      I have already assured the Kutners that
we shall all get together before a final
decision is rendered.
      I am a very busy person with many commitments
and cannot promise a full day but I shall
certainly cooperate to give everyone ample time to
present their side.
      I am faxing this document to both parties
                            Rabbi David Cohen

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| SHLOMO YEHUDA RECHNITZ | EPHRAIM KUTNER, JONATHAN KUTNER and GREYSTONE FUNDING CORP. |

**(b)** County of Residence of First Listed Plaintiff    LOS ANGELES, CA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    NASSAU
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
KOFFSKY SCHWALB LLC
349 FIFTH AVENUE, SUITE 733,NY, NY 10016
646-553-1590

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

◻ 1   U.S. Government   Plaintiff

◻ 3   Federal Question
   *(U.S. Government Not a Party)*

◻ 2   U.S. Government   Defendant

☒ 4   Diversity
   *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ◻ 1 | ☒ 1 | Incorporated *or* Principal Place   of Business In This State | ◻ 4 | ◻ 4 |
| Citizen of Another State | ☒ 2 | ◻ 2 | Incorporated *and* Principal Place   of Business In Another State | ◻ 5 | ◻ 5 |
| Citizen or Subject of a   Foreign Country | ◻ 3 | ◻ 3 | Foreign Nation | ◻ 6 | ◻ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ◻ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ◻ 625 Drug Related Seizure of Property 21 USC 881 | ◻ 422 Appeal 28 USC 158 | ◻ 375 False Claims Act |
| ◻ 120 Marine | ◻ 310 Airplane | ◻ 365 Personal Injury - | ◻ 690 Other | ◻ 423 Withdrawal | ◻ 376 Qui Tam (31 USC |
| ◻ 130 Miller Act | ◻ 315 Airplane Product |    Product Liability | |    28 USC 157 |    3729(a)) |
| ◻ 140 Negotiable Instrument |    Liability | ◻ 367 Health Care/ | | | ◻ 400 State Reapportionment |
| ◻ 150 Recovery of Overpayment | ◻ 320 Assault, Libel & |    Pharmaceutical | | **PROPERTY RIGHTS** | ◻ 410 Antitrust |
|    & Enforcement of Judgment |    Slander |    Personal Injury | | ◻ 820 Copyrights | ◻ 430 Banks and Banking |
| ◻ 151 Medicare Act | ◻ 330 Federal Employers' |    Product Liability | | ◻ 830 Patent | ◻ 450 Commerce |
| ◻ 152 Recovery of Defaulted |    Liability | ◻ 368 Asbestos Personal | | ◻ 840 Trademark | ◻ 460 Deportation |
|    Student Loans | ◻ 340 Marine |    Injury Product | | | ◻ 470 Racketeer Influenced and |
|    (Excludes Veterans) | ◻ 345 Marine Product |    Liability | **LABOR** | **SOCIAL SECURITY** |    Corrupt Organizations |
| ◻ 153 Recovery of Overpayment |    Liability | **PERSONAL PROPERTY** | ◻ 710 Fair Labor Standards | ◻ 861 HIA (1395ff) | ◻ 480 Consumer Credit |
|    of Veteran's Benefits | ◻ 350 Motor Vehicle | ◻ 370 Other Fraud |    Act | ◻ 862 Black Lung (923) | ◻ 490 Cable/Sat TV |
| ◻ 160 Stockholders' Suits | ◻ 355 Motor Vehicle | ◻ 371 Truth in Lending | ◻ 720 Labor/Management | ◻ 863 DIWC/DIWW (405(g)) | ◻ 850 Securities/Commodities/ |
| ◻ 190 Other Contract |    Product Liability | ◻ 380 Other Personal |    Relations | ◻ 864 SSID Title XVI |    Exchange |
| ◻ 195 Contract Product Liability | ◻ 360 Other Personal |    Property Damage | ◻ 740 Railway Labor Act | ◻ 865 RSI (405(g)) | ◻ 890 Other Statutory Actions |
| ◻ 196 Franchise |    Injury | ◻ 385 Property Damage | ◻ 751 Family and Medical | | ◻ 891 Agricultural Acts |
| | ◻ 362 Personal Injury - |    Product Liability |    Leave Act | | ◻ 893 Environmental Matters |
| |    Medical Malpractice | | ◻ 790 Other Labor Litigation | | ◻ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ◻ 791 Employee Retirement | **FEDERAL TAX SUITS** |    Act |
| ◻ 210 Land Condemnation | ◻ 440 Other Civil Rights | **Habeas Corpus:** |    Income Security Act | ◻ 870 Taxes (U.S. Plaintiff | ☒ 896 Arbitration |
| ◻ 220 Foreclosure | ◻ 441 Voting | ◻ 463 Alien Detainee | |    or Defendant) | ◻ 899 Administrative Procedure |
| ◻ 230 Rent Lease & Ejectment | ◻ 442 Employment | ◻ 510 Motions to Vacate | | ◻ 871 IRS—Third Party |    Act/Review or Appeal of |
| ◻ 240 Torts to Land | ◻ 443 Housing/ |    Sentence | |    26 USC 7609 |    Agency Decision |
| ◻ 245 Tort Product Liability |    Accommodations | ◻ 530 General | | | ◻ 950 Constitutionality of |
| ◻ 290 All Other Real Property | ◻ 445 Amer. w/Disabilities - | ◻ 535 Death Penalty | **IMMIGRATION** | |    State Statutes |
| |    Employment | **Other:** | ◻ 462 Naturalization Application | | |
| | ◻ 446 Amer. w/Disabilities - | ◻ 540 Mandamus & Other | ◻ 465 Other Immigration | | |
| |    Other | ◻ 550 Civil Rights |    Actions | | |
| | ◻ 448 Education | ◻ 555 Prison Condition | | | |
| | | ◻ 560 Civil Detainee - | | | |
| | |    Conditions of | | | |
| | |    Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original   Proceeding
◻ 2   Removed from   State Court
◻ 3   Remanded from   Appellate Court
◻ 4   Reinstated or   Reopened
◻ 5   Transferred from   Another District   *(specify)*
◻ 6   Multidistrict   Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
9 USCA 9, 12, etc.
Brief description of cause:
Confirmation of Arbitration, Constructive Trust, Turnover, Aiding and Abetting Breach of Fiduciary Duty

## VII. REQUESTED IN COMPLAINT:

◻ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**   7,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ◻ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____ DOCKET NUMBER _____

DATE
03/30/2020

SIGNATURE OF ATTORNEY OF RECORD
/s/ Efrem Tobias Schwalb

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.7 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration ☐

I, ___Efrem Schwalb___, counsel for___ Plaintiff Shlomo Rechnitz ___, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☑ monetary damages sought are in excess of $150,000, exclusive of interest and costs,

☑ the complaint seeks injunctive relief,

☑ the matter is otherwise ineligible for the following reason

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

None

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

## NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.) Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County?   ☐ Yes   ☑ No

2.) If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County?   ☐ Yes   ☑ No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District?   ☑ Yes   ☐ No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received:

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?   ☐ Yes   ☐ No
*(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).*

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☑ Yes     ☐ No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

☐ Yes (If yes, please explain)   ☑ No

I certify the accuracy of all information provided above.

Signature: _____

Last Modified: 11/27/2017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SHLOMO YEHUDA RECHNITZ,

                         Petitioner/Plaintiff,

                                                Case No. 20-cv-1607
     v.

EPHRAIM KUTNER, JONATHAN KUTNER and        **ORDER TO SHOW CAUSE FOR**
GREYSTONE FUNDING CORP.,                          **ATTACHMENT IN AID OF**
                                            **ARBITRATION**
                       Respondents/Defendants.
------------------------------------------------------------X

Upon the annexed Declaration of Petitioner/Plaintiff Shlomo Yehuda Rechnitz, executed

on March 30, 2020, and the exhibits attached thereto, the Declaration of Efrem Schwalb, Esq.,

executed on March 30, 2020, the accompanying copy of the Complaint and Petition and exhibits

attached thereto which seeks among other things, an *ex parte* order of attachment in aid of

arbitration pursuant to Rule 64 of the Federal Rules of Civil Procedure and Articles 62 and 75 of

the New York Civil Practice Law and Rules ("CPLR"), and the accompanying Memorandum of

Law, wherein it appears that a cause of action for a money judgment in favor of Petitioner/Plaintiff

Shlomo Yehuda Rechnitz and against Respondents/Defendants Ephraim Kutner and Jonathan

Kutner (the "Kutners") for a minimum sum of $4,399,976.00, and that Petitioner/Plaintiff is

entitled to recover that sum over all counterclaims known to it, plus costs and disbursements, and

it being further shown by the Petition and supporting papers that the Petitioner/Plaintiff is entitled

to an Order of Attachment against the amounts paid and to be paid by Greystone Funding Corp.

("Greystone") to the Kutners and/or their affiliates in connection with the settlement of the action

between Greystone and the Kutners that was pending in New York State Court, Index No.

651926/2013 (the "Greystone Action") pursuant to CPLR 6211(a), 6212(a) and 7502(c); and

Upon a showing by Petitioner/Plaintiff that the requirements for obtaining an attachment in aid of arbitration pursuant to CPLR §§ 6211(a), 6212(a) and 7502(c) are satisfied, specifically, (1) that there is a cause of action, to wit, the arbitration pending between Petitioner/Plaintiff and the Kutners; (2) that it is probable that Petitioner/Plaintiff will succeed on the merits; (3) that one or more grounds for attachment exist, to wit, that the arbitration award may be rendered ineffectual without an attachment in light of, *inter alia*, the Kutners' failure to make any payments of sums owed to Petitioner/Plaintiff and statements that they are "unable" to make any such payments, as represented by Petitioner/Plaintiff in writing and/or in the conference before the court on March 31, 2020; and (4) that the amount demanded from the respondent exceeds all counterclaims known to Petitioner/Plaintiff, it is

ORDERED that an Order of Attachment be and the same hereby is granted; and it is further

ORDERED that Petitioner/Plaintiff shall post a bond in the amount of $150,000 as security, within ten (10) business days of this Order, to be held in escrow by counsel for Respondent/Defendant Greystone Funding Corp.; and it is further

ORDERED that the amount to be secured by this Order of Attachment shall be the amount remaining to be paid by Greystone to the Kutners pursuant to the settlement agreement between them relating to the Greystone Action but not less than $4,399,976.00; and it is further

ORDERED that due to the exigencies of the COVID-19 pandemic and the restrictions regarding social distancing imposed by the Governor of New York and Mayor of New York City, the levy within this court's jurisdiction upon the moneys to be paid by Greystone to the Kutners or their affiliates including, but not limited to, the $150,000 payment that is due to be paid on April 1, 2020, and future payments pursuant to a settlement agreement between Greystone and the Kutners, shall be effected by serving a copy of this Order by overnight mail and certified or

registered mail, return receipt requested on Greystone and both of the Kutners, and it is further

ORDERED that Petitioner shall move by April 7, 2020 at 11:00 a.m. for an Order confirming this Order of Attachment; and it is further

ORDERED that Respondents shall Show Cause in writing by Electronic Case Filing (ECF) by April 3, 2020 why the relief sought by Petitioner should not be granted; and it is further

ORDERED that service of a copy of this Order and the papers upon which it is granted shall be made by email and overnight mail upon Defendants/Respondents or their legal representative(s) by April 1, 2020 at 2:00 p.m., with proof of service filed by counsel for Petitioner/Plaintiff by April 1, 2020 at 5:00 p.m., and shall be deemed good and sufficient service.

SO ORDERED

Dated: March 31, 2020
      Brooklyn, New York

                                          /s/
                                  HON. KIYO A. MATSUMOTO
                                  UNITED STATES DISTRICT JUDGE



**KOFFSKY SCHWALB**LLC

**Efrem Schwalb**
eschwalb@koffskyschwalb.com

349 Fifth Avenue, Suite 733
New York, New York 10016
T: 646.553.1590
F: 646.553.1591
www.koffskyschwalb.com

March 31, 2020

**Via ECF**
The Honorable Kiyo A. Matsumoto
United States District Court, EDNY
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     Rechnitz v. Kutner, et al.
        Case No. 20-cv-1607-KAM-VMS

Dear Judge Matsumoto:

We represent defendants Petitioner/Plaintiff Shlomo Yehuda Rechnitz ("Rechnitz").  We are writing this letter motion to amend the Attachment Order that was filed by the Court this evening so that the Order is consistent with what we understood to be the Court's decision during the conference.  During the conference, there was a discussion with the Court about the bond to be posted in connection with the attachment.  It was mentioned that Greystone's $150,000 payment scheduled for April 1 and future payments (which are attached pursuant to the Order) could be delivered to Greystone's law firm, Morrison Cohen, to be held in escrow, which would diminish the need for a larger bond.  Morrison Cohen agreed to receive such payments and hold them in escrow until further order of the Court or settlement of the action.  However, Morrison Cohen would not be holding the attachment bond that Mr. Rechnitz is to post (which should be filed with the Court).

Accordingly, Petitioner/Plaintiff requests that the Greystone payments to which the attachment order applies be held in escrow by the Morrison Cohen law firm while this action proceeds, and whatever bond is required to be posted by Mr. Rechnitz be filed with the Court as would normally be done.  We believe that since the Greystone payments will be held in escrow, it is proper that the bond be set at $5,000 which was the amount set by the Court in the *Mishkon* case.  *See* Order, attached as Exhibit 2 hereto.

We have spoken to the Morrison Cohen law firm who consent to this request, but take no position regarding the amount of the bond.  Attached as Exhibit 1 is a redline of a proposed amendment to today's Order for the Court's consideration.

Thank you for your consideration and courtesies.

Respectfully submitted,

Efrem Schwalb
*Counsel for Shlomo Yehuda Rechnitz*

KOFFSKY SCHWALB LLC

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SHLOMO YEHUDA RECHNITZ,

                                        Petitioner/Plaintiff,

                                                                    Case No. 20-cv-1607-KAM-VMS

        v.

EPHRAIM KUTNER, JONATHAN KUTNER and          **ORDER TO SHOW CAUSE FOR**
GREYSTONE FUNDING CORP.,                     **ATTACHMENT IN AID OF**
                                             **ARBITRATION**
                                        Respondents/Defendants.
----------------------------------------------------------------X

        Upon the annexed Declaration of Petitioner/Plaintiff Shlomo Yehuda Rechnitz, executed

on March 30, 2020, and the exhibits attached thereto, the Declaration of Efrem Schwalb, Esq.,

executed on March 30, 2020, the accompanying copy of the Complaint and Petition and exhibits

attached thereto which seeks among other things, an *ex parte* order of attachment in aid of

arbitration pursuant to Rule 64 of the Federal Rules of Civil Procedure and Articles 62 and 75 of

the New York Civil Practice Law and Rules ("CPLR"), and the accompanying Memorandum of

Law, wherein it appears that a cause of action for a money judgment in favor of Petitioner/Plaintiff

Shlomo Yehuda Rechnitz and against Respondents/Defendants Ephraim Kutner and Jonathan

Kutner (the "Kutners") for a minimum sum of $4,399,976.00, and that Petitioner/Plaintiff is

entitled to recover that sum over all counterclaims known to it, plus costs and disbursements, and

it being further shown by the Petition and supporting papers that the Petitioner/Plaintiff is entitled

to an Order of Attachment against the amounts paid and to be paid by Greystone Funding Corp.

("Greystone") to the Kutners and/or their affiliates in connection with the settlement of the action

between Greystone and the Kutners that was pending in New York State Court, Index No.

651926/2013 (the "Greystone Action") pursuant to CPLR 6211(a), 6212(a) and 7502(c); and

Upon a showing by Petitioner/Plaintiff that the requirement for obtaining an attachment in aid of arbitration pursuant to CPLR §§ 6211(a), 6212(a) and 7502(c) are satisfied, specifically, (1) that there is a cause of action, to wit, the arbitration pending between Petitioner/Plaintiff and the Kutners; (2) that it is probable that Petitioner/Plaintiff will succeed on the merits; (3) that one or more grounds for attachment exist, to wit, that the arbitration award may be rendered ineffectual without an attachment in light of, *inter alia*, the Kutners' failure to make any payments of sums owed to Petitioner/Plaintiff and statements that they are "unable" to make any such payments, as represented by Petitioner/Plaintiff in writing and/or in the conference before the court on March 30, 2020; and (4) that the amount demanded from the respondent exceeds all counterclaims known to Petitioner/Plaintiff, it is

ORDERED that an Order of Attachment be and the same hereby is granted; and it is further

ORDERED that (a) with respect to all remaining settlement payments due from Greystone to the Kutners and/or their affiliates, including the payment scheduled to be received on April 1, 2020, pursuant to the settlement agreement between those parties, Greystone shall place such payments, upon them becoming due or otherwise payable, into an escrow account held by Greystone's counsel (subject to its standard law firm escrow agreement) pending further direction from the Court or a resolution between all of the parties; and (b) Petitioner/Plaintiff shall post a bond in the amount of $150,000$_____ as security, within ten (10) business days of this Order, to be held in escrow by counsel for Respondent/Defendant Greystone Funding Corp.; and it is further

ORDERED that the amount to be secured by this Order of Attachment shall be the amount remaining to be paid by Greystone to the Kutners pursuant to the settlement agreement between them relating to the Greystone Action but not less than $4,399,976.00; and it is further

ORDERED that due to the exigencies of the COVID-19 pandemic and the restrictions

regarding social distancing imposed by the Governor of New York and Mayor of New York City, the levy within this court's jurisdiction upon the moneys to be paid by Greystone to the Kutners or their affiliates including, but not limited to, the $150,000 payment that is due to be paid on April 1, 2020 and future payments pursuant to the settlement agreement between Greystone and the Kutners, shall be effected by serving a copy of this Order by overnight mail and certified or registered mail, return receipt requested on Greystone and both of the Kutners, and it further

ORDERED that Petitioner shall move by April 7, 2020 at 11:00am for an Order confirming this Order of Attachment; and it is further

ORDERED that Respondents shall Show Cause in writing by Electronic Case Filing (ECF) by April 3, 2020 why the relief sought by Peitioner should not be granted; and it is further

ORDERED that service of a copy of this Order and the papers upon which it is granted shall be made by email and overnight mail upon Defendants/Respondents or their legal representative(s) by April 1, 2020 at 2:00 p.m., with proof of service filed by counsel for Petitioner/Plaintiff by April 1, 2020 at 5:00 p.m. and shall be deemed good and sufficient service.

SO ORDERED

Dated: March 31, 2020
        Brooklyn, New York

_____
HON KIYO A. MATSUMOTO
UNITED STATES DISTRICT JUDGE

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SHLOMO YEHUDA RECHNITZ,

        Petitioner/Plaintiff,

               Case No. 20-cv-1607-KAM-VMS

  v.

EPHRAIM KUTNER, JONATHAN KUTNER and  **ORDER TO SHOW CAUSE FOR**
GREYSTONE FUNDING CORP.,        **ATTACHMENT IN AID OF**
                **ARBITRATION**
         Respondents/Defendants.
-----------------------------------------------------------------X

    Upon the annexed Declaration of Petitioner/Plaintiff Shlomo Yehuda Rechnitz, executed

on March 30, 2020, and the exhibits attached thereto, the Declaration of Efrem Schwalb, Esq.,

executed on March 30, 2020, the accompanying copy of the Complaint and Petition and exhibits

attached thereto which seeks among other things, an *ex parte* order of attachment in aid of

arbitration pursuant to Rule 64 of the Federal Rules of Civil Procedure and Articles 62 and 75 of

the New York Civil Practice Law and Rules ("CPLR"), and the accompanying Memorandum of

Law, wherein it appears that a cause of action for a money judgment in favor of Petitioner/Plaintiff

Shlomo Yehuda Rechnitz and against Respondents/Defendants Ephraim Kutner and Jonathan

Kutner (the "Kutners") for a minimum sum of $4,399,976.00, and that Petitioner/Plaintiff is

entitled to recover that sum over all counterclaims known to it, plus costs and disbursements, and

it being further shown by the Petition and supporting papers that the Petitioner/Plaintiff is entitled

to an Order of Attachment against the amounts paid and to be paid by Greystone Funding Corp.

("Greystone") to the Kutners and/or their affiliates in connection with the settlement of the action

between Greystone and the Kutners that was pending in New York State Court, Index No.

651926/2013 (the "Greystone Action") pursuant to CPLR 6211(a), 6212(a) and 7502(c); and

Upon a showing by Petitioner/Plaintiff that the requirement for obtaining an attachment in aid of arbitration pursuant to CPLR §§ 6211(a), 6212(a) and 7502(c) are satisfied, specifically, (1) that there is a cause of action, to wit, the arbitration pending between Petitioner/Plaintiff and the Kutners; (2) that it is probable that Petitioner/Plaintiff will succeed on the merits; (3) that one or more grounds for attachment exist, to wit, that the arbitration award may be rendered ineffectual without an attachment in light of, *inter alia*, the Kutners' failure to make any payments of sums owed to Petitioner/Plaintiff and statements that they are "unable" to make any such payments, as represented by Petitioner/Plaintiff in writing and/or in the conference before the court on March 30, 2020; and (4) that the amount demanded from the respondent exceeds all counterclaims known to Petitioner/Plaintiff, it is

ORDERED that an Order of Attachment be and the same hereby is granted; and it is further

ORDERED that (a) with respect to all remaining settlement payments due from Greystone to the Kutners and/or their affiliates, including the payment scheduled to be received on April 1, 2020, pursuant to the settlement agreement between those parties, Greystone shall place such payments, upon them becoming due or otherwise payable, into an escrow account held by Greystone's counsel (subject to its standard law firm escrow agreement) pending further direction from the Court or a resolution between all of the parties; and (b) Petitioner/Plaintiff shall post a bond in the amount of $_____ as security, within ten (10) business days of this Order; and it is further

ORDERED that the amount to be secured by this Order of Attachment shall be the amount remaining to be paid by Greystone to the Kutners pursuant to the settlement agreement between them relating to the Greystone Action but not less than $4,399,976.00; and it is further

ORDERED that due to the exigencies of the COVID-19 pandemic and the restrictions

regarding social distancing imposed by the Governor of New York and Mayor of New York City, the levy within this court's jurisdiction upon the moneys to be paid by Greystone to the Kutners or their affiliates including, but not limited to, the $150,000 payment that is due to be paid on April 1, 2020 and future payments pursuant to the settlement agreement between Greystone and the Kutners, shall be effected by serving a copy of this Order by overnight mail and certified or registered mail, return receipt requested on Greystone and both of the Kutners, and it further

ORDERED that Petitioner shall move by April 7, 2020 at 11:00am for an Order confirming this Order of Attachment; and it is further

ORDERED that Respondents shall Show Cause in writing by Electronic Case Filing (ECF) by April 3, 2020 why the relief sought by Peitioner should not be granted; and it is further

ORDERED that service of a copy of this Order and the papers upon which it is granted shall be made by email and overnight mail upon Defendants/Respondents or their legal representative(s) by April 1, 2020 at 2:00 p.m., with proof of service filed by counsel for Petitioner/Plaintiff by April 1, 2020 at 5:00 p.m. and shall be deemed good and sufficient service.

SO ORDERED

Dated: March 31, 2020
        Brooklyn, New York
                                        _____
                                        HON KIYO A. MATSUMOTO
                                        UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SHLOMO YEHUDA RECHNITZ,

                   Petitioner/Plaintiff,

              Case No. 20-cv-1607

    v.

EPHRAIM KUTNER, JONATHAN KUTNER and      **AMENDED ORDER TO SHOW**
GREYSTONE FUNDING CORP.,                 **CAUSE FOR ATTACHMENT IN**
                                          **AID OF ARBITRATION**
                  Respondents/Defendants.
------------------------------------------------------------X

      Upon the annexed Declaration of Petitioner/Plaintiff Shlomo Yehuda Rechnitz, executed

on March 30, 2020, and the exhibits attached thereto, the Declaration of Efrem Schwalb, Esq.,

executed on March 30, 2020, the accompanying copy of the Complaint and Petition and exhibits

attached thereto which seeks among other things, an *ex parte* order of attachment in aid of

arbitration pursuant to Rule 64 of the Federal Rules of Civil Procedure and Articles 62 and 75 of

the New York Civil Practice Law and Rules ("CPLR"), and the accompanying Memorandum of

Law, wherein it appears that a cause of action for a money judgment exists in favor of

Petitioner/Plaintiff Shlomo Yehuda Rechnitz and against Respondents/Defendants Ephraim

Kutner and Jonathan Kutner (the "Kutners") for a minimum sum of $4,399,976.00, and that

Petitioner/Plaintiff is entitled to recover that sum over all counterclaims known to it, plus costs

and disbursements, and it being further shown by the Petition and supporting papers that the

Petitioner/Plaintiff is entitled to an Order of Attachment against the amounts paid and to be paid

by Greystone Funding Corp. ("Greystone") to the Kutners and/or their affiliates in connection with

the settlement of the action between Greystone and the Kutners that was pending in New York

State Court, Index No. 651926/2013 (the "Greystone Action") pursuant to CPLR 6211(a), 6212(a)

and 7502(c); and

Upon a showing by Petitioner/Plaintiff that the requirements for obtaining an attachment in aid of arbitration pursuant to CPLR §§ 6211(a), 6212(a) and 7502(c) are satisfied, specifically, (1) that there is a cause of action, to wit, the arbitration pending between Petitioner/Plaintiff and the Kutners; (2) that it is probable that Petitioner/Plaintiff will succeed on the merits; (3) that one or more grounds for attachment exist, to wit, that the arbitration award may be rendered ineffectual without an attachment in light of, *inter alia*, the Kutners' failure to make any payments of sums owed to Petitioner/Plaintiff and statements that they are "unable" to make any such payments, as represented by Petitioner/Plaintiff in writing and/or in the conference before the court on March 31, 2020; and (4) that the amount demanded from the respondent exceeds all counterclaims known to Petitioner/Plaintiff, it is

ORDERED that an Order of Attachment be and the same hereby is granted; and it is further

ORDERED that (a) with respect to all remaining settlement payments due from Greystone to the Kutners and/or their affiliates, including the payment scheduled to be received on April 1, 2020, pursuant to the settlement agreement between those parties, Greystone shall place such payments, upon them becoming due or otherwise payable, into an escrow account held by Greystone's counsel (subject to its standard law firm escrow agreement) pending further direction from the Court or a resolution between all of the parties; and (b) Petitioner/Plaintiff shall post a bond in the amount of $10,000 as security, within ten (10) business days of this Order; and it is further

ORDERED that the amount to be secured by this Order of Attachment shall be the amount remaining to be paid by Greystone to the Kutners pursuant to the settlement agreement between them relating to the Greystone Action but not less than $4,399,976.00; and it is further

ORDERED that due to the exigencies of the COVID-19 pandemic and the restrictions

regarding social distancing imposed by the Governor of New York and Mayor of New York City, the levy within this court's jurisdiction upon the moneys to be paid by Greystone to the Kutners or their affiliates including, but not limited to, the $150,000 payment that is due to be paid on April 1, 2020, and future payments pursuant to a settlement agreement between Greystone and the Kutners, shall be effected by serving a copy of this Order by overnight mail and certified or registered mail, return receipt requested on Greystone and both of the Kutners, and it is further

ORDERED that Petitioner shall move by April 7, 2020 at 11:00 a.m. for an Order confirming this Order of Attachment; and it is further

ORDERED that Respondents shall Show Cause in writing by Electronic Case Filing (ECF) by April 3, 2020 why the relief sought by Petitioner should not be granted; and it is further

ORDERED that service of a copy of this Order and the papers upon which it is granted shall be made by email and overnight mail upon Defendants/Respondents or their legal representative(s) by April 1, 2020 at 3:00 p.m., with proof of service filed by counsel for Petitioner/Plaintiff by April 1, 2020 at 5:00 p.m., and shall be deemed good and sufficient service.

SO ORDERED

Dated: April 1, 2020
       Brooklyn, New York                    _____/s/_____
                                             HON. KIYO A. MATSUMOTO
                                             UNITED STATES DISTRICT JUDGE

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SHLOMO YEHUDA RECHNITZ,

                              Petitioner/Plaintiff,

                                      Case No. 20-cv-1607-KAM-VMS

      v.

EPHRAIM KUTNER, JONATHAN KUTNER and     **NOTICE OF MOTION TO**
GREYSTONE FUNDING CORP.,                       **CONFIRM ATTACHMENT IN AID**
                                      **OF ARBITRATION**
                        Respondents/Defendants.
----------------------------------------------------------------X

       PLEASE TAKE NOTICE that pursuant to Rule 64 of the Federal Rules of Civil Procedure

and Section 6211(b) of the New York Civil Practice Law and Rules ("CPLR"), Petitioner/Plaintiff

Shlomo Yehuda Rechnitz shall move pursuant to Court Order on April 24, 2020 at 11:00am, or as

soon thereafter as counsel may be heard, before the Honorable Kiyo A. Matsumoto, U.S.D.J.,  at

Room 6C South, the United States Courthouse, 225 Cadman Plaza East, Brooklyn, NY 11201, or

by teleconference as set by the Court, for an Order to Confirm the Order of Attachment in Aid of

Arbitration, issued by the Court and entered on April 1, 2020.

       PLEASE TAKE FURTHER NOTICE that in support of the Motion, Petitioner/Plaintiff

shall rely upon this Notice of Motion, the Memorandum of Law in Support of Petitioner/Plaintiff's

Motion to Confirm Order of Attachment, the Declaration of Shlomo Yehuda Rechnitz, executed

on April 6, 2020, and the exhibits attached thereto, the Complaint and Petition in this action, and

all pleadings and proceedings heretofore had herein.

       PLEASE TAKE FURTHER NOTICE that pursuant to the Order of the Court, answering

papers, if any, shall be filed and served no later than April 21, 2020.

Dated: New York, New York
      April 6, 2020

                                  KOFFSKY SCHWALB LLC

                                  By: _____
                                        Efrem Schwalb
                                349 Fifth Avenue, Suite 733
                                New York, New York 10016
                                (646) 553-1590

                                *Attorneys for Petitioner/Plaintiff*

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SHLOMO YEHUDA RECHNITZ,

                Petitioner/Plaintiff,

   v.

EPHRAIM KUTNER, JONATHAN KUTNER and
GREYSTONE FUNDING CORP.,

             Respondents/Defendants.
-----------------------------------------------------------------X

Case No. 20-CV-1607-KAM-VMS

**DECLARATION OF SHLOMO YEHUDA RECHNITZ IN SUPPORT OF MOTION TO CONFIRM ORDER OF ATTACHMENT IN AID OF ARBITRATION**

I, SHLOMO YEHUDA RECHNITZ, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the petitioner/plaintiff in this action. I submit this Declaration in support of Petitioner's Motion to Confirm Order of Attachment pursuant to Rule 64 of the Federal Rules of Civil Procedure ("Rules"), and Articles 62 and 75 of New York's Civil Practice Law and Rules (hereinafter "CPLR").[1]

2. This is an action to confirm an arbitration award (the "Award") that was issued in my favor against Ephraim Kutner and Jonathan Kutner ("Kutners"), and to direct defendant Greystone Funding Corp. ("Greystone") to pay any and all sums due under the Greystone Settlement directly to me as required by the Award, and related claims. The Court previously granted an *ex parte* order in aid of arbitration attaching the amounts due and owing under the Greystone Settlement in my favor and precluding Greystone from making any further payments to the Kutners pending payment in full of all amounts due and owing to me under the Award. As discussed below,

---

[1] All capitalized defined terms herein shall have the meanings given to them in the Complaint filed herewith which is attached hereto as Exhibit A and which is incorporated in full herein by reference.

Plaintiff/Petitioner satisfies the requirements for an attachment under Rule 64, and CPLR Sections 6211, 6212(a) and 7502(c).

**The Greystone Lawsuit**

3.      Beginning in 2013, the Kutners borrowed money from me to fund a lawsuit between them and their former employer Greystone (the "Greystone Lawsuit"), among other things.  I am a businessperson who is involved in a wide array of philanthropic ventures.  I periodically assist others by lending money for other people's businesses without charging interest.  I agreed to loan the Kutners money to assist in funding their lawsuit against Greystone, at my discretion (the "Greystone Loan"), provided that any recovery from the lawsuit would first be used to repay my loan and I would receive 30 percent of any profits recovered in the Greystone Lawsuit after deducting expenses.

4.      Over the next several years, I loaned more than $3 million dollars to the Kutners to fund the Greystone Lawsuit.  The Greystone Lawsuit was settled with Greystone for $8 million, with Greystone agreeing to make monthly payments of $150,000 commencing in May 2019.  I am therefore owed a total of $4,399,976 in connection with the Greystone Loan, which consists of $3,071,009 that I provided to the Kutners to assist them in funding the lawsuit against Greystone, plus $1,328,967 representing my 30 percent share of the amount recovered after deducting legal expenses (which includes the $3,071,000 provided by me plus $500,000 that the Kutners claimed they spent).

5.      The Kutners also owe me at least $12 million of additional moneys that I loaned to them.  In total, I loaned approximately $20 million with the Kutners.  Aside from the Greystone Loan, Rabbi Cohen ruled that the Kutners owe me more than $7.6 million for other loans that I made to the Kutners to assist them with one of their businesses.  (*See* Exhibit D hereto).

Additionally, Rabbi Cohen has not yet ruled on another business dispute involving approximately $5 million in seed capital that I provided to the Kutners in connection with the founding of their company, in which I have made claims of approximately $15 million in damages.

6.      Since May 2019, Greystone has paid the Kutners more than $1.4 million under the Greystone Settlement, but none of that money has been delivered to me.  Greystone makes a monthly payment of $150,000 pursuant to its settlement with the Kutners.

7.      Since Greystone started paying the money to the Kutners, I reached out to them to obtain the money that they have been receiving from Greystone.  Defendant Ephraim Kutner stated to me on several occasions (including September, October and November of 2019) that they did not have the money to pay me, that they were in a poor financial situation and struggling, and that they were not intending to pay me the money due to me that they were receiving from Greystone because they could not afford to do so.  To date, the Kutners have not transferred any of the funds they have received from Greystone.  Consequently, the attachment order is necessary because the Award and further awards from Rabbi Cohen may be rendered ineffectual.

**The Arbitration**

8.      In 2018, the parties had disputes regarding the various loans that I provided to the Kutners including the Greystone Loan.  I was reasonably concerned that the Kutners would not repay me the money that I had loaned and/or invested with them, including the Greystone Loan. The parties are all Orthodox Jews.  According to Jewish law, certain legal disputes that cannot be resolved are to be presented before Beit Din or Jewish court to be decided by either one or more Rabbinic judges.  I told the Kutners they could select any recognized Jewish legal authority as the arbitrator.  They selected Rabbi Dovid Cohen, a recognized Jewish rabbinic authority, who resides in Brooklyn, as the sole arbitrator.  I agreed to arbitrate our disputes before Rabbi Cohen.

3

9.    On August 14, 2018, we appeared before Rabbi Cohen and signed an agreement in which we submitted our disputes to Rabbi Cohen for adjudication.  The arbitration agreement states: "Shlomo Yehuda Rechnitz (SYR) on his own, and as a partner in Harborview Capital LLC, and Jonathan and Ephraim Kutner (JEK) on their own, and as partners in the above company, have come to me to adjudicate a dispute.  They have agreed to accept my decision."  The agreement, which is attached as Exhibit 2 to the Complaint, was signed by Rabbi Cohen, the Kutners and me.

10.    At the arbitration, evidence was provided regarding various loans made by me to the Kutners, including the Greystone Loan.  Altogether, I was owed more than $11 million in principal from loans that I provided to the Kutners, including the Greystone Loan.  The Kutners did not dispute that I provided this funding and was entitled to a return of this money.

11.    Additionally, evidence was also presented to Rabbi Cohen regarding approximately $5 million in seed capital that I provided to them in connection with the Kutners starting their new business.  I claim that the Kutners owed me more than $15 million in connection with that transaction, but, at a minimum, $5 million.  Rabbi Cohen has not yet ruled on this dispute.

12.    I requested interim relief to ensure that interest payments being received by the Kutners from certain healthcare business borrowers to whom the Kutners loaned some of the money they had received from me was placed in escrow and would be used to repay Rechnitz. Rabbi Cohen granted this relief but the Kutners have ignored Rabbi Cohen's order.

13.    On or about August 21, 2018, Respondents' rabbinic advocate Yochanan Bechhofer sent a letter to Rabbi Cohen (Exhibit 3 to the Complaint) first advising him that when the Kutners appeared before Rabbi Cohen at the August 14 arbitration, they thought they were appearing before Rabbi Cohen only for a mediation, not an arbitration.  Bechhofer further asserted that the Kutners signed the arbitration agreement "so as not to hamper the flow of the mediation."  Each of these

statements is untrue.  The parties agreed to select Rabbi Cohen to arbitrate, not mediate, their disputes.  The arbitration agreement makes clear that the Kutners knew and had agreed to arbitrate before Rabbi Cohen.

14.    Moreover, Bechhofer's letter makes clear that although the Kutners claimed after the hearing that they misunderstood the nature of the proceeding before Rabbi Cohen, the Kutners were not disputing their freely manifested intent to participate in arbitration proceedings.  Indeed, at that time, the Kutners requested another hearing before Rabbi Cohen at which time they would present "all of our evidence, including documents, recordings and witnesses who will fly in to give their testimony." (*Id.*)

15.    By letter dated August 22, 2018, Rabbi Cohen responded to Bechhofer's letter stating that he "challenge[d] the statement that there was any hint of coercion to sign an arbitration agreement . . . Both sides were quite amenable when I asked what they preferred and it was arbitration."  (See Exhibit 4 to the Complaint).  Among other things, Rabbi Cohen stated that the Kutners "had been assured that we will all get together before a final decision is rendered."

16.    In May 2019, the Greystone Lawsuit was settled with Greystone agreeing to pay $8 million to the Kutners over the course of several years.  Since May 2019, the Kutners have been receiving $150,000 per month from Greystone but have not turned that money over to me in accordance with the Greystone Loan Agreement.

17.    It is clear from statements made to me by Ephraim Kutner that the order of attachment is needed to prevent the Award and other decisions of Rabbi Cohen from being rendered ineffectual.  Defendant Ephraim Kutner has stated to me on several occasions (including September, October and November of 2019) that the reason they have not transferred the Greystone Settlement money to me is because the Kutners did not have the money to pay me, that

they were in a poor financial situation and struggling, and that they did not intend to pay me the money due to me that they were receiving from Greystone because they could not afford to do so. Additionally, the order of attachment is necessary to prevent Rabbi Cohen's $7.6 million award regarding the mezzanine loans and any future award with respect to our other business dealings from being rendered ineffectual. Finally, Rabbi Cohen ruled that all payments from Greystone are to be made to me, and the Kutners did not direct Greystone to do so, which is conclusive proof that the Order of Attachment is needed to prevent the Award and any other awards from the arbitration from being rendered ineffectual. As discussed above, to date, the Kutners have not transferred any of the funds they have received from Greystone to me despite Rabbi Cohen's ruling. Based on what Ephraim Kutner has told me, they do not have the money to do so.

18.   After the arbitration hearing, the parties engaged in settlement negotiation to try to resolve all of their disputes. In the meantime, the Kutners refused to turn over all of the funds that they were receiving from Greystone even though it is undisputed that aside from owing me more than $4 million in connection with the Greystone Loan, the Kutners owe me many more millions of dollars.

19.   After many months of failed settlement negotiations, in February 2020, I requested that Rabbi Cohen summons the Kutners to appear before him so that they could have an opportunity to provide their purported "evidence, including documents, recordings and witnesses who will fly in to give their testimony" as their rabbinic lawyer had claimed they would do.

20.   However, the Kutners have refused to cooperate or respond regarding continuing the arbitration proceeding. By letter from their rabbinic lawyer to Rabbi Cohen, the Kutners stated that they would not appear before Rabbi Cohen repeating their claim that they never agreed to arbitrate before him (just mediate) and that, in any event, they had a binding settlement agreement

with Rechnitz already based on a couple of emails that they forwarded to Rabbi Cohen and therefore there was nothing to arbitrate.  (*See* Exhibit B hereto)

21.   I responded that the parties had entered into a binding arbitration agreement, that Rabbi Cohen had reserved decision on the Greystone Loan dispute to allow for settlement discussions, and that the purported e-mail agreement provided by the Kutners' rabbinic lawyer was, on its face, not an agreement.  (*See* Exhibit C hereto).

22.   Because the Kutners would not appear and present whatever evidence they believed they had in defense of their claims, I requested that Rabbi Cohen issue an award in connection with the Greystone Loan finding that the Kutners owed the $3,071,009 provided by Rechnitz to fund the lawsuit against Greystone, plus the $1,328,967 representing Rechnitz's 30 percent share of the remaining amount recovered in that lawsuit.  I further requested that any additional amounts received from Greystone should be paid to me for repayment of millions of dollars owed by the Kutners to me in connection with other business dealings with the Kutners that are the subject of a separate arbitration award that was issued by Rabbi Cohen against the Kutners, as well as the continuing arbitration discussed above.  Finally, I requested that the Kutners direct Greystone to make all future payments directly to me.

23.   On March 11, 2020, Rabbi Cohen issued the Award in my favor (attached to the Complaint as Exhibit 1) and ordered that:

- All amounts still owed by Greystone Funding under the Greystone Settlement shall be paid directly to SYR [i.e., Rechnitz], to (i) repay the $3,071,009 Greystone Loan provided by SYR to fund the lawsuit against Greystone, (ii) pay the $1,328,967 representing SYR's 30 percent share of the remaining amount recovered in the Greystone Lawsuit after expenses, and (iii) repay other amounts due and owing to SYR on other outstanding loans from SYR to the Kutners.

- SYR may contact Greystone Funding directly, and direct Greystone Funding to make all such payments directly to SYR.

- The Kutners and all entities they control shall cooperate and not interfere with the instructions to Greystone Funding to make all payments under the Greystone Settlement directly to SYR.

- If requested by SYR, the Kutners shall execute any and all additional documents that will allow SYR or his agent to control, manage and act on behalf of the Kutners in connection the Greystone Settlement.

24.   By this action, I seek, among other things, an order (a) confirming the Award; (b) directing judgment to be entered in Rechnitz's favor; (c) requiring the Kutners to carry out the directions ordered by Rabbi Cohen, and (d) requiring Greystone to pay the amounts owed under the Greystone Settlement directly to Rechnitz.

25.   By this motion, I seek to confirm the Court's Order of Attachment in aid of arbitration attaching any and all amounts to be paid by Greystone to the Kutners under the Greystone Settlement and precluding the payment of such amounts to the Kutners pending payment in full of all amounts due and owing to Rechnitz under the Award and other awards in the arbitration.

**CONCLUSION**

26.   Based upon this Declaration, the Complaint/Petition, the accompanying memorandum of law, and all prior pleading and proceedings herein, Plaintiff/Petitioner's motion to confirm the Court's Order of Attachment should be granted.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed:   April 6, 2020
           Los Angeles, California

_____
SHLOMO YEHUDA RECHNITZ

8

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SHLOMO YEHUDA RECHNITZ,                             Case No.

                              Petitioner/Plaintiff,     **COMPLAINT AND PETITION
                                                        TO CONFIRM ARBITRATION
                                                        AWARD AND FOR AN ORDER
        v.                                              OF ATTACHMENT IN AID OF
                                                        ARBITRATION**
EPHRAIM KUTNER, JONATHAN KUTNER and
GREYSTONE FUNDING CORP.,

                              Respondents/Defendants.
------------------------------------------------------------------X

     Petitioner and Plaintiff Shlomo Yehuda Rechnitz ("Rechnitz"), by and through his

undersigned counsel, Koffsky Schwalb LLC, as and for his Complaint and Petition to confirm an

arbitration award against Defendants Ephraim Kutner and Jonathan Kutner (the "Kutners" or

"Defendants") and for an order of attachment in aid of arbitration, respectfully states and alleges:

### NATURE OF THE PROCEEDING

     1.    This is an action (a) to confirm an arbitration award (the "Award") pursuant to 9

U.S.C.A. §§ 9 and 13 in favor of Rechnitz and against the Kutners, and to require the moneys that

defendant Greystone Funding Corp. ("Greystone") owes to the Kutners to be paid directly to

Rechnitz as required by the Award; and (b) for an order pursuant to Rule 64 of the Federal Rules

of Civil Procedure and Articles 62 and 75 of New York's Civil Practice Law and Rules ("CPLR")

in aid of arbitration attaching the moneys paid and to be paid by Greystone to the Kutners in

connection with a lawsuit between those parties so that the Award will not be rendered ineffectual.

Rechnitz brings related claims against the defendants in connection with their failure to transfer

such amounts to Rechnitz as the parties agreed and in accordance with the Award.

     2.    In 2013, the Kutners sought to borrow money from Rechnitz to fund a lawsuit

between them and their former employer Greystone (the "Greystone Lawsuit"), among other

things.  Rechnitz is a businessperson who is involved in a wide array of business and philanthropic ventures.  Rechnitz periodically assists others by lending money for other people's businesses without charging interest.  Rechnitz agreed to loan the Kutners money to assist in funding their lawsuit against Greystone, at Rechnitz's discretion (the "Greystone Loan"), provided that any recovery from the lawsuit would first be used to repay the loan from Rechnitz, and Rechnitz would receive 30 percent of any profits recovered in the Greystone Lawsuit.

3.      Over the next several years, Rechnitz advanced more than $3 million dollars to the Kutners to fund the Greystone Lawsuit.  The Greystone Lawsuit was settled with Greystone for $8 million, with Greystone agreeing to make monthly payments of $150,000 commencing in May 2019.  Rechnitz is owed a total of $4,399,976 in connection with the Greystone Loan, which consists of $3,071,009 that he provided to the Kutners to assist them in funding the lawsuit against Greystone, plus $1,328,967 representing Rechnitz's 30 percent share of the amount recovered after deducting legal expenses (which includes the $3,071,000 provided by Rechnitz plus $500,000 that the Kutners claimed they spent).  Additionally, Rechnitz is owed more than $7.6 million for other loans that he advanced to the Kutners to assist them with one of their businesses.

4.      Since May 2019, Greystone has paid the Kutners more than $1.4 million, but none of that money has been delivered to Rechnitz.

5.      In 2018, the parties had disputes regarding the various loans provided by Rechnitz to the Kutners including the Greystone Loan.  Rechnitz was reasonably concerned that the Kutners would not repay Rechnitz the money that he had loaned to them including the Greystone Loan.  The parties agreed to arbitrate their disputes before Rabbi Dovid Cohen, a Jewish legal authority who resides in Brooklyn and was recommended by the Kutners.

6.      On August 14, 2018, the parties signed an arbitration agreement and appeared before Rabbi Cohen regarding the Greystone Loan, among other disputes.  Rabbi Cohen reserved his decision regarding the Greystone Loan to allow the parties to engage in settlement discussions.  After many months of failed settlement negotiations, Rechnitz requested that Rabbi Cohen reconvene the arbitration or issue a decision directing that all moneys to be received from Greystone be paid directly to Rechnitz.  By letter from their rabbinic lawyer to Rabbi Cohen, the Kutners stated that they would not appear before Rabbi Cohen claiming that they never agreed to arbitrate before him (just mediate).  Second, they asserted that they had a binding settlement agreement with Rechnitz already based on a couple of emails that they forwarded to Rabbi Cohen.  Therefore, they claimed there was nothing to arbitrate.  Rechnitz responded that the parties had entered into a binding arbitration agreement, that Rabbi Cohen had reserved decision on the Greystone Loan dispute to allow for settlement discussions, and that the purported e-mail agreement provided by the Kutners' rabbinic lawyer was, on its face, not an agreement.

7.      On March 11, 2020, Rabbi Cohen issued an arbitration award in favor of Rechnitz (attached hereto as **Exhibit 1**) and ordered that:

1.  All amounts still owed by Greystone Funding shall be paid directly to SYR [*i.e.*, Rechnitz], including the $3,071,009 provided by SYR to fund the lawsuit against Greystone, plus the $1,328,967 representing SYR's 30 percent share of the remaining amount recovered in that lawsuit.

2.  Any additional amounts from that lawsuit shall be paid to SYR for repayment of amounts owing to SYR relating to other outstanding amounts.  SYR may contact Greystone Funding directly and direct Greystone Funding to make all payments directly to SYR.

3.  The Kutners and all entities they control shall cooperate and not interfere with the instructions to Greystone Funding to make all payments relating to the Greystone Lawsuit directly to SYR.

4.  If requested by SYR, the Kutners shall execute any and all additional documents that will allow SYR or his agent to control, manage and act

on behalf of the Kutners in connection the Greystone Lawsuit settlement.

8.　　By this action, Rechnitz seeks an order (a) confirming the Award; (b) directing judgment to be entered in Rechnitz's favor; (c) requiring the Kutners to carry out the directions ordered by Rabbi Cohen, (d) requiring Greystone to pay the amounts owed under the Greystone Settlement directly to Rechnitz; (e) attaching the proceeds of any payments made or to be made by Greystone to the Kutners in connection with the Greystone Settlement.

## PARTIES

9.　　Petitioner/Plaintiff Shlomo Yehuda Rechnitz is a citizen of California residing in Los Angeles, California.

10.　　Respondent/Defendant Ephraim Kutner is a citizen of New York residing in Lawrence, New York.

11.　　Respondent/Defendant Jonathan Kutner is a citizen of New York residing in Lawrence, New York.

12.　　Respondent/Defendant Greystone Funding Corp. is a Delaware corporation with its principal place of business in the State of New York.

## JURISDICTION AND VENUE

13.　　The subject matter jurisdiction of the court is based on 28 U.S.C.A. § 1332. The amount in controversy exclusive of interest and costs, exceeds $75,000 and the parties are citzens of different States.

14.　　This Court has personal jurisdiction over the defendants as each defendant resides in New York, and New York is the principal place of business of each defendant.

4

15.     Venue is proper in this judicial district pursuant to 28 U.S.C.A. § 1391 because the defendants resides in this District and a substantial portion of the events giving rise to the action, including the signing of the contract to arbitrate and the arbitration occurred in this District.

**FACTUAL BACKGROUND**

16.     The Kutners are in the real estate financing business.

17.     Rechnitz is a businessperson who is involved in a wide array of business and philanthropic ventures.  Rechnitz periodically assists others by lending money for other people's businesses without charging interest.

18.     In 2013, the Kutners approached Rechnitz about making a loan to fund a lawsuit against their former employer Greystone, as well as other loans relating to healthcare businesses around the United States.

19.     With respect to the Greystone Lawsuit, Rechnitz agreed to assist in funding the lawsuit provided that (a) the money Rehnitz loaned be repaid before any money was distributed to the Kutners, and (b) Rechnitz would receive 30 percent of any recovery after deducting the expenses for the lawsuit (the "Greystone Loan Agreement").

20.     Pursuant to the Greystone Loan Agreement, Rechnitz loaned $3,071,009 to the Kutners.

**THE ARBITRATION AND THE AWARD**

21.     In 2018, the parties negotiated for several months to try to work out a resolution of various disputes that had arisen relating to various business arrangements between the parties.

22.     The parties are all Orthodox Jews.  According to Jewish law, certain legal disputes that cannot be resolved are to be presented before Beit Din or Jewish court to be decided by either one or more Rabbinic judges.  When the parties could not agree upon a resolution of their various

disputes, they agreed to arbitrate their disputes before Rabbi Dovid Cohen, a prominent and well-respected Rabbinic judge who lives in Brooklyn.  Rabbi Cohen was suggested as an arbitrator by the Kutners, and Rechnitz agreed.

23.     On August 14, 2018, the parties appeared before Rabbi Cohen and signed an agreement in which they submitted their disputes to Rabbi Cohen for adjudication.  The arbitration agreement states: "Shlomo Yehuda Rechnitz (SYR) on his own, and as a partner in Harborview Capital LLC and Jonathan and Ephraim Kutner (JEK) on their own, and as partners in the above company, have come to me to adjudicate a dispute.  They have agreed to accept my decision."  The agreement, which is attached as **Exhibit 2**, is signed by Rabbi Cohen, Rechnitz and the Kutners.

24.     At the arbitration, evidence was provided regarding various loans made by Rechnitz to the Kutners including the Greystone Loan.  Altogether, Rechnitz was owed more than $11 million in principal from loans that he provided to the Kutners, including the Greystone Loan.

25.     Respondents did not dispute that Rechnitz provided this funding and was entitled to a return of this money.

26.     Rechnitz requested interim relief to ensure that interest payments being received by the Kutners from certain healthcare business borrowers to whom the Kutners loaned some of the money they had received from Rechnitz was placed in escrow and would be used to repay Rechnitz.  Rabbi Cohen granted this relief but the Kutners have ignored Rabbi Cohen's order.

27.     On or about August 21, 2018, Respondents' rabbinic advocate Yochanan Bechhofer sent a letter to Rabbi Cohen (**Exhibit 3** hereto) first advising him that when the Kutners appeared before Rabbi Cohen at the August 14 arbitration, they thought they were appearing before Rabbi Cohen only for a mediation, not an arbitration.  Bechhofer further asserted that the Kutners signed the arbitration agreement "so as not to hamper the flow of the mediation."  Each of these

statements is untrue.  The parties agreed to select Rabbi Cohen to arbitrate, not mediate, their disputes.  The arbitration agreement makes clear that the Kutners knew and had agreed to arbitrate before Rabbi Cohen.

28.     Moreover, Bechhofer's letter makes clear that although the Kutners claimed after the hearing that they misunderstood the nature of the proceeding before Rabbi Cohen, the Kutners were not disputing their freely manifested intent to participate in arbitration proceedings.  Indeed, at that time, the Kutners requested another hearing before Rabbi Cohen at which time they would present "all of our evidence, including documents, recordings and witnesses who will fly in to give their testimony." (*Id.*)

29.     By letter dated August 22, 2018, Rabbi Cohen responded to Bechhofer's letter stating that he "challenge[d] the statement that there was any hint of coercion to sign an arbitration agreement . . . Both sides were quite amenable when I asked what they preferred and it was arbitration."  (*See* **Exhibit 4** hereto).  Among other things, Rabbi Cohen stated that the Kutners "had been assured that we will all get together before a final decision is rendered."

30.     In May 2019, the Greystone Lawsuit was settled with Greystone agreeing to pay $8 million to the Kutners over the course of several years.  Since May 2019, the Kutners have been receiving $150,000 per month from Greystone, but have not turned that money over to Rechnitz in accordance with the Greystone Loan Agreement.

31.     After the arbitration hearing, the parties engaged in settlement negotiation to try to resolve all of their disputes.  In the meantime, the Kutners refused to turn over all of the funds that they were receiving from Greystone even though it is undisputed that aside from owing Rechnitz more than $4 million in connection with the Greystone Loan, the Kutners owe many more millions of dollars to Rechnitz.

32.     After many months of failed settlement negotiations, in February 2020, Rechnitz requested that Rabbi Cohen summons the Kutners to appear before him so that they could have an opportunity to provide their purported "evidence, including documents, recordings and witnesses who will fly in to give their testimony" as their rabbinic lawyer had claimed they would do.

33.     However, the Kutners have refused to cooperate or respond regarding continuing the arbitration proceeding.  By letter from their rabbinic lawyer to Rabbi Cohen, the Kutners stated that they would not appear before Rabbi Cohen repeating their claim that they never agreed to arbitrate before him (just mediate) and that, in any event, they had a binding settlement agreement with Rechnitz already based on a couple of emails that they forwarded to Rabbi Cohen and therefore there was nothing to arbitrate.

34.     Rechnitz responded that the parties had entered into a binding arbitration agreement, that Rabbi Cohen had reserved decision on the Greystone Loan dispute to allow for settlement discussions, and that the purported e-mail agreement provided by the Kutners' rabbinic lawyer was, on its face, not an agreement.

35.     Because the Kutners would not appear and present whatever evidence they believed they had in defense of their claims, Rechnitz requested that Rabbi Cohen issue an award in connection with the Greystone Loan finding that the Kutners owed the $3,071,009 provided by Rechnitz to fund the lawsuit against Greystone, plus the $1,328,967 representing Rechnitz's 30 percent share of the remaining amount recovered in that lawsuit.  Rechnitz further requested that any additional amounts received from Greystone should be paid to Rechnitz for repayment of millions of dollars owed by the Kutners to Rechnitz in connection with other business dealings that is the subject of a separate arbitration award that was issued by Rabbi Cohen against the

Kutners.  Finally, Rechnitz requested that the Kutners direct Greystone to make all future payments directly to Rechnitz.

36.     On March 11, 2020, Rabbi Cohen issued an arbitration award in favor of Rechnitz as set forth in detail above.  Rabbi Cohen ruled that all amounts Greystone owed to the Kutners pursuant to the Greystone Lawsuit settlement should be paid directly to Rechnitz, and the Kutners should cooperate and direct Greystone to pay such moneys to Rechnitz.

37.     The Kutners have refused to cooperate with the decision of Rabbi Cohen. Greystone was advised and provided with the Arbitration Award.  The principals of Greystone are also Orthodox Jews.  On March 25, 2020, Rabbi Cohen issued another order directly at Greystone requiring them to pay the monthly $150,000 payment directly to Rechnitz.

### FIRST CAUSE OF ACTION
**(Confirmation of Arbitration Award Against
Ephraim Kutner and Jonathan Kutner)**

38.     Rechnitz repeats and realleges each of the prior allegations as if fully set forth herein.

39.     Rechnitz respectfully requests that this Court enter judgment as against the Kutners confirming the Award and requiring Greystone to make all monthly payments directly to Rechnitz.

40.     This Complaint and Petition is brought within one year after the delivery of the aforesaid Award, and the Award has not been vacated or modified.

### SECOND CAUSE OF ACTION
**(Ex Parte Attachment in Aid of Arbitration Against
Respondents/Defendants)**

41.     Rechnitz repeats and realleges each of the prior allegations as if fully set forth herein.

42.     The parties agreed to arbitrate their disputes including Rechnitz's claims against the Kutners regarding the Greystone Loan before Rabbi Dovid Cohen.

43.     Accordingly, by the arbitration, Plaintiff/Petitioner is asserting a cause of action within the meaning of CPLR 7502(c) and 6212(a).

44.     This Court has personal jurisdiction over Respondents/Defendants' property including the proceeds of the Greystone Lawsuit settlement.

45.     As set forth herein, the memorandum of law and in the other papers filed herewith, Rechnitz has satisfied any burden that it has of showing that it is probable that it will succeed on the merits in the arbitration because the arbitrator has already issued the Award.

46.     The Kutners asserted no counterclaims in the arbitration.  Accordingly, the amount demanded from the defendants exceeds all counterclaims known to the plaintiff in accordance with CPLR 6212(a).

47.     Petitioner seeks an Order of Attachment in aid of arbitration to ensure that the Award will be satisfied and effectual.  The Kutners conduct to date demonstrates that they will not comply with the Award.

48.     Accordingly, an Order of Attachment should be issued against Respondents/Defendants on the amounts paid to date, and to be paid by Greystone to the Kutners in connection with the Greystone Lawsuit settlement.

### THIRD CAUSE OF ACTION
**(Money Had and Received Against All Defendants)**

49.     In the alternative, Rechnitz repeats and realleges each of the prior allegations as if fully set forth herein.

50.     Rechnitz is the legal owner of the $150,000 in monthly payments that are owed by Greystone pursuant to the Greystone Lawsuit settlement.

51.     Defendants are diverting money belonging to Rechnitz.

52.     Greystone is transferring money to the Kutners that legally belongs to Rechnitz.

53.     Greystone has been made aware that its payments pursuant to the Greystone Lawsuit settlement should be made to Rechnitz.

54.     Defendants have benefited from the receipt and/or diversion of the money belonging to Rechnitz.

55.     Under principles of good conscience, such moneys should not be allowed to be retained by or transferred to the Kutners.

56.     As a direct and proximate result of Defendants' misconduct, Rechnitz has and continues to incur damages in an amount to be determined at trial.

57.     The Court should impose a constructive trust in favor of Rechnitz and against Defendants on all amounts previously transferred by Greystone to the Kutners, and amounts to be transferred by Greystone to the Kutners pursuant to the Greystone Lawsuit settlement.

### FOURTH CAUSE OF ACTION
**(Conversion Against All Defendants)**

58.     In the alternative, Rechnitz repeats and realleges each of the prior allegations as if fully set forth herein.

59.     Rechnitz is the legal owner of the $150,000 in monthly payments that are owed by Greystone pursuant to the Greystone Lawsuit settlement.

60.     Greystone has been made aware that its payments pursuant to the Greystone Lawsuit settlement should be made to Rechnitz.

61.     Greystone's release of such payment to the Kutners constitutes conversion by each of the defendants.

62.     Rechnitz is therefore entitled to an order requiring Greystone to turnover the monthly $150,000 payments directly to Rechnitz.

## FIFTH CAUSE OF ACTION
### (Breach of Contract Against the Kutners)

63.     In the alternative, Rechnitz repeats and realleges each of the prior allegations as if fully set forth herein.

64.     Rechnitz and the Kutners entered into an agreement whereby Rechnitz agreed to loan the Kutners money to assist in funding their lawsuit against Greystone, at Rechnitz's discretion (the "Greystone Loan"), provided that any recovery from the lawsuit would first be used to repay the loan from Rechnitz, and Rechnitz would receive 30 percent of any profits recovered in the Greystone Lawsuit after deducting legal expenses.

65.     Rechnitz complied with the terms of the agreement and loaned $3,071,009 to the Kutners for the Greystone Lawsuit.

66.     The Greystone Lawsuit was settled for $8 million, but the Kutners have breached the agreement with Rechnitz by failing to repay the loan plus the 30 percent interest that Rechnitz is entitled to.

67.     Rechnitz has been damaged to be determined at trial but not less than $4,399,976.

68.     Greystone should be required to make the monthly payments pursuant to the Greystone Lawsuit settlement directly to Rechnitz.

## SIXTH CAUSE OF ACTION
### (Breach of Fiduciary Duty Against the Kutners)

69.     In the alternative, Rechnitz repeats and realleges each of the prior allegations as if fully set forth herein.

70.     The Kutners were partners with Rechnitz in connection with their pursuit and recovery from the Greystone Lawsuit.  As partners, the Kutners owed Rechnitz a fiduciary of good faith and loyalty.

71.     By not paying the monthly payments received from Greystone to Rechnitz in connection with the Greystone Lawsuit settlement, the Kutners breached their fiduciary duty of good faith and loyalty to Rechnitz.

72.     Rechnitz has been damaged to be determined at trial but not less than $4,399,976.

73.     Greystone should be required to make the monthly payments pursuant to the Greystone Lawsuit settlement directly to Rechnitz.

### SEVENTH CAUSE OF ACTION
**(Aiding and Abetting Breach of Fiduciary Duty Against Greystone)**

74.     In the alternative, Plaintiff repeats and realleges each of the prior allegations set forth as if fully set forth herein.

75.     The Kutners were partners with Rechnitz in connection with their pursuit and recovery from the Greystone Lawsuit.  As partners, the Kutners owed Rechnitz a fiduciary of good faith and loyalty.

76.     By not paying the monthly payments received from Greystone to Rechnitz in connection with the Greystone Lawsuit settlement, the Kutners breached their fiduciary duty of good faith and loyalty to Rechnitz.

77.     Greystone was made aware of the agreement between the Kutner and Rechnitz relating to the Greystone Lawsuit.

78.     Demand has been made on Greystone to transfer the monthly payments that it agreed to make pursuant to the settlement directly to Rechnitz.

79.     Greystone has refused to make such payments to Rechnitz, and instead continues to make such payments to the Kutners.

80.     Greystone's payments to the Kutners is substantially assisting the Kutners in breaching their fiduciary duties to Rechnitz.

81.     Greystone's misconduct in making such payments is willful, and has caused caused significant harm to Rechnitz.

82.     As a direct result of Greystone's tortious conduct, Plaintiff has suffered damages in an amount to be determined at trial, but not less than $4,399,976.

## EIGHTH CAUSE OF ACTION
### (Turnover Against All Defendants)

83.     In the alternative, Rechnitz repeats and realleges each of the prior allegations as if fully set forth herein.

84.     The Kutners have an interest in the $150,000 monthly payments that are owed by Greystone to them pursuant to the Greystone Lawsuit settlement.

85.     Rechnitz's right to those monthly payments is superior to the Kutners and Greystone.

86.     Rechnitz is therefore entitled to an order requiring Greystone to turnover the monthly $150,000 payments directly to Rechnitz.

## NINTH CAUSE OF ACTION
### (Constructive Trust Against All Defendants)

87.     In the alternative, Rechnitz repeats and realleges each of the prior allegations as if fully set forth herein.

88.     The Kutners were partners with Rechnitz in connection with their pursuit and recovery from the Greystone Lawsuit.  As partners, the Kutners owed Rechnitz a fiduciary of good faith and loyalty.

89.     In reliance on the Kutners promise that it would repay Rechnitz for assisting in funding the Greystone Lawsuit, Rechnitz transfer more than $3 million to the Kutners.

90.     The Kutners settled the Greystone Lawsuit and have received more than $1.4 million from Greystone, and continue to receive payments of $150,000 per month.

91.     The Kutners have been unjustly enriched their receipt of the settlement proceeds from Greystone without paying Rechnitz what he was promised.

92.     Rechnitz is therefore entitled to a constructive trust on the moneys received by the Kutners from Greystone, as well as the $150,000 monthly payments to be paid by Greystone as part of the settlement.

WHEREFORE, Petitioner respectfully requests that this Court grant this Petition and enter an Order: (a) confirming the Award; (b) directing judgment to be entered in Rechnitz's favor; (c) directing Greystone to make all payments relating to the Greystone Lawsuit settlement directly to Rechnitz; (d) attaching all moneys paid and to be paid by Greystone to the Kutners or their affiliates in aid of arbitration (e) in the alternative, award damages on the second through eighth causes of action in an amount to be determined at trial, but not less than $4,399,976 and impose a constructive trust and attachment on the amounts received by the Kutners from Greystone to date, as well as the amounts to be paid by Greystone pursuant to the Greystone Lawsuit settlement, and (f) for such other further and different relief as this Court deems just and proper, together with Rechnitz's reasonable attorneys' fees, costs and expenses incurred in connection with this proceeding.

Dated:  New York, New York
        March 30, 2020

                                      KOFFSKY SCHWALB LLC

                                      By: _____
                                            Efrem Schwalb
                                    349 Fifth Avenue, Suite 733
                                    New York, New York 10016
                                    (646) 553-1590

                                    *Attorneys for Petitioner/Plaintiff*

Case 1:20-cv-01607-KAM-VMS   Document 16-2   Filed 04/06/20   Page 17 of 29 PageID #: 155

# EXHIBIT 1

ביהמ"ד גבול יעבץ
ברוקלין, נוא יארק

דוד קאהן

---

In the Matter of the Din Torah Arbitration Between

Shlomo Yehuda Rechnitz

and

Ephraim Kutner and Jonathan Kutner

[PROPOSED] ARBITRATION
AWARD RELATING TO
GREYSTONE LAWSUIT JOINT
VENTURE DISPUTE

---

On August 14, 2018, Shlomo Yehuda Rechnitz ("SYR"), on the one hand, and Ephraim Kutner and Jonathan Kutner (the "Kutners"), on the other hand, appeared before me to arbitrate various disputes relating to their business dealings that they had been discussing and trying to resolve for many months prior to their appearance. The parties signed an arbitration agreement which is attached as Exhibit 1 to this decision and award pursuant to which they agreed to abide by my decision. At that time several issues were discussed including, but not limited to, a dispute regarding the repayment of a loan provided by SYR to the Kutners in connection with a lawsuit between Greystone Funding Corp. and the Kutners (the "Greystone Lawsuit"), and a sharing agreement from any recovery for that lawsuit equal to 30 percent of the recovery from the lawsuit after subtracting the amount spent by SYR to finance the lawsuit.

It was undisputed by the parties that SYR had provided $3,071,009.00 to fund the Greystone Lawsuit. SYR has provided information establishing that the Greystone Lawsuit was settled for $8 million, that SYR is owed $3,071,009 for financing the Kutners in that lawsuit, plus not less than $1,328,697 representing SYR's 30 percent share of the recovery from that lawsuit.

1

After more than a year of settlement negotiations that did not result in an agreement, SYR requested that the parties meet again with me for a decision on the items that were discussed at the first hearing in the arbitration. The Kutners have refused to attend a subsequent hearing and claimed that they did not submit the disputes to arbitration, only mediation, and that the parties settled all of their disputes. I have reviewed the documents submitted by the Kutners and find that on their face, there was no settlement of the parties' disputes. I also reject the argument by the Kutners that the dispute was only submitted to me for mediation, as it was made clear at the hearing that the parties were submitting their disputes to me for a legal adjudication, not mediation, and in fact, the Kutners were the party that selected me as the arbitrator in this matter and the document signed by the parties made clear that the parties were submitting their disputes to me for a decision.

Accordingly, this is my decision regarding the Greysone Lawsuit dispute. I will issue a separate decision on the other outstanding disputes.

IT IS HEREBY ORDERED AND ADJUDGED THAT:

1.      All amounts still owed by Greystone Funding shall be paid directly to SYR, including the $3,071,009 provided by SYR to fund the lawsuit against Greystone, plus the $1,328,967 representing SYR's 30 percent share of the remaining amount recovered in that lawsuit. Any additional amounts from that lawsuit shall be paid to SYR for repayment of amounts owing to SYR relating to other outstanding amounts. SYR may contact Greystone Funding directly and direct Greystone Funding to make all payments directly to SYR.

2.      The Kutners and all entities they control shall cooperate and not interfere with the instructions to Greystone Funding to make all payments relating to the Greystone Lawsuit directly to SYR.

2

3.     If requested by SYR, the Kutners shall execute any and all additional documents that will allow SYR or his agent to control, manage and act on behalf of the Kutners in connection the Greystone Lawsuit settlement.

4.     This award constitutes a final award concerning the dispute regarding the Greystone Lawsuit, as well as constituting an award of injunctive relief issued to protect SYR's right to receive back the money that he provided to fund the Greystone Lawsuit, as well as his 30 percent share of the profit from that lawsuit and other moneys that he is owed.

5.     I retain jurisdiction concerning the Greystone Lawsuit dispute to the extent that the Kutners fail to follow this award or a Court decides not to confirm this award. Additionally, I retain jurisdiction concerning the parties' other business disputes.

Dated: March 11, 2020
       Brooklyn, New York

_____
Rabbi Dovid Cohen

STATE OF NEW YORK)
                        ss.:
COUNTY OF KINGS)

On the 11th day of March, in the year 2020, before me, the undersigned, personally appeared Rabbi Dovid Cohen, personally known to me on the basis of satisfactory evidence to the individual whose name is subscribed within the arbitration award dated March 11, 2020 and acknowledged to me that he executed the same in his capacity, and that by his signature on the arbitration award, Rabbi Dovid Cohen executed the arbitration award.

_____
Notary Public

MICHAEL KORSINSKY
Notary Public, State of New York
No. 02KO6093866
Qualified in Kings County
Commission Expires Nov. 25, 20__

3

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Harborview Co.
335 Central Avenue
Lawrence, New York
11559

9590 9402 4337 8190 9704 21

2. Article Number *(Transfer from service label)*

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature

X
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:      ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053     Domestic Return Receipt

---

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Ephraim Kutner
C/o Harborview
335 Central Avenue
Lawrence, New York
11559

9590 9402 4337 8190 9704 38

2. Article Number *(Transfer from service label)*

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature

X
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:      ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053     Domestic Return Receipt



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

O F F I C I A L   U S E

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)          $
☐ Return Receipt (electronic)        $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required            $
☐ Adult Signature Restricted Delivery $

Postage
$

Total Postage and Fees
$

Sent To   Harborview Co.

Street and Apt. No., or PO Box No.   335 Central Avenue

City, State, ZIP+4®   Lawrence, NY  11559

Postmark
Here

PS Form 3800, April 2015 PSN 7530-02-000-9047          See Reverse for Instructions

7018 0680 0000 5725 0616
CERTIFIED MAIL

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Shlomo Yehuda Rechnitz
102 N. Alta Vista Blvd
Los Angeles, California
90036

9590 9402 4337 8190 9704 45

2. Article Number *(Transfer from service label)*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by *(Printed Name)*      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:          ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Jonathan Kutner
c/o Harborview
335 Central Avenue
Lawrence, New York 11559

9590 9402 4337 8190 9704 14

2. Article Number *(Transfer from service label)*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by *(Printed Name)*      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:          ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

# EXHIBIT 2

בס״ד

Shlomo Yehuda Rechnitz (SYR) on his own, and as a partner in Harborview Capital, and Jonathan and Ephraim Kutner (JEK) on their own, and as partners in the above company, have come to me to adjudicate a dispute. They have agreed to accept any decision.

Rabbi David Cohen    Aug. 14, 18

09/14/18

8/14/18

8/14/18

A-92

# EXHIBIT 3

*[Hebrew handwritten text]*

*[Hebrew handwritten text]*

This message is being sent via email to R' Shlomo Rechnitz and his CFO, David Weldler.

My name is Yochanan Bechhofer and I am advising Ephraim and Yoni Kutner in regard to their dispute with the aforementioned party. I am writing this on their behalf.

The Kutner brothers came into you last week with the understanding that it was to be a mediation and not an arbitration. They did not question signing the document that was placed before them so as not to hamper the flow of the mediation. They were surprised by the unannounced appearance of Mr. Rechnitz's CFO, as it was previously agreed that only Mr. Rechnitz would be in attendance. The goal of the meeting was to mediate in the presence of the Rav to bring a resolution to the dispute. However, since matters took a turn and we are now embroiled in an arbitration for which we were not prepared, we request another hearing in front of the Rav in the presence of Mr. Rechnitz and whoever he would like to bring.

At this hearing, we will present all of our evidence, including documents, recordings and witnesses who will fly in to give their testimony. We are endeavoring to bring this matter to a swift resolution as quickly as possible. We feel that we can likely pull this all together as soon as Thursday, September 13th, the fourth of Tishrei, 5779.

Due to the volume of evidence and testimony, we would ask to block a full day for us to present our material and allow Mr. Rechnitz to respond.

Cc: R' Shlomo Rechnitz, Mr. David Weldler

*[Hebrew handwritten text]*

*[Hebrew handwritten text]*

# EXHIBIT 4

01/09/2011  17:44    7183767398

ATT: SHLOMO (KELMINIZ ?)

ביהמ"ד גבול יעבץ
ברוקלין, נ.א. יארק

דוד קאהן

Aug. 22, 18                                      בס"ד

This is in response to the fax + E mail that
I received from Rav Yochanan W. Bechhofer שי'.
    I challenge the statement that there was
any hint of coersion to sign an arbitration
agreement. I was not aware of any agreement not
to bring the CFO. Both sides were quite amenable
when I asked what they prefered & it was arbitration
    I stand by my oral ruling that Victor
(upator) Izmozky(?) who is a forensic accountant
go through all of the books + records and be paid
by the company.
    I have already assured the Kutners that
we shall all get together before a final
decision is rendered.
    I am a very busy person with many commitments
and cannot promise a full day but I shall
certainly cooperate to give everyone ample time to
present their side.
    I am faxing this document to both parties
                        Rabe Dovid Cohn

# יוחנן מאיר בקהופר

**טוען רבני**

בעמ"ס אבן שתיה על הי"ג עקרים להרמב"ם

א' דר"ח אדר תש"פ

לכבוד הגאון הגדול מוהר"ר דוד קאהן שליט"א רב דקהילת גבול יעבץ בפלאטבוש נ.י.

My name is Yochanan Bechhofer and I represent Mr. Ephraim Kutner and Mr. Yonasan Kutner (referred to in this letter as "my clients").

On behalf of my clients I wish to bring to the honored Rabbi's attention that the dispute between my clients and Mister Rechnitz for which they appeared before from the honored Rabbi in the summer of 2018 has long since been **resolved**.

In the fall of 2018, an agreement was reached between the parties ( see attached "article 1") that would settle the dispute once and for all. This agreement was not only **put in writing in an email that is legally binding** but it has already been **implemented** in good faith and **at great expense to my clients**.

Amongst the items of the agreement that were implemented already was to pay Mr. Gershon Beigelison at  great expense to my clients, which they did already long ago and **already paid him at** Mr. Rechnitz's request **an entire annual salary.**

The initial dispute has been resolved and the current dispute is over the terms and conditions of an agreement that was **wholly agreed to by both sides** (see attached "Article 2") and is in stages of **implementation** already. Should we seek an arbitration from the honored Rabbi, it would **require a new arbitration agreement,** since it is not the issue for which we signed an arbitration agreement for in the past.

At this time, we are not asking for a new arbitration by the honored Rabbi, but rather we ask Mr. Rechnitz to come back to the negotiating table. We are confident that just as we reached this agreement and lived in peace and harmony for over a year, so also we will surely work out whatever disagreements there are regarding this agreement at this time.

We wish the honored Rabbi a Chodesh Tov and a freilichen Purim
Sincerely,

*Yochanan Meir Bechhofer*

Yochanan Meir Bechhofer
on Behalf of Ephraim and Yonasan Kutner
CC Reb Shlomo Yehuda Rechnitz

**Article 1**
Summary of agreement arrived at in the fall of 2018
Mr. Rechnitz's responses in capital letters

On Dec 2, 2018, at 6:23 PM, Ephraim Kutner <ekutner@harborviewcp.com> wrote:

Shlomo,
We sincerely appreciate you taking the time to sit with us and come to a peaceful resolution. I'm sorry it took so long to get you this email.
I woke up with a pinched nerve last Monday and have been out flat on my back all week. Here are the points we agreed to and please let me know if I've left anything off or misrepresented any points of our discussion.

-lawsuit - we agreed to try and take advantage of where we are at in our litigation and after Matt tried reaching out to Scharff with no response Yoni met with Steve on Tuesday afternoon and told him we would accept 8.5mm. Steve responded with another lowball offer last night and I will send you that in a separate email. We have court tomorrow and will continue to press. ADDITIONALLY, THE KUTNERS WILL MAKE THEMSELVES AVAILABLE AND DO EVERYTHING IN THEIR POWER TO HELP RECHNITZ WITH THE LAWSUIT.

Of course we will

NEED TO MAKE A QUICK DEADLINE, OTHERWISE YOU CAN PRESS FOREVER.
A

We have a court date tomorrow and another one in two weeks. We feel the judge will continue to push for a settlement and his numbers were more than Steve's and the judge said he can push Scharff so why respond to Steve's offer quickly

-mezz loans- will assign over the PG on the Tillers/Hartman loan to you personally, all payoff notices will include escrow instructions into a mutually accessible escrow account where SY will take the original principal amount of the loan. ALL interest payments, exit fees and financing origination fees stay in Harborview Funding but any additional monies made on the exit loan gets split and your half goes towards your initial personal loan of 2.9mm (this is instead of CLAT) until all that principal is paid and anything above that amount in the form of additional fees or monies made on the exit loan stays in Harborview. There will be no Glenner or other Mezz loan guarantees provided by Harborview.
THE ACCOUNT WILL BE IN MY NAME AND THE INSTRUCTIONS ON THE LETTER WILL BE THE ONLY PLACE THE ACCOUNT NUMBER APPEARS.

How do we then disperse the funds over and above the original principal loan amount as you said you wanted none of that interest and exit fee money?

ANY ADDITIONAL LOAN PROCEEDS, HUD FEES, ORIGINATION OR BREAKUP
FEES FIRST GOES AS A PREFERENCE TO SHLOMO RECHNITZ TO PAY OFF THE
INITIAL PERSONAL LOAN OF $2.9 MILLION DOLLARS.

This isn't what we discussed as we were looking for an alternative to the CLAT issue
and the CLAT was something that would take 20 or 30 years to pay off as opposed to
this structure where it should take less than 3 years with us splitting the income off of
the exit loans as we have real internal expenses to process the loans and use First
American

-60k for one year to Jake's cousin whom we are meeting with on Tuesday and Yoni
spoke to this week a few times

-100k/ year engagement fee for 2 years to you for speaking at our annual Healthcare
conference

-SY "doesn't want anything else at all"

-SY will send a letter to Reb Dovid Cohen as per our discussion that we will review prior
to sending

-SY will continue to remain a client of Harborview in good faith and there will be a
maximum of 4 1/2 points (including both origination and trade fees) made on all future
HUD loans done for SY by Harborview
THIS IS NOT A CONDITION. (JUST REMEMBER HOW YOU FELT WHEN STEVE
TRIED TO PAY YOU OFF LIKE THAT).

Not a condition just a point you wanted me to make mention of
- HARBORVIEW WILL IMMEDIATELY BEGIN WORKING ON RAISING SHLOMO'S
HUD CREDIT LINE TO $500,000,000

Happy to do so- who will be running point on your end- Alan Ma?

- RECHNITZ WILL MAKE EVERY ATTEMPT TO ATTEND THE KUTNER WEDDING
TO DISPEL ANY RUMORS THAT THERE WE HAVE SOME DISAGREEMENT.

Very much appreciated but please don't feel any pressure to do so

- THERE WILL BE A CONFIDENTIALITY AGREEMENT AND A NON DISPARAGING
AGREEMENT.

I have the one that was included in the original settlement/ resolution agreement that I
will forward to you

- THE KUTNERS WILL HAVE TO SIT DOWN WITH WELDLER AND WORK OUT
THEIR DIFFERENCES.

If you say so we are happy to do so

Please confirm via email and let me know if I've made any mistakes. Thanks again and wishing you a freilichin Chanukah.

Ephraim

Ephraim Kutner
Harborview Capital Partners
335 Central Avenue
Lawrence | NY | 11559
516.453.9402 | direct
516.453.9400 | main
516.453.9414 | fax
ekutner@harborviewcp.com
www.harborviewcp.com

### **Article 2**

Ephraim Kutner and Shlomo Rechnitz reaffirming their commitments they made a year earlier

On top is Shlomo Rechnitz replying to the message initiated by Ephraim Kutner which is on the bottom

From: Shlomo Rechnitz <shlomohealth@gmail.com>
Date: November 3, 2019 at 11:10:43 AM PST
To: Ephraim Kutner <ekutner@harborviewcp.com>
Cc: Jonathan Kutner <jkutner@harborviewcp.com>
Subject: Re: Calculation

 Ephraim,
I'm not going back on my word at all. You yourself admitted that we still need to work on the lawsuit.
Throughout this process, you've shlepped it so long so every meeting or phone call you got even more out of me.
Take a step back and look what I've given up already. Anybody you ask who will be honest with you will tell you that this resolution is crazy lopsided.
The only part left out is the lawsuit money and I've made up my mind on what I want (which still keeps the deal crazy lopsided).
 Sitting and talking again will make no difference. Let's just get this over with in a somewhat Bakovideke outcome for me.

Sent from my iPad

On Oct 30, 2019, at 12:03 PM, Ephraim Kutner <ekutner@harborviewcp.com> wrote:

 Shlomo,
We agreed on a settlement and shook hands in your house and you said that you wanted to write a letter to Reb Dovid
 letting him know of the settlement before my daughter's chasunah. The only outstanding issue at that time was the Greystone lawsuit.
 I will send you your emails and our communication again to remind you.
 Now you are going back on that agreement and asking to go back to Reb Dovid Cohn.
I'm not following you and your email at all. Yoni and I will be in LA next week Tuesday and Wednesday
 and would very much like to come and talk to you
 as I said last week but if you don't want to or don't have the time then so be it.
 It is truly a shame that you can't do what we both said and agreed what we would do.
 **We have been paying your cousin and brother in law as we said we would do and living up to our end of our agreement.**
 Like I said, I will resend you our email correspondence to see if it clarifies things for you.
 Mazel Tov on your new grandson and wishing you and your family only continued simchos and tons of nachas IYH.

Ephraim Kutner
Harborview Capital Partners
335 Central Avenue
Lawrence | NY | 11559
516.453.9402 | direct
516.453.9400 | main
516.453.9414 | fax
ekutner@harborviewcp.com
www.harborviewcp.com

  ReplyForward

Case 1:20-cv-01607-KAM-VMS   Document 16-3   Filed 04/06/20   Page 6 of 6 PageID #: 173

**Efrem Schwalb**

| | |
|---|---|
| **From:** | davidzweldler@gmail.com |
| **Sent:** | Monday, March 9, 2020 10:19 AM |
| **To:** | evenshesiya@gmail.com |
| **Subject:** | Fwd: Din Torah between Shlomo Yehuda Rechnitz v. Ephraim Kutner and Jonathan Kutner |
| **Attachments:** | Proposed Arbitration Din Torah Award.pdf |

Sent from my iPhone

Begin forwarded message:

> **From:** davidzweldler@gmail.com
> **Date:** March 9, 2020 at 9:19:11 AM EDT
> **To:** Rabbi Dovid Cohen <leahtrenkcohen@gmail.com>
> **Cc:** Efraim Kutner <ekutner@harborviewcp.com>, Jonathan Kutner <jkutner@harborviewcp.com>, Shlomo Yehuda Rechnitz <shlomohealth@gmail.com>
> **Subject: Fwd:  Din Torah between Shlomo Yehuda Rechnitz v. Ephraim Kutner and Jonathan Kutner**

Dear Rabbi Cohen,

I am writing to you on behalf of Shlomo Yehuda Rechnitz to ask that the Rav issue a written award concerning the dispute between Mr. Rechnitz and Ephraim Kutner and Jonathan Kutner (the "Kutners") relating to certain mezzanine loans that Mr. Rechnitz funded ("Mezzanine Loans"), as well as proceeds from a lawsuit against Greystone Funding that Mr. Rechnitz funded on behalf of the Kutners (the "Greystone Lawsuit") which was previously discussed with Rav Cohen that entitled Mr. Rechnitz to the return of the expenses he funded, as well as 30 percent of the Kutners' recovery above the expenses.

As the Rav will recall, more than a year ago, the Rav ruled, among other things, that the Kutners and the entities they control must direct the Mezzanine Loans borrowers to make payments directly to Mr. Rechnitz, with the interest payments to be held in escrow until Mr. Rechnitz is repaid in full, and to inform the Mezzanine Loans borrowers that Mr. Rechnitz or his agent was authorized to act on behalf of the lender of the Mezzanine Loans.  The Kutners failed to

send out such letters.  The Rav retained jurisdiction over the Mezzanine Loans matter in the event the Kutners did not abide by the Rav's ruling.  Concerning the Mezzanine Loans dispute, we are asking the Rav to issues an order allowing Mr. Rechnitz to direct the Mezzanine Loans borrowers to repay the Mezzanine Loans directly to SYR and for the interest that is repaid to be held in a separate account controlled by SYR where it shall remain until SYR is fully repaid for the moneys he advanced relating to the Mezzanine Loans.  Attached is a spreadsheet showing that Mr. Rechnitz is owed $7,617,750 relating to the Mezzanine Loans, which represents the current principal balance of the Mezzanine Loans.

Additionally, there is no dispute that the Greystone Lawsuit was settled for $8 million.  Mr. Rechnitz is owed $3,071,009 that was provided to the Kutners to finance their lawsuit against Greystone Funding, plus $1,328,697 representing SYR's 30 percent share of the recovery over the expenses from that lawsuit.  Greystone has been providing $150,000 per month to the Kutners (to date, the Kutners have received in excess of $1.4 million of which nothing has been transferred to Mr. Rechnitz) and we ask that the Rav issue an award directing that all of that money moving forward to be paid directly to Mr. Rechnitz to cover the millions that he is owed by the Kutners with respect to the Greystone Lawsuit, as well as other amounts that are owing.

You have attempted to meet with all parties, but the Kutners have made it clear that they do not intend to appear before Rav Cohen.  Their response is that they never agreed to arbitrate these disputes and the parties have settled the matter and, therefore, there is no basis to Rav Cohen to adjudicate anything.  The Rav has already ruled that the Kutners agreed to arbitrate these disputes before Rav Cohen, and it is Mr. Rechnitz's position that the Rav should reject this argument once again.  The Kutners signed a binding agreement to arbitrate these disputes, and the Mezzanine Loans, Greystone Lawsuit and other business disputes were all addressed at the hearing that took place in August 2018.  They have refused to abide by the Rav's decisions to date.  Moreover, the documents submitted by the Kutners to Rav Cohen on their face demonstrate that there was and has been no settlement of the parties' disputes.  To the extent that Rav Cohen requires further

A-104

submissions on that issue, we can show months of discussions following the two emails submitted by the Kutners showing that the parties have never come to an agreement, and the emails themselves indicate that there was no agreement, just negotiations which have continued for an extended period of time.

If the Rav accepts Mr. Rechnitz's position, we have attached a proposed award that we would ask the Rav to sign which will allow Mr. Rechnitz to secure some of the multi-millions of dollars he is owed by the Kutners.  In addition, we will be making a further submission concerning other amounts that are owing to Mr. Rechnitz that were discussed at the prior arbitration hearing.

Sincerely,

David Weldler

ביהמ"ד גבול יעבץ
ברוקלין, נוא יארק

דוד קאהן

---

In the Matter of the Din Torah Arbitration Between

Shlomo Yehuda Rechnitz

and

Ephraim Kutner and Jonathan Kutner

---

~~[PROPOSED]~~ **ARBITRATION
AWARD RELATING TO
MEZZANINE LOAN DISPUTE**

On August 14, 2018, Shlomo Yehuda Rechnitz ("SYR"), on the one hand, and Ephraim Kutner and Jonathan Kutner (the "Kutners"), on the other hand, appeared before me to arbitrate various disputes relating to their business dealings that they had been discussing and trying to resolve for many months prior to their appearance. The parties signed an arbitration agreement which is attached as Exhibit 1 to this decision and award pursuant to which they agreed to abide by my decision. At that time several issues were discussed including, but not limited to, a dispute regarding the repayment of certain mezzanine loans that were made using the money of SYR ("Mezzanine Loans," see Exhibit 2).

It was undisputed by the parties that SYR had provided millions of dollars to fund the Mezzanine Loans. SYR has provided updated information establishing that he is owed $7,617,750 relating to the Mezzanine Loans, which represents the current principal balance of the Mezzanine Loans.

I previously issued an oral and written ruling requiring the Kutners to send a letter irrevocably directing the Mezzanine Loans borrowers to repay the Mezzanine Loans directly to SYR and for the interest that is repaid to be held in a separate account controlled by SYR where it shall remain until SYR is fully repaid for the moneys SYR advanced relating to the Mezzanine

1

Loans. I retained jurisdiction over the Mezzanine Loans dispute in the event the Kutners failed to comply with my ruling, as well as the other disputes that the parties discussed with me at the arbitration hearing.

After more than a year of settlement negotiations that did not result in an agreement, SYR requested that the parties meet again with me for a decision on the items that were discussed at the first hearing in the arbitration, including the Mezzanine Loans dispute which has not been finally resolved. The Kutners have refused to attend a subsequent hearing and claimed that they did not submit the disputes to arbitration, only mediation, and that the parties settled all of their disputes. I have reviewed the documents submitted by the Kutners and find that on their face, there was no settlement of the parties' disputes. I also reject the argument by the Kutners that the dispute was only submitted to me for mediation, as it was made clear at the hearing that the parties were submitting their disputes to me for a legal adjudication, not mediation, and in fact, the Kutners were the party that selected me as the arbitrator in this matter and the document signed by the parties made clear that the parties were submitting their disputes to me for a decision.

Accordingly, this is my decision regarding the Mezzanine Loans dispute. I will issue a separate decision on the other outstanding disputes.

IT IS HEREBY ORDERED AND ADJUDGED THAT:

1. The Mezzanine Loans borrowers shall be directed to repay their loans directly to SYR, including the interest payments that are made. As the Kutners have not sent the letter previously directed for them to send to the Mezzanine Loans borrowers, SYR may send letters to the Mezzanine Loans borrowers directing them to pay all amounts directly to SYR.

2

2.      The Kutners shall respond to all questions from SYR or his agents regarding the Mezzanine Loans, and turn over to SYR all documents relating to the Mezzanine Loans including the Mezzanine Loans agreements.

3.      All funds received by the Kutners or any entities controlled by the Kutners including Harborview Capital Funding LLC from the Mezzanine Loan borrowers or their agents shall be immediately turned over to SYR.

4.      SYR shall receive all loan repayments relating to the Mezzanine Loans and will place the principal in one account to be used to repay SYR for the moneys he provided to fund the Mezzanine Loans, and the interest in another account where it shall remain until SYR is fully repaid for the moneys he advanced to fund the Mezzanine Loans.

5.      The Kutners and all entities they control shall cooperate and not interfere with the instructions to the Mezzanine Loan borrowers to make all loan payments directly to SYR.

6.      The Kutners may not modify or extend the terms of the Mezzanine Loans unless expressly authorized in writing by Shlomo Yehuda Rechnitz's representative Mr. David Weldler.

7.      If requested by SYR, the Kutners shall execute any and all additional documents that will allow SYR or his agent to control, manage and act on behalf of the lender in connection with the Mezzanine Loans.

8.      This award constitutes a final award concerning the dispute regarding the Mezzanine Loans, as well as constituting an award of injunctive relief issued to protect SYR's right to receive back the money that he loaned which both parties agreed constitutes all of the capital that was raised to fund the Mezzanine Loans.

3

9.      I retain jurisdiction concerning the Mezzanine Loans dispute to the extent that the Kutners fail to follow this award or a Court decides not to confirm this award.  Additionally, I retain jurisdiction concerning the parties' other business disputes.

Dated: March 11, 2020
        Brooklyn, New York

_____
Rabbi Dovid Cohen

STATE OF NEW YORK)
                            ss.:
COUNTY OF KINGS)

On the 11 day of March, in the year 2020, before me, the undersigned, personally appeared Rabbi Dovid Cohen, personally known to me on the basis of satisfactory evidence to the individual whose name is subscribed within the arbitration award dated March 11, 2020 and acknowledged to me that he executed the same in his capacity, and that by his signature on the arbitration award, Rabbi Dovid Cohen executed the arbitration award.

_____
Notary Public

MICHAEL KORSINSKY
Notary Public, State of New York
No. 02KO6083966
Qualified in Kings County
Commission Expires Nov. 25, 20__

4

# **EXHIBIT 1**

307

Shloma Yehuda Rechnitz (SYR) on his own, and as a partner in Harborview Capital "and Jonathan and Ephraim Kutner (JEK) on their own, and as partners in the above company, have come to me to adjudicate a dispute. They have agreed to accept any decision.

Rabbi David Cohen   Aug. 14, 18

08/14/18

8/14/18

8/14/18

# **EXHIBIT 2**

| Property/Use | Name/Entity | Fund Amount | Amount Fee | Broker and Direct Financing Spread Lien (Spread this Maturity) | Secondary Agreement (Sublease) | Collateral/Guarantee | Monthly/Payment | Maturity | End of Lease | Logic | Secondary Sale on Breakdown | Exit Maturity Maturity | Exit Maturity Balance | Lease End date (yr) | 2019 Revenue | 2020 Revenue | 2021 Revenue | Adjusted Op. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bellamy Westland Tier 1 Westland Tier 2 | Movement S&T S&T | 303,500 694,736 463,500 | 12% 12% 12% | n/a n/a n/a | Sikora Radivitz NA Sikora Radivitz NA Sikora Radivitz NA | 9/7/20 5/21/27 5/23/27 | 3,025.00 4,947.50 8,093.75 | Minneapolis, NM Rochester, NY Rochester, NY | 66 124 124 | Current Past Maturity Past Maturity | $ 2,430,000 $ 4,135,000 See Above | 5/2/20 Recourse 5/21/20 Recourse See Above | 11/30/17 11/30/17 See Above | 3,032,018 8,629,796 See Above | 3,851,635 8,834,476 See Above | (829,818) 401,580 See Above | 64.3% 79.7% See Above |
| Castle+ Courtyard Gardens 5th Third | S&T | 1,200,000 | 12% | n/a | Sikora Radivitz NA | 9/1/20 | 13,000.00 | Jupiter, FL | 104 | Current | See Below | 5/2/20 Recourse | 11/30/17 | 11,296,332 | 11,443,748 | 832,564 | 92.6% |
| Candlytt Amentia 5th Third Legends SW Port S&T | | 2,339,000 2,260,000 | 13% 13% | 7.30% 7.60% | Sikora Radivitz David Blander Sikora Radivitz IIT Equity (SoM) | 9/9/20 4/7/20 | 29,913.75 23,000.00 | Tampa, FL Ohio | 266 232 | Current Current | $ 39,900,000 $ 18,400,000 | 5/2/20 Recourse 5/2/20 Recourse | 11/30/17 12/1/17 | 22,458,615 14,195,131 | 18,206,409 13,000,117 | 4,403,126 1,139,004 | 84.3% 80.4% |

$ 7,617,750

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

SHLOMO YEHUDA RECHNITZ,

                 Plaintiff,

        -against-

EPHRAIM KUTNER, JONATHAN KUTNER
and GREYSTONE FUNDING CORP.,

                 Defendants.
------------------------------------------------------------------x

GREYSTONE FUNDING CORP.,

                 Counterclaimant/Cross-
                 Claimant and Third-Party
                 Plaintiff,

        -against-

SHLOMO YEHUDA RECHNITZ,

                 Counterclaim Defendant,

        -and-

EPHRAIM KUTNER and JONATHAN KUTNER,

                 Cross-Claim Defendants,

        -and-

HARBORVIEW CAPITAL PARTNERS, LLC
and CLARITY CAPITAL PARTNERS LLC,

                 Third-Party Defendants.
------------------------------------------------------------------x

Docket No. 20-cv-1607 (KAM)(VMS)

**DECLARATION OF
EPHRAIM KUTNER**

       EPHRAIM KUTNER, declares under the penalty of perjury the following to

be true and correct pursuant to 28 USC § 1746:

       1.      I am an individual defendant in this matter.

       2.      I submit this declaration in opposition to (i) plaintiff's application to

confirm an arbitration award dated March 11, 2020, issued by Rabbi Dovid Cohen

and plaintiff's motion for an order to attachment and (ii) in support of my and

Jonathan Kutner's cross-motion to vacate the arbitration award and vacate the *ex*

*parte* order of attachment.

*Background of Kutner-Rechnitz Relationship*

3.      I have known petitioner-plaintiff, Shlomo Rechnitz, for at least fifteen

years.  I first met him while I was working as a loan originator for Greystone

Funding Corporation – an approved HUD lender.

4.      I worked with Rechnitz to secure financing that facilitated Rechnitz's

purchase of his first nursing home.

5.      Over the years, we helped Rechnitz secure nearly $1 billion in bank

and HUD financing to acquire nursing homes throughout the State of California.

Our relationship expanded over time to include more than just loans.  Indeed,

Rechnitz played an instrumental role in my decision to leave Greystone and

ultimately sue the company for commissions I was owed.

*Rechnitz and I Enter Into a Joint Venture to Fund the Greystone Lawsuit*

6.      Rechnitz invested in my lawsuit against Greystone that was pending

in the Supreme Court of the State of New York, *Kutner v. Greystone Funding*

*Corporation*, Index No. 652210/2013.

7.      The terms of that investment were reduced to writing.  On December

24, 2014, Grove-Let, LLC, and entity controlled by Rechnitz, and I entered into a

Strategic Legal Partners Joint Venture Agreement.  (Exh. A)  The stated purpose of

2

the venture was to "conduct certain business activities, including but not limited to lawsuit funding" and activities incidental thereto.

8.      Between January 1, 2013 and December 22, 2014, the parties to the venture agreement were me and Grove-Let; however, beginning on December 24, 2014, I was replaced by an entity I controlled, Strategic Legal Partners, LLC.

9.      Rechnitz signed the agreement only as managing member of Grove-Let, and I signed twice: in my individual capacity and as manager of Strategic Legal Partners.

10.     Under the agreement, Grove-Let was required to "facilitate and/or make capital contributions to the Venture of cash in amounts sufficient to meet the ongoing legal fees of the Venture . . . on a capital call basis as directed by the Manager." (Exh. A, Section 2(A)(a)).  I was the only manager of the venture.  (*Id.* at § 3).

11.     My contribution to the venture was all of my "right, title and interest to that certain cause of action against Greystone Funding Corporation." (*Id.* at § 2(A)(b)).

12.     Provided Rechnitz honored his obligation to fund the lawsuit as I requested, profits from the venture were to be distributed "first to Grove in an amount equal to the Expenses, and thereafter, 30% to Grove and 70% to [Kutner]". (*Id.* at § 2(C)).

13.     The venture agreement states that it shall only be modified in a writing signed by the party to be bound.  (*Id.* at § 14(c)).

*Rechnitz Invests in My Mezzanine Lending Business*

14.     Upon leaving Greystone, I started my own businesses with my brother Jonathan: Harborview Capital Partners, which served as a consultant for clients seeking to obtain bridge and HUD financing, and Harborview Capital Funding, which served as a mezzanine lender.  Rechnitz loaned me and the consulting business money to get started,[1] and he also provided the capital for the mezzanine loans.

15.     For the mezzanine loans, we would send a summary of the proposed borrower's business and qualifications and the loan terms to Rechnitz for his review.  If he approved the terms of the deal, Rechnitz would fund the loan. Harborview Capital would earn an origination fee at closing and thereafter collect all interest payments and the balloon payment for the principal.  Harborview Capital would then forward the principal to Rechnitz.

16.     Rechnitz is fond of publicly stating that he does not charge interest for loans he makes.  But he does earn a return in other ways.  His "fee" for providing the loan was one half of the consulting fee Harborview Capital earned once the mezzanine loan was replaced with HUD financing.  Harborview Capital would keep the other half of the consulting fee along with the interest on the loan (less amounts owed to other loan participants).

17.     This agreement was never reduced to writing.

_____

[1] These loans have since been re-paid in full.

18.     In total, Rechnitz funded eight loans, totaling $11.5 million in principal.  Today, $3.9 million of those loans have been repaid to Rechnitz, and the remainder are either not yet due or are in default.

*Rechnitz Attempts to Extort Me for Millions of Dollars*

19.     In the fall of 2017, Harborview's consulting business, Harborview Capital Partners, closed on an  approximately $200 million portfolio of Rechnitz's nursing homes.

20.     Rechnitz's chief financial officer, David Weldler, told me that Rechnitz "went beserk" and "off the deep end" when he learned how much Harborview Capital Partners earned on that transaction.

21.     Rechnitz thereafter demanded that we kick back a portion of the fee we earned on the transaction to him – which is prohibited by HUD guidelines.

22.     When I refused to give him a prohibited kickback, Rechnitz sent me an email on February 25, 2018, threatening to tell everyone "who fucked who" and promising to do "EVERYTHING in [his] power, within [his] legal rights, to expose who [I am] to not only every person [he knew], but also to everybody who [knew him]" unless I capitulated to his various demands, which included repaying him immediately all the money he had loaned me and my businesses.  Rechnitz promised that "[w]hatever the fall out will be (and it will be fast)" from his campaign against me "will put [me] right back in the gutter with the shitty name and reputation you deserve.  I will not let you out of my mind every morning till I feel that everyone knows who you are."  Rechnitz concludes his email by stating

5

"[y]ou're the first person ever to take me over the barrel, and boy are you going to feel it." (Exh. B)

23.    I was taken aback by Rechnitz's email because Jewish law (as well as New York and federal law) prohibits Jews from blackmailing each other.

24.    My brother and I raised this email with Rabbi Cohen, who knew Rechnitz's father.  Rabbi Cohen told us to bring Rechnitz to him so that he could chastise him for attempting to extort us.

*The Arbitration Agreement*

25.    That is why my brother and I appeared before Rabbi Cohen on August 14, 2018.  We met in the dining room of the Rabbi's house in Brooklyn.  My brother and I were there alone; however, Rechnitz appeared with his chief financial officer, David Weidler.  We were not aware that Mr. Weidler would be attending, and certainly had no reason to expect his presence given our understanding of the limited purpose of the meeting.  We therefore objected to Weidler's presence, but Rechnitz insisted that he remain.

26.    As the meeting unfolded, Weidler raised the mezzanine lending business with the Rabbi.  Apparently, Rechnitz was no longer satisfied with the terms we had agreed to and now wanted to own half of the company.  As a 50% owner, Rechnitz would share in the origination fee and interest earned by Harborview Capital in addition to the consulting fee.

6

27.     My brother and I objected to Rechnitz changing the terms of our agreement and seeking to gain an ownership interest in the mezzanine lending business.

28.     Rechnitz insisted that Rabbi Cohen arbitrate his entitlement to an ownership interest in the mezzanine lending business, Harborview Capital Funding.

29.     My brother and I were presented with a handwritten document to sign obligating us to arbitrate before Rabbi Cohen.  That agreement is dated August 14, 2018, and is attached as Exhibit 2 to the petition-complaint.

30.     That agreement states that "Rechnitz . . . on his own, and as a partner in Harborview Capital LLC and Jonathan and Ephraim Kutner . . . on their own, and as partners in the above company, have come to me to adjudicate *a dispute*. They have agreed to accept my decision."  (emphasis added).

31.     During the meeting in Rabbi Cohen's dining room, Weldler read some figures off the documents that he had brought with him, but no documents were provided to Rabbi Cohen to review.

32.     We were admittedly unprepared for this discussion, as we did not know when we appeared on August 14 that the mezzanine lending business would be presented to Rabbi Cohen that day.  The only topic we thought was being discussed was Rechnitz's blackmail email.

33.     At the conclusion, Rabbi Cohen ruled that the mezzanine loans should be repaid by the borrowers directly to Rechnitz and that we should provide Victor

7

(Yaakov) Lupnitzky, a forensic accountant, with all of the books and records of the mezzanine lending business.

34.     Following the August 14 meeting, we instructed our Rabbi, Yochanan Bechhofer, to request additional hearing dates so that we could present all of our evidence and fly in witnesses to give testimony.  (Petition/Complaint – Exh. 3).

35.     In response, Rabbi Cohen wrote that he had "already assured the Kutners that we shall all get together before a final decision is rendered." (Petition/Complaint – Exh.  4).  But that is not what happened at all.  No additional hearings were ever held.  We were never given an opportunity to present documentary evidence or present witnesses before Rabbi Cohen issued his ruling on November 5, 2018.

*All Subsequent Correspondence with Rabbi Cohen*
*Focused on the Mezzanine Lending Business*

36.     In the days and weeks following the August 14 meeting, all correspondence from Rechnitz to Rabbi Cohen focused only on the mezzanine loans that were discussed with Rabbi Cohen.  For example, on August 20, just two days after appearing before Rabbi Cohen, Weldler requested a modification of the Rabbi's "pesak," which directed the Kutners to instruct the mezzanine borrowers to repay the loans directly to a Rechnitz entity, to also include a prohibition preventing the Kutners from sending a subsequent letter altering or withdrawing that direction. (Exh. C)

37.     On October 4, 2018, Weldler again wrote to Rabbi Cohen on behalf of Rechnitz as follows:  "In as much as we have heard nothing from Efraim Kutner

with regard to the PSAK of Rabbi Cohen, as it related to: 1) drafting and executing documents instructing the mezzanine borrowers to repay the outstanding loans, when due, directly to a Rechnitz owned entity[,] 2) providing financial statements[,] 3) providing information to the forensic accountant (to the best of my knowledge this has not been done)[.] Please suggest the next steps we should take to enforce the existing PSAK. It has been suggested that we hire an attorney to present the binding arbitration ruling to a court for enforcement." (Exh. D)

38.     A few weeks later, Weldler again wrote to Rabbi Cohen on behalf of Rechnitz and requested that the Rabbi "issue a final written award concerning the dispute between Mr. Rechnitz and Ephraim and Jonathan Kutner relating to certain mezzanine loans that Mr. Rechnitz funded ("Mezzanine Loans")." (Exh. E) In this correspondence, Weldler summarized the events of the August 14, 2018 arbitration as follows: "the Rav ruled, among other things, that the Kutners and the entities they control must direct the Mezzanine Loans borrowers to make payments directly to Mr. Rechnitz, with the interest payments to be held in escrow until Mr. Rechnitz is repaid in full, and to inform the Mezzanine Loans borrowers that Mr. Rechnitz or his agent is authorized to act on behalf of the lender of the Mezzanine Loans." Weldler included with that email a proposed arbitration award for Rabbi Cohen to execute. (Exh. F)

39.     Weldler subsequently sent a revised proposed award on October 29, 2018. (Exh. G)

9

40.     In response to that second proposed order, we objected to the issuance of any order without a new hearing date at which they could present witnesses and documentary evidence – just as Rabbi Cohen "assured" us would happen.  (Exh. H)

41.     But Rechnitz objected to any continued hearing.  In another correspondence from Weldler on November 1, 2018, Rechnitz claimed that "Rabbi Cohen already heard testimony and ruled based upon the testimony that was presented at the hearing that Mr. Rechnitz is owed $8,967,750, which represented the principal balance of the mezzanine loans at the time of the hearing." (Exh. I).[2]

42.     On November 5, 2018, Rabbi Cohen issued his written decision on the mezzanine loan dispute, without ever reconvening the parties and accepting additional evidence from us as he promised he would.  (Exh. J).

43.     This decision was nearly a verbatim duplicate of the proposed order sent by Rechnitz.  The only changes were a misspelling of Kutner's name on page 1 and the addition of a notary block.  Substantively, the Rabbi adopted in whole cloth the conclusions advanced by Rechnitz.  (*Compare* Exh. G to Exh. J).

44.     In the order, Rabbi Cohen ruled that all principal and interest payments should be paid by the borrowers directly into accounts controlled by Rechnitz.

45.     While the order concludes that Rabbi Cohen retains jurisdiction "concerning the other business disputes between the parties," it does not identify what those other disputes were or related to.

---

[2] We do not agree with this description of Rabbi Cohen's ruling on August 14.

46.     But we never agreed to arbitrate multiple disputes with Rechnitz.  The arbitration agreement is very clear that that the parties agreed to arbitrate a single "dispute" – not disputes as Rechnitz now claims.

47.     The only dispute that we agreed to arbitrate on August 14, 2018, related to the mezzanine lending business, and Rabbi Cohen issued his decision on that dispute in the November 5 award.

*The Greystone Lawsuit Settled*

48.     In May 2019, I finally settled the lawsuit against Greystone after nearly six years of litigating.

49.     The terms of that settlement are confidential.

50.     Rechnitz was intimately involved in the settlement negotiations.  He came to New York on April 11, 2019, to attend a meeting we had with Steve Rosenberg, the principal owner of Greystone.  Rechnitz led the negotiations.

51.     The only reason we agreed to the settlement sum obtained by Rechnitz is because he had agreed to amend the joint venture agreement and limit his share of the proceeds to a flat fee of $3 million.

52.     My brother and I made clear to Rechnitz that we did not have $3 million available to pay Rechnitz in one lump sum, so his share necessarily had to come out of the settlement installment payments that Rechnitz himself proposed.

53.     In July 2019, Weldler sent us a proposed settlement agreement in which he proposed that all monthly payments be first allocated to Rechnitz's $3

million worth of principal and subsequent payments split one-third to Rechnitz and two-thirds to me and Jonathan. (Exh. K)

54.    This proposed settlement also addressed ongoing aspects of the mezzanine lending business.

55.    But this proposal was never accepted or finalized.

*Rechnitz Demands that Rabbi Cohen Rule on the Greystone Litigation Investment*

56.    On February 27, 2020, Rechnitz, writing through his representative Weldler, requested that Rabbi Cohen reconvene the parties to pass on all remaining issues that he had been asked to arbitrate. (Exh. L). Weldler attached to that email a list of the supposed items that he claimed had been provided to Rabbi Cohen at the start of the arbitration, which included the Greystone litigation investment.

57.    I had never seen this list before Weldler's February 27 email.

58.    The document itself proves that it could not have been given to Rabbi Cohen at the start of the proceedings on August 14 as Weldler claimed. The document information shows that it was created on August 20, 2018 – six days after the arbitration agreement was signed. (*See* Exh. M (a copy of the email and attachment in native format will be provided to the Court upon request)).

59.    Nevertheless, on February 20, 2020, Rabbi Cohen directed the parties to appear before him "to complete the arbitration" on March 1, 2020, at 4:00 p.m. (Exh. N).

60.     We objected to the hearing before Rabbi Cohen, as we had not agreed to arbitrate any dispute other than the mezzanine loans before him and in our opinion we had no disputes with Rechnitz at the time because we had previously resolved all of our issues.  Nor would we have agreed at that time to arbitrate anything else before him after he failed to schedule the continued hearing on the mezzanine loans as promised and adopted Rechnitz's proposed arbitration award without a single substantive alteration.

61.     On March 9, Weldler again wrote to Rabbi Cohen requesting that the Rabbi issue yet another written award concerning the mezzanine loan dispute as well as the proceeds from the Greystone settlement.  (Exh. O)  Once again, Weldler provided a draft arbitration award Rechnitz wanted the Rabbi to sign.  (Exh. P)

62.     And just as in the past, Rabbi Cohen signed that order in whole cloth on March 11, without any further hearing or evidence.  (*Compare* Exh. P to Exh. 1 to the Petition/Complaint)  Incredibly, Rabbi Cohen issued this ruling without ever hearing from the parties on the issue of the Greystone litigation venture.

63.     This order too purports to reserve jurisdiction to Rabbi Cohen over the parties' other, unspecified business disputes.

64.     I did not receive this March 11 award until it was attached as an exhibit to Rechnitz's motion to confirm.  That was the first time I saw the award.

65.     The certified mail receipts attached as Exhibit 1 to the petition-complaint do not relate to the March 2020 arbitration award.  Tracking the numbers on the certified mail receipts addressed to the Kutners using the United

States Postal Service's tracking function, available at

https://tools.usps.com/go/TrackConfirmAction_input, reveals that the packages

were all delivered on November 8, 2018, making it impossible to be the receipts for

the March 2020 award.  (Exh. Q)

*The Greystone Litigation Investment Could Not Have*
*Been Part of the August 2018 Arbitration with Rabbi Cohen*

66.    I feel that Rechnitz is deliberately attempting to exploit the lack of

specificity in the arbitration agreement and the catchall retention of jurisdiction

provisions (which I understand are not enforceable against me in the absence of a

clear agreement to arbitrate) contained in the orders that he drafts in order to

obtain quick and favorable decisions in any dispute that may ever arise between

us, simply by claiming that the issue "was discussed" on August 14.

67.    Rechnitz now attempts to confirm that March 11 arbitration award,

and in doing so argues that his investment in the Greystone litigation was part of

the August 14 arbitration.

68.    That was simply not the case – as the correspondence above shows.

69.    Indeed, it was temporarily impossible for the Greystone litigation

investment to have been the subject of the arbitration because there was no dispute

between me and Rechnitz concerning the litigation in August of 2018 when the

arbitration agreement was signed.  Notably, Rechnitz never identifies the nature of

the dispute that was supposedly submitted to Rabbi Cohen.

70.    In August of 2018, the Greystone case was nowhere near resolution.

Document discovery was ongoing; not a single deposition had been conducted.

14

Rather, the parties were deeply involved in a dispute concerning the scope of document production, which led Justice Ramos to schedule an evidentiary hearing to resolve that issue. That hearing was originally to take place in October 2018 but was eventually pushed back to December 2018. In August, there were no settlement discussions taking place between the parties, and the case was far from resolution.

71.     Rechnitz oftentimes expressed his frustration over the pace of the case, given that pursuant to the terms of the venture agreement, he was only to be repaid once the case concluded and only if we were successful, but the speed of the case was not a dispute capable of being resolved by Rabbi Cohen.

72.     We did not begin having settlement discussions with Greystone until the evidentiary hearing in December 2018 – four months after the arbitration agreement was signed. Those discussions fizzled because Greystone kept low-balling us.

73.     The Greystone case did not settle until May 2019.

74.     The dispute over the Greystone settlement did not arise until then, nearly a year after we sat in Rabbi Cohen's living room, making it impossible for the dispute to have been given to Rabbi Cohen in August 2018.

*Rechnitz's Share, If Any, of the Greystone Settlement is Uncertain*

75.     Rechnitz claims in his motion to confirm the order of attachment that I represented to him that we did not have money to repay him, that we were in poor

financial condition and struggling and that we did not intend to pay him are absolutely false.

76.     I never refused to pay Rechnitz altogether.  While I did say that I did not have the $3 million available to pay him in one lump sum, I always proposed that we share each installment payment until Rechnitz received his $3 million.

77.     As recently as March 2020, I wrote to Rechnitz and told him that I had been trying to reach Greystone to make arrangements so that one-half of each settlement payment would go directly to an account designated by Rechnitz.  (Exh. R)

78.     On March 3, I reported to Rechnitz that Greystone agreed and asked him to provide wiring instructions for the account he would accept the deposits into. (Exh. S)

79.     But Weldler simply responded that Rechnitz does not agree to this. (Exh. T)  Six days later, Weldler requested that Rabbi Cohen issue the second arbitration award.

80.     I remain willing to pay Rechnitz what he is owed, but that amount is far from certain because Rechnitz breached the terms of the joint venture agreement.  Rechnitz failed to fund litigation expenses, as required by the venture agreement and as I requested as manager of the venture.

81.     After I switched counsel from Dechert LLP to Abrams Fensterman, Dechert was owed a substantial balance.  In order to secure the transition of the file to my new counsel, Rechnitz negotiated a settlement with Dechert in November

2016; whereby, the sum of $276,102 was to be paid over time to satisfy the outstanding invoices.

82.    I was not involved in the negotations of this settlement agreement; although, I remained liable for the amounts owed.

83.    In June 2018, Rechnitz stopped paying Dechert, leaving me on the hook to personally fund the remainder of the payments.  Furthermore, other than the initial retainer to Abrams Fensterman, Rechnitz refused to pay any of that firm's invoices, despite my repeated requests.

84.    As a result, Jonathan and I paid $465,000 out of our own funds to pay for the costs of the Greystone litigation.

85.    Rechnitz's refusal to pay Dechert and Abrams Fensterman constitute material breaches of the venture agreement.

86.    Even if I had agreed to submit a dispute concerning the Greystone litigation investment to Rabbi Cohen, he never conducted a hearing, so I was never afforded an opportunity to present these breaches as an offset to whatever money Rechnitz might be entitled to.

87.    But of course I did not agree to arbitrate the Greystone litigation investment.  For that reason, the March 2020 arbitration award must be vacated.

88.    Once vacated, if Rechnitz and I are unable to work out our differences and litigation ensues, I intend to raise his breaches of the venture agreement as a defense to Rechnitz's claims for any portion of the net recovery or as counterclaims.

*Conclusion*

89.     I therefore respectfully ask that the Court deny Rechnitz's motion to confirm the March 11 arbitration award and vacate that award along with the *ex parte* order of attachment. We simply never agreed to arbitrate any dispute concerning the funding of the Greystone lawsuit, so Rabbi Cohen did not have any authority to issue the March 11 award.

I declare under penalty of perjury that the foregoing is true and correct:

_____

EPHRAIM KUTNER

AFFIRMED TO BEFORE ME
THIS ___ DAY OF MAY, 2020

_____
Notary Public

BARA L DOLINGER
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01DO6296451
Qualified in Nassau County
Commission Expires February 3, 2022

18

## STRATEGIC LEGAL PARTNERS

### JOINT VENTURE AGREEMENT

### STRATEGIC LEGAL PARTNERS, LLC AND GROVE-LET, LLC

This Joint Venture Agreement (this "Agreement") executed this 2⁴ day of December, 2014, memorializes the oral agreement between Ephraim Kutner and Grove-Let, LLC ("Grove"), a California Limited Liability Company and is effective as of the 1ˢᵗ day of January, 2013, said Ephraim and Grove together shall be hereinafter referred to as the "Parties" from January 1, 2013 until December 22, 2014. As of December 22, 2014, this Agreement is entered into by and between Strategic Legal Partners, LLC, a Delaware Limited Liability Company ("Strategic") and Grove, said Strategic and Grove together hereinafter referred to as the "Parties" from December 22, 2014 forward.

WHEREAS, the Parties have agreed to enter into a joint venture to conduct certain business activities, including but not limited to lawsuit funding, and to undertake all activities incidental thereto and to conduct such other activities as are permitted by the laws of the State of New York.

IN CONSIDERATION of the premises and the mutual covenants contained in this Agreement, and other good and valuable consideration (the receipt and sufficiency of which is acknowledged by each of the parties), the parties agree as follows:

Section 1.    Formation, Name, Business and Address.  The Parties do hereby form a Joint Venture (the "Venture") named Strategic Legal Partners.  The address of the Venture shall be c/o Ephraim Kutner, 335 Central Avenue, Lawrence, NY 11559.

Section 2.    Capital Contributions, Distributions and Expenses.

A. Capital Contributions:

    a. Grove shall facilitate funding and/or make capital contributions to the Venture of cash in amounts sufficient to meet the ongoing legal fees of the Venture (the "Expenses").  Such contributions shall be made on a capital call basis as directed by the Manager.

1.

62477587_2

        b.  Ephraim shall contribute all of its right, title and interest to that certain cause of action against Greystone Funding Corporation filed on [fill in details].

B.  <u>Expenses.</u>  All tax deductions relating to the Expenses shall be allocated Solely to Grove.

C.  <u>Distributions:</u>  Any profits of the Venture shall be distributed, first to Grove in an amount equal to the Expenses, and thereafter, 30% to Grove and 70% to Strategic.

Section 3.   <u>Manager</u>. Ephraim Kutner shall serve as manager (the "Manager") of the Venture. The Manager shall maintain physical possession of the books and records of the Venture, shall give such notices to the Parties as may be required by law or deemed advisable, and shall perform all of the necessary functions of the Venture.

Section 4.   <u>Meetings</u>. Meetings between the Parties to the Venture shall be held from time to time, but not less frequently than annually. Special meetings may be called by either Party upon two weeks' notice, unless the Manager determines that less than two weeks' notice is reasonable and practicable.

Section 5.   <u>Fiscal Year</u>. The fiscal year and taxable year of the Venture shall terminate on the last day of December in each year or such other time as required by law or as the Parties may from time to time determine.

Section 6.   <u>Capital Accounts</u>. A capital account shall be maintained for each of the Parties in accordance with section 1.704-1(b) and 1.704-2 of the U.S. Department of Treasury regulations.

Section 7.   <u>Allocation of Tax Losses</u>. Profits and losses of the Venture shall be allocated among the Parties in a manner that as closely as possible gives economic effect to the provisions of this Agreement.

Section 8.   <u>Books and Records</u>. Adequate accounting records of all Venture investments shall be kept and these shall be open to inspection by any of the Parties at all reasonable times. The Venture shall maintain its accounting records on the cash basis of accounting. The Venture's auditors shall prepare such accounts in accordance with the

2.

instructions of the Manager.  Upon the request of a Party, a complete accounting of the affairs of the Venture shall be furnished to each Party.

Section 9.    Restriction on Parties.  No Party, without the consent of the Manager, shall:

(a)    Sell, assign, pledge or create a security interest in his or its interest in the Venture;

(b)    Borrow or lend money on behalf of the Venture, or purchase any security or bond or make any other investment on behalf of the Venture except for cash in full;

(c)    Assign, transfer, pledge, compromise or release any claim of the Venture, arbitrate, or consent to the arbitration of, any dispute or controversy on behalf of the Venture;

(d)    Use the name, credit or property, of the Venture for any purpose other than a proper Venture purpose; or

(e)    Act in any manner that is detrimental to the Venture investments.

Section 10.   Additional Parties.  Additional persons may be admitted as Parties only with the unanimous consent of all Parties.

Section 11.   Partial Distributions.  Upon unanimous consent of the Parties, a Party may at any time on not less than two weeks' prior notice to the other Party or Parties withdraw all or any portion of the capital account of such Party, provided that no Party's capital account shall be reduced to an amount less than such Party's initial capital contribution plus such Party's share of the debts and liabilities of the Venture.  Such withdrawal may be out of the cash or cash equivalents on hand or any particular investment of the Venture, proportionate to such Party's interest in the Venture, provided that such investment may be divided and distributed in kind.

Section 12.   Termination and Liquidation.

3.

(a)    The Venture shall not be dissolved by the admission of a new Party, the death, disability or insolvency of a Party, any assignment or charging of an interest to a permitted lender or the giving by any Party of a notice purporting to dissolve the Venture.  To the fullest extent permitted by law, each Party hereby irrevocably waives any right such Party may have to give any notice dissolving or otherwise terminating the Venture and agrees that such Party shall not apply to any court seeking to dissolve or otherwise wind up the affairs of the Venture.

(b)    The Venture shall be dissolved on the first to occur of the following: (x) upon the unanimous written agreement of the Parties; (y) upon the happening of any event that makes it unlawful for the business of the Venture to be carried on or for the Parties to carry it on in partnership; or (z) upon December 31, 2050.

(c)    Upon the dissolution of the Venture pursuant to section 12(b), and notwithstanding the dissolution, the business of the Venture shall continue to be operated pursuant to this Agreement so far as may be necessary to wind up the affairs of the Venture and to complete transactions begun but unfinished at the time of dissolution, but not otherwise, and any authority which, pursuant to this Agreement, a Party may have to bind the Venture shall continue (except in the case of a Party who is bankrupt or insolvent) and the other rights and obligations of the Parties under this Agreement shall continue, notwithstanding the dissolution, for such limited purposes.

(d)    Upon the dissolution of the Venture pursuant to section 12(b), the Parties shall promptly wind up the affairs of the Venture by discharging all debts and liabilities of the Venture and in accordance with Section 2,by distributing all investments and remaining assets, in cash or in kind or partly in cash and partly in kind, to the Parties or their representatives.  Each investment which can be distributed to the Parties in kind shall be so distributed, unless otherwise unanimously agreed by the Parties.

(e)    This Agreement shall terminate on the completion of the winding-up of the affairs of the Venture pursuant to section 12(d).

4.

(f)     The termination of this Agreement shall not affect or prejudice any rights or obligations which have accrued or arisen under this Agreement prior to the time of termination and such rights and obligations shall survive the termination.

Section 13.  Notices.  Any notice which is required or permitted to be given under this Agreement to any Party shall be in writing and signed by or on behalf of the person giving such notice and shall be deemed to have been given when delivered by personal delivery or mail, mailed by registered or certified mail, postage prepaid, return receipt requested and addressed to the intended recipient Party at the appropriate address set forth below (or at such other address as a party may specify by notice pursuant to this provision):

Section 14.  General Provisions.

(a)     Each of the provisions contained in this Agreement is distinct and severable and a declaration of invalidity or unenforceability of any such provision or part thereof by a court of competent jurisdiction shall not affect the validity or enforceability of any other provision hereof.  To the extent permitted by applicable law, the parties waive any provision of law which renders any provision of this Agreement invalid or unenforceable in any respect.

(b)     This Agreement constitutes the entire agreement between the parties pertaining to the subject matter of this Agreement.

(c)     Except as expressly provided in this Agreement, no amendment or waiver of this Agreement shall be binding unless executed in writing by the party to be bound thereby.  No waiver of any provision of this Agreement shall constitute, a waiver of any other provision nor shall any waiver of any provision of this Agreement constitute a continuing waiver unless otherwise expressly provided.

(d)     This Agreement shall be governed by and construed in accordance with the laws of New York applicable therein.

(e)     This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and legal personal representatives.

5.

62477587_2

(f)     This Agreement may be executed in two or more counterparts and/or by facsimile signatures, each of which shall be deemed an original document, and together which shall be deemed one and the same instrument.

{*Remainder of Page Intentionally Left Blank*}

6.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year first above written.

**PARTIES:**

Strategic Legal Partners, LLC

By: Ephraim Kutner
Its: Manager

Grove-Let, LLC

By: Shlomo Rechnitz
Its: Managing Member

Ephraim Kutner

7.

62477587_2

On Feb 25, 2018, at 2:05 PM, Shlomo Rechnitz
<shlomohealth@gmail.com> wrote:


Efram,
You are evading me over and over. When you were here
last, you left one hour to spare for a discussion that
would take a minimum of a few hours. When you left,
you specifically assured me that you'd come back here
on the way back from one of your tropical locations. I
specifically asked you if there was ANY reason you
wouldn't be able to meet. You assured me that you'd be
here. Then I got some bullshit text about traffic.
THE GAMES END NOW.
You're a psychopath when it comes to spending money.
You have absolutely no discipline and are clearly headed
to financial ruin. You don't know how to keep your
word. You lie, and then justify it in your head with
skewed reasoning. More and more people are telling me
that you renegotiated with them at the last minute. (I can
relate to that). As a matter of fact, I can't recall one
person mentioning to me that they enjoyed doing
business with you. Everyone who deals with you has a
complaint about you by the time the deal is over.
You keep insisting that you don't want to be a Kafui Tov.
You are the epitome, exhibit A of a Kafui Tov. First,
Steve Rosenberg took you out of the gutter, gave you a
semblance of a life and you just end up suing him. Now
that I know who you are, I don't believe for one second
that your case has any merit. That's why it's 5 years and
you got nowhere.
I don't doubt for a second that you believe he screwed
you. You simply have a twisted, skewed, warped way if
thinking when it comes to money that you transact. Then
I come and take you out of the gutter, to the point that
you needed money to eat. And now this. You should be
ashamed of the negative light you put on your wife and
kids. You want to screw up your own life, nobody can
stop you, but who gives you the right to screw up theirs?
o
As I might have told you, I started a new campaign
called "no more fucking Shlomo".
I'm not Steve Rosenberg. I think I command a little more
respect than Steve Rosenberg. Everybody knows I'm an
easy going, flexible and generous person, so if I have a
major problem with someone, everybody will know who
fucked who without even having to look into the story.
If you don't work out a deal with Weldler, to give me
what's legally mine, every penny you stole from me, by
10:00 PM TONIGHT (EST), I will do EVERYTHING in

A-139

my power, within my legal rights, to expose who you are to not only every person I know, but also to everybody who knows me. Whatever fall out will be (and it will be fast), will put you right back in the gutter with the shitty name and reputation you deserve. I will not let you out of my mind every morning till I feel that everyone knows who you are. And I doubt very strongly that you're going to find another Steve Rosenberg or Shlomo Rechnitz. The deal that I offered you before is completely off the table. You'll pay every dollar you owe!! plus all my attorneys fees, plus everything you slipped into different categories to fool me plus late pay interest charges. Congratulations. You're the first person ever to take me over the barrel, and boy are you going to feel it.

Sent from my iPad

Case 1:20-cv-01607-KAM-VMS   Document 36-4   Filed 05/22/20   Page 1 of 1 PageID #: 429

A-140



Dovid Weldler

210 South Lake Drive

Lakewood, New Jersey

RE: Rechnitz vs Kutner

Dear Rabbi Cohen

As per Rabbi Cohen's pesak, our attorney is preparing the redirection letter, instructing the mezzanine borrowers to repay their loans directly to a Rechnitz entity. This letter must be sent by Kutner (harborview) to the borrowers.

We must put in language that prevents Kutner from sending a subsequent letter redirecting the funds to somewhere else, as this can not be done without Rechnitz's permission. Could Rabbi Cohen propose some language that would this enforceable?

I am also including in this fax a copy of the email I sent to Efrain Kutner requesting the financial statements as per Rabbi Cohen's pesak.

Respectfully yours,

Dovid Weldler on behalf of Shlomo Rechnitz

212 203 1388





--------------------

Begin forwarded message:

**From:** "davidzweldler@gmail.com" <davidzweldler@gmail.com>
**Date:** October 4, 2018 at 11:34:05 AM EDT
**To:** "leahtrenkcohen@gmail.com" <leahtrenkcohen@gmail.com>, Ephraim Kutner <ekutner@harborviewcp.com>
**Cc:** Shlomo Rechnitz <shlomohealth@gmail.com>
**Subject: KUTNER-RECHNITZ**

DEAR RABBI COHEN,


INASMUCH AS WE HAVE HEARD NOTHING FROM EFRAIM KUTNER WITH REGARD TO THE PSAK OF RABBI COHEN, AS IT RELATED TO:

1. DRAFTING AND EXECUTING DOCUMENTS INSTRUCTING THE MEZZANINE BOROWERS TO REPAY THE OUTSTANDING LOANS, WHEN DUE, DIRECTLY TO A RECHNITZ OWNED ENTITY
2. PROVIDING FINANCIAL STATEMENTS
3. PROVIDING INFORMATION TO THE FORENSIC ACCOUNTANT (TO THE BEST OF MY KNOWLEDGE THIS HAS NOT BEEN DONE)

PLEASE SUGGEST THE NEXT STEPS WE SHOULD TAKE TO ENFORCE THE EXISTING PSAK. IT HAS BEEN SUGGESTED THAT WE HIRE AN ATTORNEY TO PRESENT THE BINDING ARBITRATION RULING TO A COURT FOR ENFORCEMENT. IS THIS APPROPRIATE? IS THERE ANOTHER APPROACH?

IF POSSIBLE PLEASE HAVE THE RESPONSE SENT TO MY EMAIL ADDRESS – DAVIDZWELDLER@GMAIL AS I DO NOT HAVE ACCESS TO A FAX MACHINE.

RESPECTFULLY YOURS,

DAVID WELDLER (FOR SHLOMO RECHNITZ)





--------------------

Begin forwarded message:

**From:** "davidzweldler@gmail.com" <davidzweldler@gmail.com>
**Date:** October 26, 2018 at 12:11:50 PM EDT
**To:** "leahtrenkcohen@gmail.com" <leahtrenkcohen@gmail.com>, Shlomo
Rechnitz <shlomohealth@gmail.com>

**Cc:** Ephraim Kutner <ekutner@harborviewcp.com>, Jonathan Kutner <jkutner@harborviewcp.com>
**Subject: FW:  Comments to letter, order and letter to Rabbi Cohen**

Dear Rabbi Cohen,

I am writing to you on behalf of Shlomo Yehuda Rechnitz to ask that the Rav issue a final written award concerning the dispute between Mr. Rechnitz and Ephraim and Jonathan Kutner relating to certain mezzanine loans that Mr. Rechnitz funded ("Mezzanine Loans").  As the Rav is aware, at the arbitration hearing on August 14, 2018, the Rav ruled, among other things, that the Kutners and the entities they control must direct the Mezzanine Loans borrowers to make payments directly to Mr. Rechnitz, with the interest payments to be held in escrow until Mr. Rechnitz is repaid in full, and to inform the Mezzanine Loans borrowers that Mr. Rechnitz or his agent is authorized to act on behalf of the lender of the Mezzanine Loans.  The Kutners have failed to send out such letter and no information has been provided to Mr. Rechnitz regarding the loans since February 2018.  We have attached a proposed award that we would ask the Rav to sign after allowing a minimum of 5 days for the Kutners to comment on the proposed award.  We are providing notice to the Kutners and their Rabbinic advocate so that they may comment on the proposed award.  By this letter, we ask that the Kutners respond to the proposed award.  Mr. Rechnitz reserves his right to respond to any comments that the Kutners may have.  We expect to confirm the signed award in court and seek a court's assistance so that the Rav's ruling is followed and Mr. Rechnitz's interest in the loans is protected.

Sincerely,

David Weldler

In the Matter of the Din Torah Arbitration Between

Shlomo Yehuda Rechnitz

and

Ephraim Kutner and Jonathan Kutner

**[PROPOSED] ARBITRATION AWARD RELATING TO MEZZANINE LOAN DISPUTE**

On August 14, 2018, Shlomo Yehuda Rechnitz ("SYR"), on the one hand, and Ephraim Kutner and Jonathan Kutner (the "Kutners"), on the other hand, appeared before me to arbitrate various disputes relating to their business dealings that they had been discussing and trying to resolve for many months prior to their appearance.  The parties signed an arbitration agreement which is attached as Exhibit 1 to this decision and award pursuant to which they agreed to abide by my decision.  The first discrete issue that the parties presented to me for a ruling related to certain mezzanine loans that were made using the money of SYR ("Mezzanine Loans").  The Mezzanine Loans consist of the loans attached as Exhibit 2 which is the most recent update sent by the Kutners to SYR concerning the outstanding loans.

It was undisputed by the parties that SYR had provided millions of dollars to fund the Mezzanine Loans and that SYR was owed $8,967,750 relating to those loans, which represented the principal balance of the Mezzanine Loans at the time of the hearing.

At the arbitration, I issued an oral ruling requiring the Kutners to send a letter irrevocably directing the Mezzanine Loans borrowers to repay the Mezzanine Loans directly to SYR and for the interest that is repaid to be held in a separate account controlled by SYR where it shall remain until SYR is fully repaid for the moneys he advanced relating to the Mezzanine Loans.

This is my written award concerning the Mezzanine Loans dispute.

IT IS HEREBY ORDERED AND ADJUDGED THAT:

1.      The Mezzanine Loans borrowers shall be directed to repay their loans directly to SYR, including the interest payments that are made.  The letter attached as Exhibit 3 shall be sent to the Mezzanine Loans borrowers by the Kutners.  In the event that the Mezzanine Loans borrowers require other instructions to begin making payments directly to SYR, the Kutners will do what is needed to make sure that the moneys are paid directly to SYR.

2.      The Kutners shall respond to all questions from SYR or his agents regarding the Mezzanine Loans, and turn over to SYR all documents relating to the Mezzanine Loans including the Mezzanine Loans agreements.

3.      All funds received by the Kutners or any entities controlled by the Kutners including Harborview Capital Funding LLC from the Mezzanine Loan borrowers or their agents shall be immediately turned over to SYR.

4.      SYR shall receive all loan repayments relating to the Mezzanine Loans and will place the principal in one account to be used to repay SYR for the moneys he provided to fund the Mezzanine Loans, and the interest in another account where it shall remain until SYR is fully repaid for the moneys he advanced to fund the Mezzanine Loans.

5.      The Kutners and all entities they control shall cooperate and not interfere with the instructions to the Mezzanine Loan borrowers to make all loan payments directly to SYR.

6.      If requested by SYR, the Kutners shall execute any and all additional documents that will allow SYR or his agent to control, manage and act on behalf of the lender in connection with the Mezzanine Loans.

7.      This award constitutes a final award concerning the dispute regarding the Mezzanine Loans, as well as constituting an award of injunctive relief issued to protect SYR's

right to receive back the money that he loaned which both parties agreed constitutes all of the capital that was raised to fund the Mezzanine Loans.

8.      I retain jurisdiction concerning the Mezzanine Loans dispute to the extent that the Kutners fail to follow this award or a Court decides not to confirm this award.  Additionally, I retain jurisdiction concerning the other business disputes between the parties.

Dated: October __, 2018
        Brooklyn, New York

_____
                Rabbi Dovid Cohen







--------------------

Begin forwarded message:

**From:** "davidzweldler@gmail.com" <davidzweldler@gmail.com>
**Date:** October 29, 2018 at 5:31:55 PM EDT
**To:** "leahtrenkcohen@gmail.com" <leahtrenkcohen@gmail.com>, Ephraim
Kutner <ekutner@harborviewcp.com>
**Cc:** Shlomo Rechnitz <shlomohealth@gmail.com>
**Subject: FW:  Proposed Arbitration Award**

Dear Rabbi Cohen,

I am resubmitting the documentation (see attached) to  include some
additional exhibits requested by our attorney. If there are no changes, our
attorney will coordinate a notary public. Please let us know.

Thank you
David Weldler for Shlomo Rechnitz

ביהמ״ד גבול יעב״ץ
ברוקלין, נוא יארק

דוד קאהן

---

In the Matter of the Din Torah Arbitration Between

Shlomo Yehuda Rechnitz

and

Ephraim Kutner and Jonathan Kutner

**[PROPOSED] ARBITRATION
AWARD RELATING TO
MEZZANINE LOAN DISPUTE**

On August 14, 2018, Shlomo Yehuda Rechnitz ("SYR"), on the one hand, and Ephraim Kutner and Jonathan Kutner (the "Kutners"), on the other hand, appeared before me to arbitrate various disputes relating to their business dealings that they had been discussing and trying to resolve for many months prior to their appearance. The parties signed an arbitration agreement which is attached as Exhibit 1 to this decision and award pursuant to which they agreed to abide by my decision. The first discrete issue that the parties presented to me for a ruling related to certain mezzanine loans that were made using the money of SYR ("Mezzanine Loans"). The Mezzanine Loans consist of the loans attached as Exhibit 2 which is the most recent update sent by the Kutners to SYR concerning the outstanding loans.

It was undisputed by the parties that SYR had provided millions of dollars to fund the Mezzanine Loans and that SYR was owed $8,967,750 relating to those loans, which represented the principal balance of the Mezzanine Loans at the time of the hearing.

At the arbitration, I issued an oral ruling requiring the Kuttners to send a letter irrevocably directing the Mezzanine Loans borrowers to repay the Mezzanine Loans directly to SYR and for the interest that is repaid to be held in a separate account controlled by SYR where it shall remain until SYR is fully repaid for the moneys he advanced relating to the Mezzanine Loans.

This is my written award concerning the Mezzanine Loans dispute.

IT IS HEREBY ORDERED AND ADJUDGED THAT:

1.      The Mezzanine Loans borrowers shall be directed to repay their loans directly to SYR, including the interest payments that are made.  The letter attached as Exhibit 3 shall be sent to the Mezzanine Loans borrowers by the Kutners.  In the event that the Mezzanine Loans borrowers require other instructions to begin making payments directly to SYR, the Kutners will do what is needed to make sure that the moneys are paid directly to SYR.

2.      The Kutners shall respond to all questions from SYR or his agents regarding the Mezzanine Loans, and turn over to SYR all documents relating to the Mezzanine Loans including the Mezzanine Loans agreements.

3.      All funds received by the Kutners or any entities controlled by the Kutners including Harborview Capital Funding LLC from the Mezzanine Loan borrowers or their agents shall be immediately turned over to SYR.

4.      SYR shall receive all loan repayments relating to the Mezzanine Loans and will place the principal in one account to be used to repay SYR for the moneys he provided to fund the Mezzanine Loans, and the interest in another account where it shall remain until SYR is fully repaid for the moneys he advanced to fund the Mezzanine Loans.

5.      The Kutners and all entities they control shall cooperate and not interfere with the instructions to the Mezzanine Loan borrowers to make all loan payments directly to SYR.

6.      If requested by SYR, the Kutners shall execute any and all additional documents that will allow SYR or his agent to control, manage and act on behalf of the lender in connection with the Mezzanine Loans.

7.      This award constitutes a final award concerning the dispute regarding the Mezzanine Loans, as well as constituting an award of injunctive relief issued to protect SYR's

right to receive back the money that he loaned which both parties agreed constitutes all of the capital that was raised to fund the Mezzanine Loans.

8.    I retain jurisdiction concerning the Mezzanine Loans dispute to the extent that the Kutners fail to follow this award or a Court decides not to confirm this award.  Additionally, I retain jurisdiction concerning the other business disputes between the parties.

Dated: October __, 2018
      Brooklyn, New York

                                _____
                                   Rabbi Dovid Cohen

STATE OF NEW YORK)
                      ss.:
COUNTY OF KINGS)

On the __ day of October, in the year 2018, before me, the undersigned, personally appeared Rabbi Dovid Cohen, personally known to me on the basis of satisfactory evidence to the individual whose name is subscribed within the arbitration award dated October __, 2018 and acknowledged to me that he executed the same in his capacity, and that by his signature on the arbitration award, Rabbi Dovid Cohen executed the arbitration award.

_____
Notary Public

# EXHIBIT 1

Case 1:20-cv-01607-KAM-VMS Document 36-9 Filed 05/02/20 Page 3 of 9 PageID #: 440

ב״ה

Shlomo Yehuda Rechnitz (SYR) on his own, and as a partner in Harborview Capital, "and Jonathan and Ephraim Kutner (JEK) on their own, and as partners in the above company, have come to me to adjudicate a dispute. They have agreed to accept any decision.

Rabbi David Cohen   Aug. 14, '18

[signature]   08/14/18

[signature]   8/14/18

[signature]   8/14/18

# EXHIBIT 2

A-156

| Project Name | Senior Lender | Loan Amount | Participant Name (Primary; Secondary) | Secondary Participant Interest | Maturity Date | Monthly Payments | Locations | Status | First Mortgage Initial Balance | First Mortgage Maturity | First Mortgage Recourse |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Symphony of Oswego | the PrivateBank | $ 1,350,000 | Shlomo Rechnitz; NA | n/a | 1/1/2019 | $ 13,500.00 | Oswego County, IL | Current | $ 10,800,000 | 1/1/2019 | |
| Bethany | MinnWest | $ 302,500 | Shlomo Rechnitz; NA | n/a | 3/2/2018 | $ 3,025.00 | Minneapolis, MN | Current | $ 2,420,000 | 3/2/2020 | Recourse |
| WestGate Tier 1 | S&T | $ 693,750 | Shlomo Rechnitz; NA | n/a | 5/21/2017 | $ 6,937.50 | Rochester, NY | Past Maturity | $ 4,125,000 | 5/21/2020 | Recourse |
| WestGate Tier 2 | S&T | $ 462,500 | Shlomo Rechnitz; NA | n/a | 5/22/2017 | $ 8,093.75 | Rochester, NY | Past Maturity | See Above | See Above | Recourse |
| CareRite - Courtyard Gardens | 5th Third | $ 1,200,000 | Shlomo Rechnitz; NA | n/a | 9/1/2020 | $ 13,000.00 | Jupiter, FL | Current | See Below | 5/1/2020 | Recourse |
| CareRight Accentia | 5th Third | $ 2,659,000 | Shlomo Rechnitz; David Blonder | 7.50% | 9/1/2020 | $ 29,913.75 | Tampa, FL | Current | $ 39,900,000 | 5/1/2020 | Recourse |
| Legends SNF Port | S&T | $ 2,300,000 | Shlomo Rechnitz; HT Equity (MM) | 7.00% | 4/1/2019 | $ 23,000.00 | Ohio | Current | $ 18,400,000 | 5/1/2020 | Recourse |

# EXHIBIT 3

<u>Via Email and Overnight Mail</u>

_____, 2018

BORROWER NAME

AND CONTACT INFORMATION


Dear Borrower,

By this letter you are hereby authorized and directed to make payments due and owing on your outstanding loan to Harborview Funding, LLC by wire transfer to the following bank accounts:

For payments of principal: _____

For payments of interest:  _____

(these two accounts are referred to as the "Accounts")

This letter shall be your good and sufficient irrevocable authorization and direction for making such payments to the Accounts.  Neither this authorization and direction nor the terms of loan and or payment schedule may be modified or revoked unless expressly authorized in writing by Mr. David Weldler.  Mr. Weldler's contact information is davidzweldler@gmail.com.  Mr. Weldler is authorized to act on behalf of the lender of your loan.

Please contact me should you have any questions.

Sincerely,



Ephraim Kutner for Harboview Funding, LLC

כ״א חשון תשע״ט

10/30/2018

לכבוד הגאון הגדול מוהר״ר דוד קאהן שליט״א רב דק״ק גבול יעבץ

We hope this letter Finds the Rav well. We have been waiting patiently for the Rav to announce when the next "Diyun" will be.

As we wrote to the Rav and copied the other side on August 21st (that letter is appended below), we dispute all of Mr. Rechnitz's claims and we have proof to our stance in documents, email, text messages, recorded conversations, and above all witnesses who will come in to testify.

We wrote there (see below) that we could arrange for the witnesses to come in as soon as September 13th (the day following Tzom Gedaliah). This letter was shared with Mr. Rechnitz and Mr. Weldler as is plainly obvious.

We are waiting for the Rav to announce when the next "Diyun" will be. We need no more than ten days notice to gather our materials and notify our witnesses, assuming that their travel schedule allows.

Mr. Weldler's actions of dictating to the Rav what his Psak should be and how to write it are totally out of line in all circumstances.

However, in our situation it is totally out of place as he knows that a "Diyun" is pending where we will bring witnesses and proofs to refute all of his and Mr. Rechnitz's claims.

We await the Rav's announcement for when the next "Diyun" will be.

B'Kavod HaTorah

CC. David Weldler
Shlomo Yehuda Rechnitz





--------------------

Begin forwarded message:

**From:** "davidzweldler@gmail.com" <davidzweldler@gmail.com>
**Date:** November 1, 2018 at 9:14:56 AM EDT
**To:** "leahtrenkcohen@gmail.com" <leahtrenkcohen@gmail.com>, Ephraim
Kutner <ekutner@harborviewcp.com>, Jonathan Kutner
<jkutner@harborviewcp.com>
**Cc:** Shlomo Yehuda Rechnitz <shlomohealth@gmail.com>
**Subject: Fwd:  Letter to Rav Dovid Cohen**

Dear Rabbi Cohen,

I write on behalf of Shlomo Yehuda Rechnitz in response to the letter of
Ephraim Kutner, Jonathan Kutner and Rabbi Bechhoffer dated October 30,
2018.  Mr. Rechnitz objects to the Kutners' request to hold another
hearing on an issue that Rabbi Cohen already decided on August 14.
Rabbi Cohen already heard testimony and ruled based upon the
testimony that was presented at the hearing that Mr. Rechnitz is owed
$8,967,750, which represented the principal balance of the mezzanine
loans at the time of the hearing, that the loan documents should be
turned over to Mr. Rechnitz, and that the borrowers should be directed to
deal directly with Mr. Rechnitz or his representative.  Notably, the Kutners
do not dispute that Rabbi Cohen already so decided at the hearing, or that
they have not followed that psak to date.

We, therefore, respectfully request once again that Rabbi Cohen sign and
notarize the proposed award requiring the Kutners to follow Rabbi
Cohen's psak (which they thus far have not done in any respect), so that
the award can be confirmed in court.

 Thank you


David Weldler on behalf of Shlomo Rechnitz

ביהמ״ד גבול יעבץ
ברוקלין, נוא יארק

דוד קאהן

In the Matter of the Din Torah Arbitration Between

Shlomo Yehuda Rechnitz

and

Ephraim Kutner and Jonathan Kutner

[PROPOSED] ARBITRATION
AWARD RELATING TO
MEZZANINE LOAN DISPUTE

On August 14, 2018, Shlomo Yehuda Rechnitz ("SYR"), on the one hand, and Ephraim Kutner and Jonathan Kutner (the "Kutners"), on the other hand, appeared before me to arbitrate various disputes relating to their business dealings that they had been discussing and trying to resolve for many months prior to their appearance. The parties signed an arbitration agreement which is attached as Exhibit 1 to this decision and award pursuant to which they agreed to abide by my decision. The first discrete issue that the parties presented to me for a ruling related to certain mezzanine loans that were made using the money of SYR ("Mezzanine Loans"). The Mezzanine Loans consist of the loans attached as Exhibit 2 which is the most recent update sent by the Kutners to SYR concerning the outstanding loans.

It was undisputed by the parties that SYR had provided millions of dollars to fund the Mezzanine Loans and that SYR was owed $8,967,750 relating to those loans, which represented the principal balance of the Mezzanine Loans at the time of the hearing.

At the arbitration, I issued an oral ruling requiring the Kuttners to send a letter irrevocably directing the Mezzanine Loans borrowers to repay the Mezzanine Loans directly to SYR and for the interest that is repaid to be held in a separate account controlled by SYR where it shall remain until SYR is fully repaid for the moneys he advanced relating to the Mezzanine Loans.

This is my written award concerning the Mezzanine Loans dispute.

IT IS HEREBY ORDERED AND ADJUDGED THAT:

1.      The Mezzanine Loans borrowers shall be directed to repay their loans directly to SYR, including the interest payments that are made.  The letter attached as Exhibit 3 shall be sent to the Mezzanine Loans borrowers by the Kutners.  In the event that the Mezzanine Loans borrowers require other instructions to begin making payments directly to SYR, the Kutners will do what is needed to make sure that the moneys are paid directly to SYR.

2.      The Kutners shall respond to all questions from SYR or his agents regarding the Mezzanine Loans, and turn over to SYR all documents relating to the Mezzanine Loans including the Mezzanine Loans agreements.

3.      All funds received by the Kutners or any entities controlled by the Kutners including Harborview Capital Funding LLC from the Mezzanine Loan borrowers or their agents shall be immediately turned over to SYR.

4.      SYR shall receive all loan repayments relating to the Mezzanine Loans and will place the principal in one account to be used to repay SYR for the moneys he provided to fund the Mezzanine Loans, and the interest in another account where it shall remain until SYR is fully repaid for the moneys he advanced to fund the Mezzanine Loans.

5.      The Kutners and all entities they control shall cooperate and not interfere with the instructions to the Mezzanine Loan borrowers to make all loan payments directly to SYR.

6.      If requested by SYR, the Kutners shall execute any and all additional documents that will allow SYR or his agent to control, manage and act on behalf of the lender in connection with the Mezzanine Loans.

7.      This award constitutes a final award concerning the dispute regarding the Mezzanine Loans, as well as constituting an award of injunctive relief issued to protect SYR's

right to receive back the money that he loaned which both parties agreed constitutes all of the capital that was raised to fund the Mezzanine Loans.

      8.      I retain jurisdiction concerning the Mezzanine Loans dispute to the extent that the Kutners fail to follow this award or a Court decides not to confirm this award.  Additionally, I retain jurisdiction concerning the other business disputes between the parties.

Dated: ~~October~~ *NOVEMBER* 5, 2018
      Brooklyn, New York

_____
      Rabbi Dovid Cohen

STATE OF NEW YORK)
                    ss.:
COUNTY OF KINGS)

      On the 5th day of ~~October~~ *November*, in the year 2018, before me, the undersigned, personally appeared Rabbi Dovid Cohen, personally known to me on the basis of satisfactory evidence to the individual whose name is subscribed within the arbitration award dated ~~October~~ *November* 5, 2018 and acknowledged to me that he executed the same in his capacity, and that by his signature on the arbitration award, Rabbi Dovid Cohen executed the arbitration award.

_____
Notary Public

NAAMI DAVIS
NOTARY PUBLIC, State of New York
No. 01DA6367818
Qualified in Kings County
Commission Expires Dec. 4, 2021

# EXHIBIT 1

Shlomo Yehuda Rechnitz (SYR) on his own, and as a partner in Harborview Capital "" and Jonathan and Ephraim Kutner (JEK) on their own, and as partners in the above company, have come to me to adjudicate a dispute. They have agreed to accept my decision.

Rabbi David Cohen   Aug. 14, 18

# EXHIBIT 2

| Project Name | Senior Lender | Loan Amount | Participant/Home Obligator, Guarantor | Secondary Participant Interest | Maturity Date | Monthly Payments | Locations | Status | First Guarantor Initial Balance | Start Guarantor, Maturity | First Guarantor, Recourse |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Symphony of Owego | Private Bank the | $ 1,350,000 | Shlomo Rechnitz; NA | NA | 1/1/2019 | $ 13,500.00 | Owego County, IL | Current | $ 10,800,000 | 1/1/2019 | Recourse |
| Bethany | MiniWest | $ 302,500 | Shlomo Rechnitz; NA | NA | 3/1/2018 | $ 3,025.00 | Minneapolis, MN | Current | $ 2,420,000 | 3/1/2020 | Recourse |
| Westside Tier 1 | S&T | $ 693,750 | Shlomo Rechnitz; NA | NA | 5/21/2017 | $ 6,937.50 | Rochester, NY | Past Maturity | $ 4,125,000 | 5/21/2020 | Recourse |
| Westside Tier 2 | S&T | $ 482,500 | Shlomo Rechnitz; NA | NA | 5/22/2017 | $ 8,083.75 | Rochester, NY | Past Maturity | See Above | See Above | Recourse |
| CandleSite - Courtyard Gardens | 5th Third | $ 1,200,000 | Shlomo Rechnitz; NA | NA | 9/1/2020 | $ 13,000.00 | Jupiter, FL | Current | See Below | 5/1/2020 | Recourse |
| Candlelight Ascentia | 5th Third | $ 2,659,000 | Shlomo Rechnitz; David Blimeler | 7.50% | 9/1/2020 | $ 29,913.75 | Tampa, FL | Current | $ 39,300,000 | 5/1/2020 | Recourse |
| Legends SNF Port | S&T | $ 2,300,000 | Shlomo Rechnitz; HY Equity (MM) | 7.00% | 4/1/2019 | $ 23,000.00 | Ohio | Current | $ 18,400,000 | 5/1/2020 | Recourse |

# EXHIBIT 3

<u>Via Email and Overnight Mail</u>

_____, 2018

BORROWER NAME

AND CONTACT INFORMATION

Dear Borrower,

By this letter you are hereby authorized and directed to make payments due and owing on your outstanding loan to Harborview Funding, LLC by wire transfer to the following bank accounts:

For payments of principal: _____

For payments of interest:  _____

(these two accounts are referred to as the "Accounts")

This letter shall be your good and sufficient irrevocable authorization and direction for making such payments to the Accounts. Neither this authorization and direction nor the terms of loan and or payment schedule may be modified or revoked unless expressly authorized in writing by Mr. David Weldler. Mr. Weldler's contact information is <u>davidzweldler@gmail.com</u>. Mr. Weldler is authorized to act on behalf of the lender of your loan.

Please contact me should you have any questions.

Sincerely,


Ephraim Kutner for Harboview Funding, LLC

**CONFIDENTIAL SETTLEMENT COMMUNICATION**

The following terms represent what we are prepared to accept in order facilitate the repayment of all outstanding loans.

In order to put things in the proper perspective, we would like to lay out some historical facts.

1. $1,000,000 personal loan interest free loan to E. Kutner – was to be repaid within 12 months

2. $20,000,000 in loans – interest free - that enabled you to
   a. Build your business
   b. Facilitate mezzanine loans
   c. Pursue lawsuit with Greystone
   d. Draw substantial salaries

3. The following is an attempt to quantify the benefits that Kutner has yielded in comparison to where we stand today.
   a. Monies taken out 2016 – Q2 2017 – E Kutner    $ 3,201,000
   b. Monies taken out 2016 -  Q2 2017   J  Kutner    $ 1,161,883
   c. Projected profit – balance 2017                          $18,000,000
   d. Projected Profit – 2018 (unknown)                     $ 5,000,000
   e. Charitable donations  - through Q2 2017          $ 1,557,486
   f. Charitable donations Q2 2017-2018 (unknown) $ 4,000,000
   g. Benefits to other family members
   h. Interest income from mezz loans in excess of   $ 1,000,000 per annum
   i. vacations on books of company (est)                 $   500,000

4. Pesak issued by Rabbi Dovid Cohen mandating
   a. Direct payment by borrowers to rechnitz
   b. Set aside of all mezz interest to ensure repayment of principle
   c. No modification of loans  (extension etc)

**Too date there has been no adherence to the pesak.**

**SR –YTR Current Status**

1. Outstanding principle as of July 2019 $9,263,960 (net of all repayments)
2. Other exposure Glenner loan - $5,000,000
3. Fully exposed on mezz loans (Kutner not willing to participate in losses if any)

**<u>Proposed terms of Settlement</u>**

1. Adherence to Rabbi Cohen's pesak, except as to interest set aside, which will be limited to loans past the original due date
2. Legal settlement – all monthly payments (150K per month) allocated to repayment of 3 million dollars of principle. Thereafter 1/3 to Rechnitz – 2/3 to Kutner. Can be facilitated by either direct pay by Greystone to Rechnitz or signed confession of judgements and personal guarantee ensuring payment to Rechnitz immediately upon receipt by Kutner from Greystone
3. Payment of all exit fees, additional loan proceeds, hud origination fees or any other monies earned by Harborview from mezz related loans. The first 2.9 million earned, first monies out to be repaid to Rechnitz.
4. Letter to R' Cohen





--------------------

Begin forwarded message:

**From:** "davidzweldler@gmail.com" <davidzweldler@gmail.com>
**Date:** February 17, 2020 at 6:16:14 PM EST
**To:** "leahtrenkcohen@gmail.com" <leahtrenkcohen@gmail.com>
**Cc:** Ephraim Kutner <ekutner@harborviewcp.com>, Shlomo Yehuda Rechnitz
<shlomohealth@gmail.com>

**Subject: Din Torah continuation**

CAUTION: External Email

Dear Rabbi Cohen,

At the request of Shlomo Yehuda Rechnitz, I would like to ask Rabbi Cohen to reconvene the din torah in order to achieve a resolution/psak on the balance of the items that Rabbi Cohen has yet to pasken on.  I attach hereto the copy of the different issues that were to be covered by the din torah. This had been provided to Rabbi Cohen and to the forensic accountant at the onset of the din torah.

I can be reached at 212 203 1388.

Efraim Kutner can be reached at 646 209 1025. His email address is ekutner@harborviewcp.com

We would make ourselves available as soon as Rabbi Cohen could schedule the meeting.

Thank you

Dovid Weldler for Shlomo Yehuda Rechnitz.

**Din Torah – Asks**

1. Direct payment of mezzanine loans to Shlomo – granted
2. Production of financial statements – granted

Next items for determination/asks

1. Confidentiality
2. Pro-rata share of mezzanine losses if any
3. Pro-rata share of Glenner losses, if any
4. Beneficial ownership of CLAT (charitable fund – funded from business proceeds)
5. Quantification of pro-rata share of income – and payment thereof, if any
6. Quantification of value of business and establish buy-out value
7. Ensure that they can not just close down this business and reopen in another name
8. Control of lawsuit – based upon 4 million funded
9. DESTRUCTION OF ILLEGAL RECORDINGS (AFTER RABBI COHEN HAS HEARD THEM IF HE IS SO INCLINED)



דוד קאהן

ביהמ"ד נבול יעבץ
ברוקלין, נוא יארק

$3'6 ℶ$

Feb 20, 20

att: Mr. Rechnitz'j and Mr. Kutner'j
litigants who have come to me for legal
arbitration.
    I hereby summon both of you to come
before me to complete the arbitration on
Sunday, March 1, 20 on 4PM. As you know my
my address is 1518 E. 7 st. 11230.
my phone numbers are (718) 376 7388/7923
my fax # is 718 376 7388.(to be faxed
from 8AM – 9PM not between 3PM-4PM)
                                      Rabi David Cohen



**From:** "davidzweldler@gmail.com" <davidzweldler@gmail.com>
**Date:** March 9, 2020 at 9:19:51 AM EDT
**To:** Rabbi Dovid Cohen <leahtrenkcohen@gmail.com>
**Cc:** Ephraim Kutner <ekutner@harborviewcp.com>, Jonathan Kutner <jkutner@harborviewcp.com>, Shlomo Yehuda Rechnitz <shlomohealth@gmail.com>
**Subject: Fwd:  Din Torah between Shlomo Yehuda Rechnitz v. Ephraim Kutner and Jonathan Kutner**

CAUTION: External Email

Dear Rabbi Cohen,
I am writing to you on behalf of Shlomo Yehuda Rechnitz
to ask that the Rav issue a written award concerning the
dispute between Mr. Rechnitz and Ephraim Kutner and

Jonathan Kutner (the "Kutners") relating to certain mezzanine loans that Mr. Rechnitz funded ("Mezzanine Loans"), as well as proceeds from a lawsuit against Greystone Funding that Mr. Rechnitz funded on behalf of the Kutners (the "Greystone Lawsuit") which was previously discussed with Rav Cohen that entitled Mr. Rechnitz to the return of the expenses he funded, as well as 30 percent of the Kutners' recovery above the expenses.

As the Rav will recall, more than a year ago, the Rav ruled, among other things, that the Kutners and the entities they control must direct the Mezzanine Loans borrowers to make payments directly to Mr. Rechnitz, with the interest payments to be held in escrow until Mr. Rechnitz is repaid in full, and to inform the Mezzanine Loans borrowers that Mr. Rechnitz or his agent was authorized to act on behalf of the lender of the Mezzanine Loans.  The Kutners failed to send out such letters.  The Rav retained jurisdiction over the Mezzanine Loans matter in the event the Kutners did not abide by the Rav's ruling.  Concerning the Mezzanine Loans dispute, we are asking the Rav to issues an order allowing Mr. Rechnitz to direct the Mezzanine Loans borrowers to repay the Mezzanine Loans directly to SYR and for the interest that is repaid to be held in a separate account controlled by SYR where it shall remain until SYR is fully repaid for the moneys he advanced relating to the Mezzanine Loans. Attached is a spreadsheet showing that Mr. Rechnitz is owed $7,617,750 relating to the Mezzanine Loans, which represents the current principal balance of the Mezzanine Loans.

Additionally, there is no dispute that the Greystone Lawsuit was settled for $8 million.  Mr. Rechnitz is owed $3,071,009

that was provided to the Kutners to finance their lawsuit against Greystone Funding, plus $1,328,697 representing SYR's 30 percent share of the recovery over the expenses from that lawsuit.  Greystone has been providing $150,000 per month to the Kutners (to date, the Kutners have received in excess of $1.4 million of which nothing has been transferred to Mr. Rechnitz) and we ask that the Rav issue an award directing that all of that money moving forward to be paid directly to Mr. Rechnitz to cover the millions that he is owed by the Kutners with respect to the Greystone Lawsuit, as well as other amounts that are owing.

You have attempted to meet with all parties, but the Kutners have made it clear that they do not intend to appear before Rav Cohen.  Their response is that they never agreed to arbitrate these disputes and the parties have settled the matter and, therefore, there is no basis to Rav Cohen to adjudicate anything.  The Rav has already ruled that the Kutners agreed to arbitrate these disputes before Rav Cohen, and it is Mr. Rechnitz's position that the Rav should reject this argument once again.  The Kutners signed a binding agreement to arbitrate these disputes, and the Mezzanine Loans, Greystone Lawsuit and other business disputes were all addressed at the hearing that took place in August 2018.  They have refused to abide by the Rav's decisions to date.  Moreover, the documents submitted by the Kutners to Rav Cohen on their face demonstrate that there was and has been no settlement of the parties' disputes.  To the extent that Rav Cohen requires further submissions on that issue, we can show months of

discussions following the two emails submitted by the
Kutners showing that the parties have never come to an
agreement, and the emails themselves indicate that
there was no agreement, just negotiations which have
continued for an extended period of time.

If the Rav accepts Mr. Rechnitz's position, we have
attached a proposed award that we would ask the Rav
to sign which will allow Mr. Rechnitz to secure some of
the multi-millions of dollars he is owed by the Kutners.
In addition, we will be making a further submission
concerning other amounts that are owing to Mr.
Rechnitz that were discussed at the prior arbitration
hearing.

Sincerely,

David Weldler

In the Matter of the Din Torah Arbitration Between

Shlomo Yehuda Rechnitz

and

Ephraim Kutner and Jonathan Kuthe mner

**[PROPOSED] ARBITRATION AWARD RELATING TO MEZZANINE LOAN AND JOINT VENTURE DISPUTE**

On August 14, 2018, Shlomo Yehuda Rechnitz ("SYR"), on the one hand, and Ephraim Kutner and Jonathan Kutner (the "Kutners"), on the other hand, appeared before me to arbitrate various disputes relating to their business dealings that they had been discussing and trying to resolve for many months prior to their appearance.  The parties signed an arbitration agreement which is attached as Exhibit 1 to this decision and award pursuant to which they agreed to abide by my decision.  At that time several issues were discussed including, but not limited to, a dispute regarding (a) the repayment of certain mezzanine loans that were made using the money of SYR ("Mezzanine Loans," see Exhibit 2); and (b) the repayment of a loan provided by SYR to the Kutners in connection with a lawsuit between Greystone Funding Corp. and the Kutners (the "Greystone Lawsuit"), and a sharing agreement from any recovery for that lawsuit equal to 30 percent of the recovery from the lawsuit after subtracting the amount spent by SYR to finance the lawsuit.

It was undisputed by the parties that SYR had provided millions of dollars to fund the Mezzanine Loans and the Greystone Lawsuit.  SYR has provided updated information establishing that he is owed $7,617,750 relating to the Mezzanine Loans, which represents the current principal balance of the Mezzanine Loans.  Additionally, SYR has provided information establishing that the Greystone Lawsuit was settled for $8 million, that SYR is owed $3,071,009 for financing the

Kutners in that lawsuit, plus not less than $1,328,697 representing SYR's 30 percent share of the recovery from that lawsuit.

I previously issued an oral and written ruling requiring the Kutners to send a letter irrevocably directing the Mezzanine Loans borrowers to repay the Mezzanine Loans directly to SYR and for the interest that is repaid to be held in a separate account controlled by SYR where it shall remain until SYR is fully repaid for the moneys SYR advanced relating to the Mezzanine Loans.  I retained jurisdiction over the Mezzanine Loans dispute in the event the Kutners failed to comply with my ruling, as well as the other disputes that the parties discussed with me at the arbitration hearing.

After more than a year of settlement negotiations that did not result in an agreement, SYR requested that the parties meet again with me for a decision on the items that were discussed at the first hearing in the arbitration, including the Mezzanine Loans dispute which has not been finally resolved.  The Kutners have refused to attend a subsequent hearing and claimed that they did not submit the disputes to arbitration, only mediation, and that the parties settled all of their disputes. I have reviewed the documents submitted by the Kutners and find that on their face, there was no settlement of the parties' disputes.  I also reject the argument by the Kutners that the dispute was only submitted to me for mediation, as it was made clear at the hearing that the parties were submitting their disputes to me for a legal adjudication, not mediation, and in fact, the Kutners were the party that selected me as the arbitrator in this matter and the document signed by the parties made clear that the parties were submitting their disputes to me for a decision.

Accordingly, this is my decision regarding the Mezzanine Loans and Greysone Lawsuit disputes. I will issue a separate decision on the other outstanding disputes.

IT IS HEREBY ORDERED AND ADJUDGED THAT:

1.      The Mezzanine Loans borrowers shall be directed to repay their loans directly to SYR, including the interest payments that are made. As the Kutners have not sent the letter previously directed for them to send to the Mezzanine Loans borrowers, SYR may send letters to the Mezzanine Loans borrowers directing them to pay all amounts directly to SYR.

2.      The Kutners shall respond to all questions from SYR or his agents regarding the Mezzanine Loans, and turn over to SYR all documents relating to the Mezzanine Loans including the Mezzanine Loans agreements.

3.      All funds received by the Kutners or any entities controlled by the Kutners including Harborview Capital Funding LLC from the Mezzanine Loan borrowers or their agents shall be immediately turned over to SYR.

4.      SYR shall receive all loan repayments relating to the Mezzanine Loans and will place the principal in one account to be used to repay SYR for the moneys he provided to fund the Mezzanine Loans, and the interest in another account where it shall remain until SYR is fully repaid for the moneys he advanced to fund the Mezzanine Loans.

5.      All amounts still owed by Greystone Funding shall be paid directly to SYR, including the $3,071,009 provided by SYR to fund the lawsuit against Greystone, plus the $1,328,967 representing SYR's 30 percent share of the remaining amount recovered in that lawsuit. Any additional amounts from that lawsuit shall be paid to SYR for repayment of amounts owing to SYR relating to other outstanding amounts. SYR may contact Greystone Funding directly and direct Greystone Funding to make all payments directly to SYR.

6.      The Kutners and all entities they control shall cooperate and not interfere with the instructions to the Mezzanine Loan borrowers to make all loan payments directly to SYR.

7.      The Kutners may not modify or extend the terms of the Mezzanine Loans unless expressly authorized in writing by Shlomo Yehuda Rechnitz's representative Mr. David Weldler.

8.      The Kutners and all entities they control shall cooperate and not interfere with the instructions to Greystone Funding to make all payments relating to the Greystone Lawsuit directly to SYR.

9.      If requested by SYR, the Kutners shall execute any and all additional documents that will allow SYR or his agent to control, manage and act on behalf of the lender in connection with the Mezzanine Loans or the Kutners in connection the Greystone Lawsuit settlement.

10.     This award constitutes a final award concerning the dispute regarding the Mezzanine Loans and Greystone Lawsuit, as well as constituting an award of injunctive relief issued to protect SYR's right to receive back the money that he loaned which both parties agreed constitutes all of the capital that was raised to fund the Mezzanine Loans, as well as the recovery on the Greystone Lawsuit.

11.    I retain jurisdiction concerning the Mezzanine Loans and Greystone Lawsuit dispute to the extent that the Kutners fail to follow this award or a Court decides not to confirm this award.  Additionally, I retain jurisdiction concerning the parties' other business disputes.

Dated: March __, 2020
      Brooklyn, New York

                         _____
                             Rabbi Dovid Cohen

STATE OF NEW YORK)
                      ss.:
COUNTY OF KINGS)

On the __ day of March, in the year 2020, before me, the undersigned, personally appeared Rabbi Dovid Cohen, personally known to me on the basis of satisfactory evidence to the individual whose name is subscribed within the arbitration award dated March _, 2020 and acknowledged to me that he executed the same in his capacity, and that by his signature on the arbitration award, Rabbi Dovid Cohen executed the arbitration award.


_____
Notary Public

Case 1:20-cv-01607-KAM-VMS   Document 36-19   Filed 05/22/20   Page 6 of 9 PageID #: 476

# EXHIBIT 1

301

Shlomo Yehuda Rechnitz (SYR) on his own, and as a partner in Harborview Capital ""and Jonathan and Ephraim Kutner (JEK) on their own, and as partners in the above company, have come to me to adjudicate a dispute. They have agreed to accept any decision.

Rabbi David Cohen   Aug. 14, 18

09/14/18

8/14/18

8/14/18

# EXHIBIT 2

| Project Name | Senior Lender | Loan Amount | Interest Rate | Participant Name (Primary; Secondary) | Secondary Participant Interest | Maturity Date | Monthly Payments | Locations | Bed Counts | Status | First Mortgage Initial Balance | First Mortgage Maturity | First Mortgage Recourse | Latest Financials Date | T12 Revenue | T12 Expense | T12 EBIDAR | Latest T12. Occ. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bethany | MinnWest | $ 302,500 | 12% | Shlomo Rechnitz; NA | n/a | 3/2/18 | $ 3,025.00 | Minneapolis, MN | 66 | Current | $ 2,420,000 | 3/2/20 | Recourse | 11/30/17 | $ 3,022,018 | $ 3,851,655 | $ (829,638) | 64.3% |
| WestGate Tier 1 | S&T | $ 693,750 | 12% | Shlomo Rechnitz; NA | n/a | 5/21/17 | $ 6,937.50 | Rochester, NY | 124 | Past Maturity | $ 4,125,000 | 5/21/20 | Recourse | 11/30/17 | $ 8,829,796 | $ 8,334,416 | $ 495,380 | 79.7% |
| WestGate Tier 2 | S&T | $ 462,500 | 21% | Shlomo Rechnitz; NA | n/a | 5/22/17 | $ 8,093.75 | Rochester, NY | 124 | Past Maturity | See Above | See Above | Recourse | See Above | See Above | See Above | See Above | See Above |
| CareRite - Courtyard Gardens | 5th Third | $ 1,200,000 | 12% | Shlomo Rechnitz; NA | n/a | 9/1/20 | $ 13,000.00 | Jupiter, FL | 104 | Current | See Below | 5/1/20 | Recourse | 11/30/17 | $ 12,296,332 | $ 11,443,748 | $ 852,584 | 92.6% |
| CareRight Accentia | 5th Third | $ 2,659,000 | 13% | Shlomo Rechnitz; David Blonder | 7.50% | 9/1/20 | $ 29,913.75 | Tampa, FL | 266 | Current | $ 39,900,000 | 5/1/20 | Recourse | 11/30/17 | $ 22,658,615 | $ 18,206,489 | $ 4,452,126 | 84.5% |
| Legends SNF Port | S&T | $ 2,300,000 | 13% | Shlomo Rechnitz; HT Equity (MM) | 7.00% | 4/1/19 | $ 23,000.00 | Ohio | 252 | Current | $ 18,400,000 | 5/1/20 | Recourse | 12/31/17 | $ 16,199,121 | $ 15,000,117 | $ 1,199,004 | 80.4% |

$ 7,617,750

4/6/2020 USPS.com® - USPS Tracking® Results

# USPS Tracking®

FAQs >

## Track Another Package +

**Tracking Number:** 9590940243378190970421

Remove ✕

Your item was delivered in or at the mailbox at 5:18 pm on November 13, 2018 in BROOKLYN, NY 11230.

## ⊘ Delivered

November 13, 2018 at 5:18 pm
Delivered, In/At Mailbox
BROOKLYN, NY 11230

Feedback

---

**Tracking History** ⌄

---

**Product Information** ⌄

---

See Less ∧

**Tracking Number:** 9590940243378190970438

Remove ✕

Your item was delivered in or at the mailbox at 5:18 pm on November 13, 2018 in BROOKLYN, NY 11230.

4/6/2020 USPS.com® - USPS Tracking® Results

## ✅ Delivered

November 13, 2018 at 5:18 pm
Delivered, In/At Mailbox
BROOKLYN, NY 11230

See More ∨

**Tracking Number:** 70180680000057250647

Remove ✕

Your package is moving within the USPS network and is on track to be delivered to its final destination. It is currently in transit to the next facility.

## In-Transit

November 12, 2018
In Transit to Next Facility

See More ∨

Feedback

**Tracking Number:** 70180680000057250630

Remove ✕

Your item was delivered to an individual at the address at 12:22 pm on November 8, 2018 in LAWRENCE, NY 11559.

## ✅ Delivered

November 8, 2018 at 12:22 pm
Delivered, Left with Individual
LAWRENCE, NY 11559

See More ∨

4/6/2020                                    USPS.com® - USPS Tracking® Results

**Tracking Number:** 70180680000057250623                          Remove ✕

Your item was delivered to an individual at the address at 12:22 pm on November 8, 2018 in
LAWRENCE, NY 11559.

### ✅ Delivered

November 8, 2018 at 12:22 pm
Delivered, Left with Individual
LAWRENCE, NY 11559

See More ∨

**Tracking Number:** 70180680000057250616                          Remove ✕

Your item was delivered to an individual at the address at 12:22 pm on November 8, 2018 in
LAWRENCE, NY 11559.

### ✅ Delivered

November 8, 2018 at 12:22 pm
Delivered, Left with Individual
LAWRENCE, NY 11559

See More ∨

**Tracking Number:** 9590940243378190970445                        Remove ✕

The U.S. Postal Service has received electronic notification on November 6, 2018 at 4:20 pm that
you have associated a return receipt to your item.

4/6/2020                                    USPS.com® - USPS Tracking® Results

## Pre-Shipment

November 6, 2018 at 4:20 pm
Return Receipt Associated

See More ∨

**Tracking Number:** 9590940243378190970414                    Remove ✕

Your item was delivered in or at the mailbox at 5:18 pm on November 13, 2018 in BROOKLYN, NY
11230.

 **Delivered**

November 13, 2018 at 5:18 pm
Delivered, In/At Mailbox
BROOKLYN, NY 11230

See More ∨

## Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs**



On Mar 1, 2020, at 1:35 PM, Ephraim Kutner
<ekutner@harborviewcp.com> wrote:

 Shlomo,
We have had several conversations with Moshe, whom I've copied on this
email, as we have tried to get in touch with Steve to request that half of
the remaining monies be sent to you each month directly from Greystone.
It is my intention to go to his office if I'm not able to get thru to him by
the end of the day tomorrow. We very much want to resolve this last
outstanding issue of the lawsuit per our written communication with each
other regarding our written settlement agreement. I will let you know as
soon as I speak to him. David, can you please send the information as to
where you would like the monies sent? Thank you.


**Ephraim Kutner**
**Harborview Capital Partners**
335 Central Avenue
Lawrence | NY | 11559
516.453.9402 | direct
516.453.9400 | main
516.453.9414 | fax
ekutner@harborviewcp.com
www.harborviewcp.com




NOTICE: This e-mail and any attachments contain confidential
information that may be legally privileged. If you are not
the intended recipient, you must not review, retransmit,
print, copy, use or disseminate it. Please immediately notify
me by return e-mail and delete it. If this e-mail contains a
forwarded e-mail or is a reply to a prior email, the contents
may not have been produced by the sender and therefore I am
not responsible for its contents.

This notice is automatically appended to each e-mail. It is
the recipient's responsibility to take measures to ensure
that this e-mail is virus free, and I take no responsibility for
any loss or damage arising in any way from its use.
-------------------

**From:** Ephraim Kutner <ekutner@harborviewcp.com>
**Sent:** Tuesday, March 3, 2020 1:44 PM
**To:** Shlomo Rechnitz <shlomohealth@gmail.com>; David Weldler <davidzweldler@gmail.com>; Jonathan Kutner <jkutner@harborviewcp.com>
**Cc:** Moshe Mendlowitz <moshe@gffinancial.com>
**Subject:** Re: Lawsuit

Shlomo,
Greystone has confirmed and I just need the wiring instructions to give them. David, please send. Thank you.

**Ephraim Kutner**
**Harborview Capital Partners**
335 Central Avenue
Lawrence | NY | 11559
516.453.9402 | direct
516.453.9400 | main
516.453.9414 | fax
ekutner@harborviewcp.com
www.harborviewcp.com

NOTICE: This e-mail and any attachments contain confidential information that may be legally privileged. If you are not the intended recipient, you must not review, retransmit, print, copy, use or disseminate it. Please immediately notify me by return e-mail and delete it. If this e-mail contains a forwarded e-mail or is a reply to a prior email, the contents may not have been produced by the sender and therefore I am not responsible for its contents.

This notice is automatically appended to each e-mail. It is

the recipient's responsibility to take measures to ensure
that this e-mail is virus free, and I take no responsibility for
any loss or damage arising in any way from its use.
--------------------









Begin forwarded message:

**From:** "davidzweldler@gmail.com" <davidzweldler@gmail.com>
**Date:** March 3, 2020 at 5:29:32 PM EST
**To:** Ephraim Kutner <ekutner@harborviewcp.com>, Shlomo Rechnitz
<shlomohealth@gmail.com>, Jonathan Kutner <jkutner@harborviewcp.com>
**Cc:** Moshe Mendlowitz <moshe@gffinancial.com>
**Subject: RE:  Lawsuit**

CAUTION: External Email

We have not and do not agree with this.

David Weldler

---

**From:** Ephraim Kutner <ekutner@harborviewcp.com>
**Sent:** Tuesday, March 3, 2020 1:44 PM
**To:** Shlomo Rechnitz <shlomohealth@gmail.com>; David Weldler <davidzweldler@gmail.com>; Jonathan Kutner <jkutner@harborviewcp.com>
**Cc:** Moshe Mendlowitz <moshe@gffinancial.com>
**Subject:** Re: Lawsuit

Shlomo,
Greystone has confirmed and I just need the wiring instructions to give them. David, please send. Thank you.

**Ephraim Kutner**
**Harborview Capital Partners**
335 Central Avenue
Lawrence | NY | 11559
516.453.9402 | direct
516.453.9400 | main
516.453.9414 | fax
ekutner@harborviewcp.com
www.harborviewcp.com

NOTICE: This e-mail and any attachments contain confidential information that may be legally privileged. If you are not the intended recipient, you must not review, retransmit, print, copy, use or disseminate it. Please immediately notify me by return e-mail and delete it. If this e-mail contains a forwarded e-mail or is a reply to a prior email, the contents may not have been produced by the sender and therefore I am not responsible for its contents.

This notice is automatically appended to each e-mail. It is